1

Janet Lindner Spielberg (SBN 221926)
**LAW OFFICES OF JANET LINDNER**
2
   **SPIELBERG**
3
12400 Wilshire Boulevard, #400
Los Angeles, California  90025
4
Tel:  (310) 392-8801
Fax:  (310) 278-5938
5
Email: jlspielberg@jlslp.com

6
Michael D. Braun (SBN 167416)
**BRAUN LAW GROUP, P.C.**
7
10680 West Pico Boulevard, Suite 280
Los Angeles, California  90064
8
Tel:  (310) 836-6000
Fax:  (310) 836-6010
9
Email: service@braunlawgroup.com

Joseph N. Kravec, Jr. (admitted *pro hac vice*)
Ellen M. Doyle (admitted *pro hac vice*)
**STEMBER FEINSTEIN DOYLE**
  **PAYNE & CORDES LLC**
Allegheny Building, 17th Floor
429 Forbes Avenue
Pittsburgh, PA  15219
Tel:  (412) 281-8400
Fax:  (412) 281-1007
Email:  jkravec@stemberfeinstein.com
Email:  edoyle@stemberfeinstein.com

10

11

*ATTORNEYS FOR PLAINTIFF*

12

### IN THE UNITED STATES DISTRICT COURT

13

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

14

15

16
**SKYE ASTIANA on behalf of herself and all others similarly situated,**

17
                         **Plaintiff,**

18
             **v.**

19
**BEN & JERRY'S HOMEMADE, INC.,**

20
                    **Defendant.**

**CASE NO.:  4:10-cv-04387-PJH**

**CLASS ACTION**

**AMENDED COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY AND INJUNCTIVE RELIEF**

**DEMAND FOR JURY TRIAL**

21

22

23

24

25

26

27

28

1    Plaintiff, by her attorneys, brings this class action against Defendant Ben & Jerry's

2 Homemade, Inc. ("B&J" or "Defendant"), on her own behalf and on behalf of all others similarly

3 situated, and alleges as follows based upon information and belief and the investigation of her

4 counsel:

5                                          **INTRODUCTION**

6    1.    This is a class action on behalf of a nationwide class and a California sub-class of

7 consumers who purchased Ben & Jerry's Homemade, Inc.'s "all natural" Ice Cream products which

8 contained alkalized cocoa processed with potassium carbonate, a man made, synthetic ingredient

9 beginning September 29, 2006 through the present ("Class Period").  Since at least 2006, B&J has

10 packaged, marketed and sold its Ice Cream products as being "all natural" despite the fact they

11 contain alkalized cocoa processed with a non-natural, man made, synthetic ingredient - potassium

12 carbonate.[1]

13    2.    Throughout the Class Period, B&J prominently displayed the moniker "all natural" on

14 the labels of its Ice Cream products, cultivating a wholesome, healthful and socially conscious image

15 in an effort to promote the sale of these products, even though its Ice Cream products were actually

16 not "all natural."  While the "all natural" Ice Cream products labels did disclose they contain

17 processed alkalized cocoa, the labels did not disclose that the alkalized cocoa was processed with a

18 non-natural, man made, synthetic ingredient - potassium carbonate.  This is a significant omission

19 since alkalized cocoa alternatively can be (and commonly is) processed with a natural ingredient

20 such as sodium carbonate.  In light of the Ice Cream labels' "all natural" representation and the

21 availability of natural processing ingredients for alkalized cocoa, one would certainly not normally

22 expect the alkalized cocoa in B&J's Ice Cream products to be processed with a man made synthetic

23 ingredient.  Indeed, as a result of this false and misleading labeling, B&J was able to sell these

24 supposedly "all natural" products to thousands of unsuspecting consumers in California and

25 throughout the United States and to profit handsomely from these transactions.

26

27

28
[1]   As used throughout this Complaint, "Ice Cream" products includes B&J's "all natural" premium
Ice Creams, yogurts and sorbets identified in paragraph 20 of this Complaint.

AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 4:10-cv-04387-PJH

1    3.    Plaintiff alleges B&J's conduct gives rise to common law fraud and violates the

2  unlawful, unfair and fraudulent prongs of California's Business and Professions Code section 17200,

3  *et. seq.* (the "UCL"), and the California Business & Professions Code l7500 *et. seq.* (the "FAA").

4  Plaintiff also alleges that B&J's conduct is grounds for restitution on the basis of quasi-

5  contract/unjust enrichment.

6    4.    Plaintiff also seeks injunctive and declaratory relief based upon B&J's conduct

7  asserted in this Complaint.  Although B&J contends it decided on September 21, 2010 to remove the

8  "all natural" representation from its Ice Cream products labels, B&J has not contended that it has

9  recalled all labels with the "all natural" representation still in the distribution chain or available for

10  sale at retail stores.  In fact, as of the date of this Complaint, retail stores in the United States and

11  California are still selling B&J Ice Cream products labeled as "all natural," even though they contain

12  alkalized cocoa processed with potassium, a man made synthetic ingredient.  Moreover, even once

13  the "all natural" representation is removed from the labels, B&J is not presently enjoined from

14  putting the "all natural" representation back on its labels at any time it so decides, even if its Ice

15  Cream products still contain unnatural, synthetic ingredients.  Accordingly, Plaintiff seeks

16  declaratory and injunctive relief to ensure B&J has in fact removed any and all of the "all natural"

17  representations from labels on its Ice Cream products still available for purchase, and to prevent B&J

18  from making the "all natural" representation on its Ice Cream labels in the future as long as the Ice

19  Cream products continue to use alkalized cocoa processed with a synthetic, unnatural substance.

20                                **PARTIES**

21    5.    Plaintiff Skye Astiana is currently a resident of Klamath Falls, Oregon.  From at least

22  September 29, 2006 to September, 2007, Plaintiff Astiana was domiciled in California, residing in

23  San Francisco and Mill Valley, California.   Ms. Astiana is and, throughout the entire class period

24  asserted herein, has been very concerned about and tries to avoid consuming foods that are not

25  natural, such as foods using synthetic or artificial chemical ingredients.  For this reason, Ms. Astiana

26  is willing to and has paid a premium for foods that are all natural and has refrained from buying their

27  counterparts that were not all natural.  While Ms. Astiana was a California resident, she purchased

28  on average three (3) times per month pint sized containers of B&J's All Natural Froyo Chocolate

1   Fudge Brownie Frozen Yogurt, B&J's All Natural Chocolate Fudge Brownie Ice Cream as well as

2   other of B&J's Ice Cream products[2] at the Whole Foods grocery store near her then residence in Mill

3   Valley California.   Based on the "All Natural" representation on the B&J's Ice Cream labels, Ms.

4   Astiana believed the B&J Ice Cream she purchased was all natural and relied on this representation

5   in making the purchase.  Upon information and belief, the B&J Ice Cream Ms. Astiana purchased

6   contained alkalized cocoa processed with potassium carbonate, a man made, synthetic ingredient.

7   While touting the product as "All Natural," the B&J Ice Cream labels Ms. Astiana relied on neither

8   disclosed that the alkalized cocoa used in the B&J Ice Cream was processed with potassium

9   carbonate, a man made, synthetic ingredient, nor otherwise disclosed that a man made, synthetic

10  ingredient was used in the B&J Ice Cream.  Ms. Astiana not only purchased the B&J Ice Cream

11  products because the label said it was "All Natural," but she paid more money for the B&J Ice

12  Cream she purchased than she would have had to pay for other similar ice cream or frozen yogurt

13  products that were not all natural in that they contained man made, synthetic ingredients.  Had Ms.

14  Astiana known the truth that the B&J Ice Cream was not all natural in that it contained alkalized

15  cocoa processed with potassium carbonate, a man made, synthetic ingredient, she would not have

16  purchased the B&J Ice Cream, but would have purchased another brand of ice cream or frozen

17  yogurt that was truly all natural or, if one was not available, would have purchased another non-

18  natural ice cream or frozen yogurt product that was less expensive than B&J Ice Cream.  Ms.

19  Astiana did not receive the "All Natural" ice cream or frozen yogurt she bargained for when she

20  purchased the B&J All Natural Ice Cream products, and has lost money as a result in the form of

21  paying a premium for B&J Ice Cream because it was purportedly all natural instead of paying the

22  lesser amount for similar non-natural alternatives.

23          6.      Defendant Ben & Jerry's Homemade, Inc. was founded in 1977 in Vermont and

24  currently maintains its headquarters at 30 Community Drive, South Burlington, VT 05403-6828.

25  From its inception, to the present day, B&J claims to produce a wide variety of super premium Ice

26  Cream, Ice Cream novelties, low fat Ice Cream, low fat frozen yogurt and sorbet, using Vermont

27  _____

28  [2]   The other ice cream products include Cherry Garcia, Chocolate, Chocolate Chip Cookie Dough,
     Chocolate Fudge Brownie, Chubby Hubby, Chunky Monkey and New York Super Fudge Chunk.

4
AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 4:10-cv-04387-PJH

1   dairy products and high quality, all natural ingredients.  Ben & Jerry's products are distributed

2   nationwide in supermarkets, grocery stores, convenience stores, franchise Ben & Jerry's scoop

3   shops, restaurants and other venues.  In 2000, B&J was acquired by Unilever, one of the world's

4   largest consumer products companies in a deal estimated at $326 million.

5                                   **JURISDICTION AND VENUE**

6          7.       Jurisdiction of this Court is proper under 28 U.S.C. §1332, as complete diversity

7   between the parties exists.  Representative Plaintiff Skye Astiana, now an Oregon resident, was a

8   California resident during her purchases of Defendant's products at issue in this litigation from

9   September 29, 2006 through September, 2007. Defendant's principle place of business is Vermont

10  and it is a wholly owned subsidiary of Unilever plc, a foreign corporation.

11         8.       Upon information and belief, the amount in controversy exceeds $5,000,000 for

12  Representative Plaintiff, Class members and Sub-Class members collectively, exclusive of interest

13  and costs, by virtue of the combined purchase prices paid by Plaintiff, the Class and the Sub-Class,

14  and the profit reaped by Defendant from its transactions with Plaintiff, the Class and the Sub-Class,

15  as a direct and proximate result of the wrongful conduct alleged herein, and by virtue of the

16  injunctive and equitable relief sought.

17         9.       Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391(b) and (c).

18  Defendant maintains offices and has agents, transacts business or is found within this judicial

19  district.  Moreover, a substantial portion of the underlying transactions and events complained of

20  herein occurred and affected persons and entities are in this judicial district, and Defendant has

21  received substantial compensation from such transactions and business activity in this judicial

22  district, including as the result of purchases of Defendant's Ice Cream products from retail locations

23  herein.  Finally, Defendant inhabits and/or may be found in this judicial district, and the interstate

24  trade and commerce described herein is and has been carried out in part within this judicial district.

25                                        **BACKGROUND**

26         10.      The cocoa bean is a seed that grows on trees native to South America. The fermented

27  and dried cocoa seed is the basic ingredient in chocolate.  Chocolate is a name given to products that

28

1   are derived from cocoa which are then mixed with some sort of fat (*e.g.* cocoa butter, oil) and finely

2   powdered sugar to produce a solid edible product.

3          11.      To make chocolate, the beans are processed, roasted, cracked and shelled. The

4   resulting pieces called nibs are further processed into a chocolate liquor, butter or powder.  The

5   cocoa powder is typically used in the flavoring of Ice Creams.

6          12.      Unsweetened baking cocoa powder is typically rendered in one of two forms: a

7   unalkalized cocoa or a version known as Dutch-process/alkalized cocoa.  Both are made by

8   pulverizing partially defatted chocolate liquor and removing nearly all the cocoa butter. Unalkalized

9   cocoa is light in color and somewhat acidic with a strong chocolate flavor.  Dutch-process cocoa is

10   processed with alkali to neutralize its acidity.  Dutch cocoa is slightly milder in taste, with a deeper

11   and warmer color than unalkalized cocoa.  Dutch-process cocoa is frequently used when the product

12   calls for the blending of cacao with liquids.  Dutch processing destroys most of the flavonols present

13   in unalkalized cocoa -- the water-soluble plant pigments that are believed to give dark chocolate

14   health benefits in the form of antioxidant, anti-inflammatory and antiviral properties.

15   **ALKALIZED COCOA PROCESSED WITH POTASSIUM CARBONATE IS UNNATURAL**

16          13.      Although the FDA does not directly regulate the term "natural," the FDA has

17   established a policy defining the outer boundaries of the use of that term by clarifying that a product

18   is <u>not</u> natural if it contains color, artificial flavors, or synthetic substances.

19   http://www.fda.gov/ForConsumers/ConsumerUpdates/ucm094536.htm and

20   http://www.fda.gov/AboutFDA/Transparency/Basics/ucm214868.htm.  Specifically, the FDA states:

21   "the agency will maintain its policy (Ref. 32) regarding the use of 'natural,' as meaning that nothing

22   artificial or synthetic (including all color additives regardless of source) has been included in, or has

23   been added to, a food that would not normally be expected to be in the food."  58 Fed. Reg. 2302,

24   2407 (Jan. 6, 2003).

25          14.      Cocoa can be unalkalized or alkalized as specified in this Complaint.  A Dutching or

26   alkalization takes place during the processing of cocoa beans. During this process an alkali, usually

27

28

AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 4:10-cv-04387-PJH

1    potassium carbonate or sodium carbonate[3], suspended in water is used to neutralize acids and alter

2    the pH level of the beans. It darkens the cocoa, makes it milder in flavor and increases its

3    dispersability.

4         15.      The FDA requires that "when any optional alkali ingredient" is used, "the name of

5    the food shall be accompanied by the statement 'Processed with alkali', or 'Processed with ------',

6    the blank being filled in with the common or usual name of the specific alkali ingredient used in the

7    food."  21 C.F.R. 163.112(c)(1).

8         16.      Ben & Jerry's Ice Cream products containing alkalized cocoa are processed with

9    potassium carbonate.  Potassium carbonate is a recognized synthetic substance.  7 C.F.R.

10   §205.605(b).  However, the other commonly used alkali in making alkalized cocoa – sodium

11   carbonate – is a recognized nonsynthetic, natural substance.  7 C.F.R. §205.605(a).  Unfortunately,

12   as explained in the next section of this Compliant, B&J's Ice Cream products never disclosed that

13   the alkalized cocoa it used was processed with potassium carbonate a recognized synthetic

14   substance, despite the "All Natural" representation on its Ice Cream product labels.

15                        **BEN & JERRY's USE OF ALKALIZED COCOA**

16        17.      American consumers are health conscious and look for wholesome, natural foods to

17   keep a healthy diet so they frequently take nutrition information into consideration in selecting and

18   purchasing food items.   Product package labels, including nutrition labels, are vehicles that convey

19   nutrition information to consumers which they can and do use to make purchasing decisions.  As

20   noted by Food and Drug Administration Commissioner Margaret Hamburg during an October 2009

21

22   _____

23   [3] Besides the commonly used potassium carbonate and sodium carbonate, there are other less
     commonly used alkali substances approved for use in processing cocoa not listed herein that are
24   identified at 21 C.F.R. 163.112(b)(1).  Significantly, sodium carbonate and sodium bicarbonate
     appear to be the only "safe and suitable" nonsynthetic alkali substances approved for use in
25   alkalizing cocoa. *Id.*  Compare 7 C.F.R. §205.605.  To the extent B&J may claim some of its Ice
     Cream products may have to some degree used alkalized cocoa processed with one or more of these
26   less commonly used alkali substances, it is believed and therefore averred by Plaintiff that the B&J
     Ice Cream products did not contain alkalized cocoa processed with one of the nonsynthetic alkali
27   substances, and instead contained alkalized cocoa processed with one of the synthetic alkali
28   substances.

AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 4:10-cv-04387-PJH

1    media briefing, "[s]tudies show that consumers trust and believe the nutrition facts information and

2    that many consumers use it to help them build a healthy diet."

3          18.      The prevalence of claims about nutritional content on food packaging in the United

4    States has increased in recent years as manufacturers have sought to provide consumers with

5    nutrition information and thereby influence their purchasing decisions.  The results of the FDA's

6    most recent Food Label and Package Survey found that approximately 4.8 percent of food products

7    sold in the United States had either a health claim or a qualified health claim on the food package,

8    and that more than half (53.2%) of the food products reviewed had nutrient content claims on the

9    packaging.

10         19.      The alkalized cocoa in Ben & Jerry's Ice Cream products labeled as "All Natural"

11   was processed with potassium carbonate, a recognized synthetic substance.  Ben & Jerry's Ice

12   Cream products could have used alkalized cocoa processed with the other commonly used alkalizing

13   agent - sodium carbonate, a recognized nonsynthethic, natural substance, but they did not.  While

14   Ben & Jerry's "All Natural" Ice Cream labels did disclose that they contain alkalized cocoa, those

15   labels did not disclose that the alkalized cocoa was processed with potassium carbonate, a

16   recognized synthetic substance.  This omission is significant and material given its "All Natural"

17   representation on the Ice Cream products labels.  Indeed, based on the "All Natural" representation,

18   one would normally expect the alkalized cocoa contained in the Ice Cream products to be processed

19   with the commonly used nonsynthetic, natural alternative – sodium carbonate.

20         20.      According to a complaint filed with the FDA in 2010 by the Center for Science in the

21   Public Interest ("CSPI"), and as confirmed by Ben & Jerry's Ice Cream labels, cocoa processed with

22   alkali is used as an ingredient in 36 of Ben & Jerry's Ice Cream flavors which otherwise claim to be

23   "all natural."  Those Ice Cream flavors are:

24         a.      **Ben & Jerry's "All-Natural" Flavors - Ice Cream**
     Banana Split
25   Boston Cream Pie
     Brownie Batter
26   Cake Batter
     Cheesecake Brownie
27   Cherry Garcia
     Chocolate
28   Chocolate Chip Cookie Dough

AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 4:10-cv-04387-PJH

Chocolate Fudge Brownie
Chocolate Macadamia
Chubby Hubby
Chunky Monkey
Dublin Mudslide
Fossil Fuel
Half Baked
Imagine Whirled Peace
Karamel Sutra
Milk & Cookies
Mint Chocolate Chunk
Mint Chocolate Cookie
Mud Pie
Neapolitan Dynamite
New York Super Fudge Chunk
Oatmeal Cookie Chunk
Peanut Butter Cup
Phish Food
S'mores
Triple Caramel Chunk
Turtle Soup
Vanilla Caramel Fudge

b. **Ben & Jerry's "All Natural" Frozen Yogurts (Froyos)**

Froyo Cherry Garcia
Froyo Chocolate Fudge Brownie
Froyo Half-Baked

c. **Ben & Jerry's "All Natural" Popsicles**

Cherry Garcia
Fudgy Brownies
Half Baked

21.     The CSPI warned as early as 2002 that B&J had been misbranding their products as

"all natural" when in truth they were not.

"Ben & Jerry's enjoys a carefully-cultivated public image as an eco-friendly, worker-friendly
brand—the kind of company whose label claims should be truthful," CSPI executive director
Michael F. Jacobson said. "So it's sad that Ben & Jerry's is trying to pass off products laden
with these factory-spun ingredients as 'natural,' when there's little natural about them. These
ingredients are man-made and simply don't occur in nature."

22.     According to the Ben & Jerry's corporate website, their product mission is to "make

distribute and sell the finest quality "all natural" Ice Cream and euphoric concoctions with a

continued commitment to incorporating wholesome, "natural" ingredients and incorporating

1    business practices that respect the earth and the environment." (emphasis added).

2    http://www.benjerry.com/activism/mission statement.

3         23.     The labeling of products as "all natural" carry implicit health benefits important to

4    consumers – benefits that consumers are often willing to pay a premium over comparable products

5    that are not "all natural."  Over the past 30 years B&J has cultivated and reinforced a corporate

6    image that has catered to this "all natural" theme and have boldly emblazed this moniker on each

7    and every one of its Ice Cream products labels, despite the fact it uses alkalized cocoa processed

8    with a unnatural, synthetic ingredient – potassium carbonate.

9         24.      B&J's has used the "all natural" label to shape its brand and sell its product.  Yet, the

10   existence of alkalized cocoa processed with potassium carbonate a man made, synthetic ingredient in

11   its Ice Creams renders the use of the label "all natural," false and misleading.  In manufacturing its

12   Ice Cream products, Defendant had a choice between using natural or unnatural alkali processed

13   cocoa.  It chose the later, but nonetheless labeled its Ice Cream products as "all natural."  As a matter

14   of its self characterized socially conscious corporate morality, and as matter of law, B&J must now

15   reconcile its labeling with the true content of its products.

16                              **CLASS ACTION ALLEGATIONS**

17        25.     Plaintiff brings this action on behalf of herself and on behalf of all other members of

18   the Class ("Class"), defined as all persons who, on or after September 29, 2006, purchased in the

19   United States B&J's Ice Cream products that were labeled "all natural" but contained alkalized

20   cocoa processed with a synthetic ingredient.  Plaintiff brings this Class pursuant to Federal Rule of

21   Civil Procedure 23(a), and (b)(1), 23(b)(2) and 23(b)(3).

22        26.     Plaintiff also brings this action on behalf of herself and on behalf of all other

23   members of the Sub-Class ("Sub-Class"), defined as all persons who, on or after September 29,

24   2006, purchased in the State of California B&J' Ice Cream products that were labeled "all natural"

25   but contained alkalized cocoa processed with a synthetic ingredient.  Plaintiff brings this Sub-Class

26   pursuant to Federal Rule of Civil Procedure 23(a), and (b)(1), 23(b)(2) and 23(b)(3).

27        27.      Excluded from the Class and Sub-Class are: (i) all persons who purchased a B&J Ice

28   Cream products for resale; (ii) Defendant and its employees, principals, affiliated entities, legal

AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 4:10-cv-04387-PJH

1  representatives, successors and assigns; (iii) any person who files a valid, timely request for

2  exclusion; and (iv) the judges to whom this action is assigned and any members of their immediate

3  families.

4         28.      Upon information and belief, there are thousands of Class members who are

5  geographically dispersed throughout the United States and Sub-Class members who are

6  geographically dispersed throughout the State of California.  Therefore, individual joinder of all

7  members of the Class or Sub-Class would be impracticable.

8         29.      Common questions of law or fact exist as to all members of the Class and Sub-Class.

9  These questions predominate over the questions affecting only individual class members.  These

10 common legal or factual questions include:

        a.   whether B&J's labels its Ice Cream products as "all natural;"

11

12      b.   whether the alkalized cocoa used in B&J' Ice Cream products is
             processed with a synthetic ingredient;
13

14      c.   whether B&J's "all natural" labeling of its Ice Cream products is
             likely to deceive class or sub-class members or the general
15           public;

16      d.   whether B&J's representations are unlawful;

17
        e.   the appropriate measure of resitutionary disgorgement and/or
18           restitution.

19        30.     Plaintiff's claims are typical of the claims of the Class and Sub-Class, in that Plaintiff

20 was a consumer who purchased B&J's "all natural" Ice Cream products in the United States and in

21 California that contained alkalized cocoa processed with a synthetic ingredient during the Class

22 Period.  Plaintiff, therefore, is no different in any relevant respect from any other Class or Sub-Class

23 member, and the relief sought is common to the Class and Sub-Class.

24        31.     Plaintiff is an adequate representative of the Class and Sub-Class because her

25 interests do not conflict with the interests of the Class and Sub-Class members she seeks to

26 represent, and she has retained counsel competent and experienced in conducting complex class

27 action litigation.  Plaintiff and her counsel will adequately protect the interests of the Class and Sub-

28 Class.

---

AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 4:10-cv-04387-PJH

1    32.    A class action is superior to other available means for the fair and efficient

2 adjudication of this dispute.  The damages suffered by each individual class member likely will be

3 relatively small, especially given the relatively small cost of the Ice Cream products at issue and the

4 burden and expense of individual prosecution of the complex litigation necessitated by B&J's

5 conduct.  Thus, it would be virtually impossible for the Class and Sub-Class members individually to

6 effectively redress the wrongs done to them.  Moreover, even if the Class and Sub-Class members

7 could afford individual actions, it would still not be preferable to class-wide litigation.

8 Individualized actions present the potential for inconsistent or contradictory judgments.  By contrast,

9 a class action presents far fewer management difficulties and provides the benefits of single

10 adjudication, economies of scale, and comprehensive supervision by a single court.

11    33.    In the alternative, the Class and Sub-Class may be certified because B&J has acted or

12 refused to act on grounds generally applicable to the Class and Sub-Class, thereby making

13 appropriate preliminary and final equitable relief with respect to the Class and Sub-Class.

**FIRST CAUSE OF ACTION**
**(Common Law Fraud)**

14
15

16    34.    Plaintiff hereby incorporates the foregoing paragraphs of this Complaint and restates

17 them as if they were fully written herein.  This Count is brought on behalf of Plaintiff and the Class

18 and the Sub-Class.

19    35.    Defendant's product labels for its Ice Cream uniformly misrepresented during the

20 Class Period that its Ice Cream products were "all natural," when in fact they contain alkalized cocoa

21 powder processed with potassium carbonate, a man made, synthetic ingredient.  While Defendant's

22 labels did uniformly disclose during the Class Period that its "all natural" Ice Cream contained

23 alkalized cocoa powder, it uniformly did not disclose during the Class Period that the alkalized

24 cocoa powder it used contained the man made synthetic potassium carbonate.  Thus, the disclosure

25 on its labels that the Ice Cream contained alkalized cocoa power constitutes an affirmative act of

26 concealment and non-disclosure since cocoa power may be (and commonly is) alkalized with natural

27 ingredients such as sodium carbonate, and the information about whether Defendant's cocoa powder

28 was alkalized with the man-made, synthetic potassium carbonate was known only by Defendant.

1  Defendant had a duty to disclose this material information in light of its representation on its labels

2  that its Ice Cream was "all natural."

3        36.    Defendant's "all natural" statements and representations and it its affirmative

4  concealments and omissions described herein were material in that there was a substantial likelihood

5  that a reasonable prospective purchaser of its Ice Cream would have considered them important

6  when deciding whether or not to purchase the Ice Cream.

7        37.    Defendant knew or recklessly disregarded that its Ice Cream was not "all natural,"

8  and uniformly misrepresented its Ice Cream as "all natural" and affirmatively concealed and omitted

9  the truth with the intent and purpose of inducing consumers (*i.e.,* Plaintiff and the Class and Sub-

10  Class) to purchase its Ice Cream products.

11        38.    Defendant failed to disclose, misrepresented and/or concealed the foregoing material

12  facts from Plaintiff and the Class and Sub-Class knowing that these facts may have justifiably

13  induced them to refrain from purchasing Defendant's Ice Cream and instead purchase another

14  manufacturer's ice cream, frozen yogurt or sorbet that was actually all natural, or to purchase a less

15  expensive non-natural substitute ice cream, frozen yogurt or sorbet product.

16        39.    As set forth in paragraph 5 of this Complaint, Plaintiff relied on Defendant's "all

17  natural" representations on its Ice Cream labels as a material basis for her decisions to purchase

18  Defendant's Ice Cream.  Moreover, based on the very materiality of Defendant's misrepresentations,

19  concealments and omissions uniformly made on or omitted from its Ice Cream product labels, Class

20  and Sub-Class members' reliance on those misrepresentations, concealments and omissions as a

21  material basis for their decision to purchase Defendant's Ice Cream may be presumed or inferred for

22  all Class and Sub-Class members.

23        40.    Defendant carried out the scheme set forth in this Complaint willfully, wantonly and

24  with reckless disregard for the interests of Plaintiff and the Class and the Sub-Class.

25        41.    By reason of the foregoing, Plaintiff and members of the Class and Sub-Class have

26  been injured by purchasing Ice Cream represented to be "all natural" which was not, and/or by

27  paying a premium for that supposedly "all natural" Ice Cream over less expensive non-natural

28  alternatives.  Plaintiff, the Class and Sub-Class are therefore entitled to recover damages, punitive

AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 4:10-cv-04387-PJH

1    damages, equitable relief such as restitution and disgorgement of profits, and declaratory and

2    injunctive relief.

3

4                                    **SECOND CAUSE OF ACTION**
                             **("Unlawful" Business Practices in Violation of**
5            **The Unfair Competition Law ("UCL"), Bus. & Prof. Code 17200, et seq.)**

6

7            42.     Plaintiff hereby incorporates the foregoing paragraphs of this Complaint and restates

8    them as if they were fully written herein.  This Count is brought on behalf of Plaintiff and the Sub-

9    Class.

10           43.     The UCL defines unfair business competition to include any "unlawful, unfair or

11   fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.  Cal.

12   Bus.  Prof. Code 17200.

13           44.     A business act or practice is "unlawful" if it violates any established state or federal

14   law.

15           45.     California's Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Article 6,

16   Section 110660 provides that: "Any food is misbranded if its labeling is false or misleading in any

17   particular."

18           46.      B&J's has violated, and continues to violate the Sherman Law, Article 6, Section

19   110660 and hence has also violated and continues to violate the "unlawful" prong of the UCL

20   through its use of the term "all natural" on the labels of its Ice Cream products that contained

21   alkalized cocoa processed with a unnatural, synthetic ingredient.  This identical conduct also violates

22   the FDA Policy concerning what is "natural" as set forth in paragraph 12 and throughout this

23   Complaint.  This identical conduct also serves as the sole factual basis of each cause of action

24   brought by this Complaint, and Plaintiff does not seek to enforce any of the state law claims raised

25   herein to impose any standard of conduct that exceeds that which would violate the FDA Policy

26   concerning what is "natural."

27

28

AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 4:10-cv-04387-PJH

1    47.    By committing the acts and practices alleged above, B&J has engaged, and continues

2  to be engaged, in unlawful business practices within the meaning of California Business and

3  Professions Code 17200 *et seq.*

4    48.    Through its unlawful acts and practices, B&J has obtained, and continues to unfairly

5  obtain, money from members of the Sub-Class.  As such, Plaintiff requests that this Court cause B&J

6  to restore this money to Plaintiff and all Sub-Class members, to disgorge the profits B&J made on

7  these transactions, and to enjoin B&J from continuing to violate the Unfair Competition Law or

8  violating it in the same fashion in the future as discussed herein.  Otherwise, the Sub-Class may be

9  irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

10

11                          **THIRD CAUSE OF ACTION**
                 **("Unfair" Business Practices in Violation of**
12      **The Unfair Competition Law ("UCL"), Bus. & Prof. Code 17200, et seq.)**

13    49.    Plaintiff hereby incorporates the foregoing paragraphs of this Complaint and restates

14  them as if they were fully written herein.  This Count is brought on behalf of Plaintiff and the Sub-

15  Class.

16    50.    The UCL defines unfair business competition to include any "unlawful, unfair or

17  fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.  Cal.

18  Bus. Prof. Code 17200.

19    51.    A business act or practice is "unfair" under the Unfair Competition Law if the

20  reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the

21  harm to the alleged victims.

22    52.    B&J has and continues to violate the "unfair" prong of the UCL through its

23  misleading description of its products as all natural when indeed a main ingrediant is not natural

24  being processed with a synthetic substance. The gravity of the harm to members of the Sub-Class

25  resulting from such unfair acts and practices outweighs any conceivable reasons, justifications

26  and/or motives of B&J for engaging in such deceptive acts and practices.  By committing the acts

27  and practices alleged above, B&J has engaged, and continues to be engaged, in unfair business

28  practices within the meaning of California Business and Professions Code 17200 *et seq.*

AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 4:10-cv-04387-PJH

53.     Through its unfair acts and practices, B&J has obtained, and continues to unfairly obtain, money from members of the Sub-Class.  As such, Plaintiff requests that this Court cause B&J to restore this money to Plaintiff and all Sub-Class members, to disgorge the profits B & J has made on its Ice Cream products, and to enjoin B&J from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future as discussed herein.  Otherwise, the Sub-Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## FOURTH CAUSE OF ACTION
### ("Fraudulent" Business Practices in Violation of
### The Unfair Competition Law ("UCL"), Bus. & Prof. Code 17200, et seq.)

54.     Plaintiff hereby incorporates the foregoing paragraphs of this Complaint and restates them as if they were fully written herein.  This Count is brought on behalf of Plaintiff and the Sub-Class.

55.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.  Cal. Bus. & Prof. Code §17200.

56.     A business act or practice is "fraudulent" under the Unfair Competition Law if it actually deceives or is likely to deceive members of the consuming public.

57.     B&J's acts and practices of mislabeling their products as all natural despite the fact they contained alkalized cocoa processed with non-natural, a synthetic substance has the effect of misleading consumers into believing the product something it is not.

58.     As a result of the conduct described above, B&J has been, and will continue to be, unjustly enriched at the expense of Plaintiff and members of the proposed Sub-Class.  Specifically, B&J has been unjustly enriched by the profits it has obtained from Plaintiff and the Sub-Class from the purchases of Ice Cream products made by them.

59.     Through its unfair acts and practices, B&J has improperly obtained, and continues to improperly obtain, money from members of the Sub-Class.  As such, Plaintiff requests that this Court cause B&J to restore this money to Plaintiff and all Sub-Class members, to disgorge the

AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 4:10-cv-04387-PJH

1  profits B & J has made on its Ice Cream products, and to enjoin B&J from continuing to violate the

2  Unfair Competition Law or violating it in the same fashion in the future as discussed herein.

3  Otherwise, the Sub-Class may be irreparably harmed and/or denied an effective and complete

4  remedy if such an order is not granted.

5

6
**FIFTH CAUSE OF ACTION**
**(False Advertising in Violation of**
7
**California Business & Professions Code l7500, et seq.)**

8

9  60.     Plaintiff hereby incorporates the foregoing paragraphs of this Complaint and restates

10  them as if they were fully written herein.

11  61.     This cause of action is brought by Plaintiff on behalf of herself, the Sub-Class

12  members, and the general public of the State of California.

13  62.     Defendant uses advertising on its packaging to sell its Ice Cream products.  Defendant

14  is disseminating advertising concerning its goods which by its very nature is deceptive, untrue, or

15  misleading within the meaning of California Business & Professions Code 17500, *et seq.* because

16  those advertising statements contained on its product labels are misleading and likely to deceive, and

17  continue to deceive, members of the putative class and the general public as described throughout

18  this Complaint.

19  63.     In making and disseminating the statements alleged herein, Defendant knew or should

20  have known that the statements were untrue or misleading, and acted in violation of California

21  Business & Professions Code 17500, *et seq.*

22  64.     The misrepresentations and non-disclosures by Defendant of the material facts

23  detailed above constitute false and misleading advertising and therefore constitute a violation of,

24  California Business & Professions Code 17500, *et seq.*

25  65.     Through its deceptive acts and practices, Defendant has improperly and illegally

26  obtained money from Plaintiff and members of the putative Sub-Class.  As such, Plaintiff requests

27  that this Court cause Defendant to restore this money to Plaintiff and members of the putative Sub-

28  Class, and to enjoin Defendant from continuing to violate California Business & Professions Code

---

17

1    §17500, *et seq.* or violating it in the same fashion in the future as discussed above.  Otherwise,

2    Plaintiff and those similarly situated will continue to be harmed by Defendant's false and/or

3    misleading advertising.

4          66.      Pursuant to California Business & Professions Code 17535, Plaintiff seeks an order of

5    this Court ordering Defendant to fully disclose the true nature of its misrepresentations.  Plaintiff

6    additionally  requests an order requiring Defendant to disgorge its ill-gotten gains and/or award full

7    restitution of all monies wrongfully acquired by Defendant by means of such acts of false

8    advertising, plus interest and attorneys fees so as to restore any and all monies which were acquired

9    and obtained by means of such untrue and misleading advertising, misrepresentations and omissions,

10   and which ill-gotten gains are still retained by Defendant.  Plaintiff and the putative Sub-Class may

11   be irreparably harmed and/or denied an effective and complete remedy if such an order is not

12   granted.

13         67.      Plaintiff and the putative Sub-Class are therefore entitled to the relief described

14   below.

15                          **SIXTH CAUSE OF ACTION**
                    **(Restitution Based On Quasi-Contract/Unjust Enrichment)**
16

17         68.      Plaintiff hereby incorporates by reference each and every allegation contained in the

18   preceding paragraphs of this Complaint as if fully rewritten herein.  Plaintiff pleads this Count in the

19   alternative.  This Count is brought on behalf of Plaintiff, the Class, and the Sub-Class.

20         69.      B&J's conduct in enticing Plaintiff, the Class and the Sub-Class to purchase its Ice

21   Cream products through its false and misleading packaging as described throughout this Complaint

22   is unlawful because the statements contained on its product labels are untrue.  B&J took monies

23   from Plaintiff, Class and Sub-Class members for a product promised to be "all natural," even though

24   the product it sold is not natural as specified throughout this Complaint.  B&J has been unjustly

25   enriched at the expense of Plaintiff, Class and Sub-Class members as result of its unlawful conduct

26   alleged herein, thereby creating a quasi-contractual obligation on B&J to restore these ill-gotten

27   gains to Plaintiff, the Class and the Sub-Class.

28

AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 4:10-cv-04387-PJH

1    70.    As a direct and proximate result of B&J's unjust enrichment, Plaintiff, the Class and

2    the Sub-Class members are entitled to restitution or restitutionary disgorgement in an amount to be

3    proved at trial.

4                                        **PRAYER**

5    WHEREFORE, Plaintiff, on behalf of herself and on behalf of the other members of the

6    Class and Sub-Class, request award and relief as follows:

7    A.    An order certifying that this action is properly brought and may be maintained as a

8    class action, that Plaintiff be appointed Class and Sub-Class Representative and Plaintiff's counsel

9    be appointed Class and Sub-Class Counsel.

10   B.    Restitution in such amount that Plaintiff and all Class and Sub-Class members paid to

11   purchase Ice Cream products, or the profits B&J obtained from those transactions.

12   C.    Compensatory damages;

13   D.    Punitive damages;

14   E.    A declaration and order enjoining B&J from advertising its products misleadingly, in

15   violation of California's Sherman Food, Drug and Cosmetic Law and other applicable laws and

16   regulations as specified in this Complaint.

17   F.    An order awarding Plaintiff her costs of suit, including reasonable attorneys' fees and

18   pre and post-judgment interest.

19   G.    An order requiring an accounting for, and imposition of a constructive trust upon, all

20   monies received by B&J as a result of the unfair, misleading, fraudulent and unlawful conduct

21   alleged herein.

22   H.    Such other and further relief as may be deemed necessary or appropriate.

23

24

25

26

27

28

AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 4:10-cv-04387-PJH

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all causes of action and/or issues so triable.

Dated:  December 8, 2010                    By:   s/Joseph N. Kravec, Jr.
                                                        Joseph N. Kravec, Jr.

Ellen M. Doyle
**STEMBER FEINSTEIN DOYLE
   PAYNE & CORDES LLC**
Allegheny Building, 17th Floor
429 Forbes Avenue
Pittsburgh, PA  15219

Michael D. Braun
**BRAUN LAW GROUP, P.C.**
10680 West Pico Boulevard, Suite 280
Los Angeles, CA 90064

Janet Lindner Spielberg
**LAW OFFICE OF JANET LINDNER
   SPIELBERG**
12400 Wilshire Boulevard, Suite 400
Los Angeles, California 90025

*ATTORNEYS FOR PLAINTIFF*

AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 4:10-cv-04387-PJH