1   Michael D. Braun (167416)
2   **BRAUN LAW GROUP, P.C.**
    10680 W. Pico Blvd., Suite 280
3   Los Angeles, CA 90064
    Tel: (310) 836-6000
4   Fax: (310) 836-6010

5   Joseph N. Kravec, Jr.(admitted *pro hac vice*)
    **STEMBER FEINSTEIN DOYLE**
6   **    PAYNE & KRAVEC, LLC**
    Allegheny Building, 17th Floor
7   429 Forbes Avenue
    Pittsburgh, PA 15219
8   Tel:  (412) 281-8400
    Fax:  (412) 281-1007

9   Janet Lindner Spielberg (221926)
10  **LAW OFFICES OF JANET LINDNER**
    **    SPIELBERG**
11  12400 Wilshire Boulevard, Suite 400
    Los Angeles, California  90025
12  Tel:  (310) 392-8801
    Fax:  (310) 278-5938

13  *Attorneys for Plaintiffs Thurston,*
    *Denmon-Clark and Astiana*
14

James S. Notis (admitted *pro hac vice*)
Jennifer Sarnelli (242510)
Kelly A. Noto (admitted *pro hac vice*)
**GARDY & NOTIS, LLP**
560 Sylvan Avenue
Englewood Cliffs, NJ 07632
Tel: (201) 567-7377
Fax: (201) 567-7337

*Attorneys for Plaintiffs*
*Corriette and Waldron*

15              **UNITED STATES DISTRICT COURT**
16              **NORTHERN DISTRICT OF CALIFORNIA**

17  CHANEE THURSTON and TANASHA           CASE NO.:  10-cv-04937-PJH
18  DENMON-CLARK  on behalf of themselves
    and all others  similarly situated,       CLASS ACTION
19
                    Plaintiffs               **NOTICE OF MOTION; MEMORANDUM IN**
20                                           **SUPPORT OF PLAINTIFFS' MOTION FOR**
                                             **FINAL APPROVAL OF CLASS ACTION**
21          v.                               **SETTLEMENTS**
22  CONOPCO, INC. d/b/a UNILEVER            Hearing Date:  September 12, 2012
23  (formerly d/b/a GOOD HUMOR-BREYERS)     Time:              9:00 a.m.
    d/b/a BREYERS,                          Courtroom:     3 (Oakland Courthouse)
24
                    Defendant.
25
26
27
28

1

2 | ROSS CORRIETTE and JAMES WALDRON | **RELATED CASE**
on behalf of themselves and all others similarly
3 | situated, | Case No. 11-cv-01811-PJH

4

5 | Plaintiffs

6 | v.

7 | UNILEVER d/b/a BREYERS,

8

9 | Defendant.

10

11 | SKYE ASTIANA on behalf of herself and all | **RELATED CASE**
others similarly situated,
12 | Case No. 10-cv-04387-PJH

13 | Plaintiff,

14 | v.

15

16 | BEN & JERRY'S HOMEMADE, INC.,

17

18 | Defendant.

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.     INTRODUCTION & SUMMARY OF ARGUMENT.................................................................. 2

II.    FACTUAL AND PROCEDURAL BACKGROUND ................................................................ 3

    A.    Nature of the Action ................................................................................................... 3

    B.    Procedural Posture of the Litigation ........................................................................... 4

    C.    Settlement Discussions ............................................................................................... 5

    D.    Settlement Terms ........................................................................................................ 6

    E.    Preliminary Approval and Notice to Settlement Classes............................................ 8

III.   THE SETTLEMENTS ARE FAIR, REASONABLE AND ADEQUATE AND FINAL
     APPROVAL SHOULD BE GRANTED....................................................................... 10

    A.    Strength of Plaintiffs' Case....................................................................................... 11

    B.    The Risk, Expense, Complexity and Likely Duration of Litigation Favor
       Settlement .................................................................................................................. 12

    C.    Risk of Maintaining Class Action Status Throughout Trial ..................................... 12

    D.    Amount Offered in Settlement.................................................................................. 13

    E.    The Stage of Proceedings and the Amount of Discovery Completed ....................... 14

    F.    Experience and Views of Counsel ............................................................................ 15

    G.    Reaction of the Settlement Class .............................................................................. 16

IV.    CONCLUSION............................................................................................................... 17

## TABLE OF AUTHORITIES

### CASES

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ....................................... 10, 12

*Dennis v. Kellogg Co.*, 2012 U.S. App. LEXIS 14385 (9th Cir. July 13, 2012) .................................. 6, 7

*Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 U.S. Dist. LEXIS 49477 (N.D. Cal. 2010) ................ 16

*Gen. Tel. Co. v. Falcon*, 457 U.S. 147 (1982) ....................................................................... 13

*Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. 2007) ............................................. 14

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998). ....................................................... 11

*Heritage Bond*, 2005 WL 1594403 (C.D.Cal. 2005) ............................................................... 12

*In re HP Inkjet Printer Litig.*, 2011 U.S. Dist. LEXIS 37446 (N.D. Cal. 2011) ..................................... 16

*In re Immune Response Sec. Litig.*, 497 F.Supp.2d 1166 (S.D. Cal. 2007) ............................................ 15

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ................................................. 12, 14

*In re Omnivision Tech., Inc.*, 559 F.Supp.2d 1036 (N.D. Cal. 2008) ...................................... 11

*Kamar v. Radio Shack Corp.*, 375 Fed. Appx. 734 (9th Cir. Cal. 2010) ............................................ 13

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. Cal. 2012) ...................................... 11-13

*Mullane v. Central Hanover Trust*, 339 U.S. 306 (1950) ............................................................ 9

*Nat'l Rural Telecom Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ..................... 12, 15, 16

*Officers for Justice v. Civil Service Com.*, 688 F.2d 615 (9th Cir. 1982) ....................................... 10, 13

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ........................................ 10

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) ........................................... 10

*Zeisel v. Diamond Foods, Inc.*, 2011 WL 2221113 (N.D. Cal. 2011) ...................................... 15

1

## RULES

Fed. R. Civ. P. 23(c) ................................................................................................ 9, 13

Fed. R. Civ. P. 23(e). ............................................................................................. 10, 13

## TREATISES

*4 A. Conte & H. Newberg, Newberg on Class Actions*, § 11:50 (4th ed. 2002) ..................................... 12

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, pursuant to Orders entered on March 30, 2012 (*Astiana* Doc. No. 81; *Thurston* Doc. No. 47; *Corriette* Doc. No. 51),[1] on September 12, 2012 at 9:00 a.m., or as soon thereafter as counsel may be heard before the Honorable Judge Phyllis J. Hamilton, United States District Court Judge for the Northern District of California, 1301 Clay Street, Courtroom 3, Oakland, CA 94612, Plaintiffs Chanee Thurston, Tanasha Denmon-Clark, Ross Corriette and James Waldron (the "Thurston/Corriette Plaintiffs") and Plaintiff Skye Astiana (collectively "Plaintiffs") will and hereby do move this Court pursuant to Fed. R. Civ. P. 23 for entry of Order(s) granting final approval to the class action settlements in these related actions on the terms set forth in the Settlement Agreements (*Astiana* Doc. No. 75 Ex. B (the "B&J Settlement Agreement"); *Thurston* Doc. No. 38 Ex. A and *Corriette* Doc. No. 46 Ex. A (the "Breyers Settlement Agreements") (collectively, the "Settlement Agreements" or "Settlements"), and for final certification of the Settlement Classes as defined in those Settlement Agreements. Concurrently submitted with this Motion are [Proposed] Final Orders and Judgments in the form agreed to by the parties.

This Motion is based on the accompanying Memorandum, Declaration of Michael D. Braun In Support of Final Approval of Class Action Settlements ("Braun Decl."); the executed Settlement Agreements; the papers and pleadings on file in this matter; and any argument made by counsel at the Final Approval Hearing.[2]

---

[1] Docket references will be referred to as "Doc. No.__" Docket references to Case No. 10-cv-04387-PJH references will be preceded by "*Astiana.*" References to Case Nos. 10-cv-04937-PJH will be preceded by "*Thurston.*" References to 11-cv-01811-PJH will be preceded by "*Corriette.*"

[2] The [Proposed] Order Granting Final Approval of Settlement and Judgment; Award of Attorneys' Fees and Reimbursement of Expenses; and Plaintiff Incentive Award will be filed on August 25, 2012 in conjunction with Plaintiffs' Notice of Motion and Memorandum in Support of Award of Attorneys' Fees, Reimbursement of Expenses and Plaintiff Incentive Award.

1   Plaintiffs on behalf of themselves and the Settlement Classes, respectfully submit this

2   Memorandum in support of their unopposed Motion for Final Approval of Class Action Settlements.[3]

3   **I.      INTRODUCTION & SUMMARY OF ARGUMENT**

4   The Settlements before the Court present terms that are very favorable to the Settlement

5   Classes.[4] The gravamen of Plaintiffs' Actions is that Defendants falsely and misleadingly labeled their

6   Ice Cream Products as "All Natural" when in fact those Ice Cream Products contained cocoa alkalized

7   with potassium carbonate, a man-made, synthetic substance.   *Thurston*, Doc. No. 21 at ¶¶ 1-2;

8   *Corriette*, Doc. No. 1 at ¶¶ 2, 6; *Astiana*, Doc. No. 20 at ¶¶ 1-2.  The Settlement Agreements directly

9   redress these allegations by providing that Defendants discontinue use of the term "All Natural" on

10  their Ice Cream Products.  In addition, Defendants will reimburse each B&J and Breyers Settlement

11  Class Member $2.00 for each package of Ice Cream Product her or she certifies they purchased, for up

12  to ten packages. (Settlement Agreements at §III.C.1.b.).  To facilitate the settlement, Unilever agreed

13  to create a minimum restitution fund of $2,500,000 for purchasers of Breyers Ice Cream Products.

14  Breyers Settlement Agreements at §III.C.1. B&J, which had approximately double the sales volume of

15  Ice Cream Products as Unilever, agreed to establish a $5,000,000.00 restitution fund.  B&J Settlement

16  Agreement at §III.C.1.a.  Defendants have agreed to pay all eligible Settlement Class Members, even if

17  claims were to exceed the minimum restitution funds set forth above.  Conversely, if Settlement Class

18  Members' claims do not fully deplete the restitution funds, then any Residual Restitution will be

19  considered *cy-pres* and donated to not-for-profit charities and/or causes related to food or nutrition in

20  the United States.  Settlement Agreements at §III.C.3.  Under no circumstances will residual amounts

21  revert to Defendants.  Importantly, Defendants have also agreed not to use the disputed "All Natural"

22

23  [3] All capitalized terms not defined herein shall have the same meaning as ascribed to them in the Settlement Agreements. The provisions of the Settlement Agreements, including all definitions and

24  defined terms, are incorporated by reference herein.

25  [4] The Settlements at issue resolved the claims asserted in *Thurston et al v. Conopco, Inc.*, Case No. 10-04937-PJH (the "Thurston Action"), *Corriette, et al. v. Unilever*, Case No. 11-1811-PJH (the "Corriette Action"), and *Astiana v. Ben & Jerry Homemade Inc.*, Case No. 10-4387-PJH (the "Astiana Action")

26  (collectively, the "Actions"), against Conopco, Inc. d/b/a Unilever (formerly d/b/a Good Humor-Breyers) d/b/a Breyers ("Unilever"), and its wholly-owned subsidiary, Ben & Jerry's Homemade, Inc.

27  ("B&J") (collectively "Defendants").

28  | CASE NOS.: 10-cv-04937-PJH,  | 2 | MEM. ISO FINAL APPROVAL |
    | 11-cv-01811-PJH, 10-cv-04387-PJH |  | CLASS ACTION SETTLEMENT |

1  claims on all other ice creams, yogurts, and sorbets containing alkalized cocoa in the future, thereby

2  providing meaningful injunctive relief to Breyers and B&J Settlement Class Members.  The Settlement

3  Agreements require B&J and Unilever to separately bear the cost of the settlement logistics, including

4  the costs of notice, claims administration, and awarded attorneys' fees and expenses.  Settlement

5  Agreements at §IV.4.

6         As reflected by its terms, the Settlements are fair, reasonable and adequate.  Plaintiffs and Co-

7  Lead Counsel submit, based upon their evaluation of the facts, governing law, and the risks of

8  continued litigation, that the proposed Settlements provide meaningful and timely recovery and are in

9  the best interests of the Settlement Classes.  Moreover, as of this date, not a single member of the

10 Settlement Classes has objected, or opted-out, thereby further demonstrating the fairness of the

11 Settlements.

12        As detailed in Plaintiffs' Motion for Preliminary Approval of Class Action Settlements

13 ("Motion for Preliminary Approval") (*Astiana* Doc. No. 75; *Thurston* Doc. No. 38; *Corriette* Doc. No.

14 46), the requirements of Fed. R. Civ. P. 23 have been met and by Orders of this Court, the Settlement

15 Classes were provisionally certified.  *Astiana* Doc. No. 81; *Thurston* Doc. No. 47; *Corriette* Doc. No.

16 51.  In accordance with this Court's March 30, 2012 Orders, and the due process requirements of Fed.

17 R. Civ. P 23, notice was disseminated to the Settlement Classes, whose responses were overwhelmingly

18 positive.  As explained below, all prerequisites for final approval of these Settlements have been met

19 and Co-Lead Counsel respectfully submit that final approval of the Settlements are warranted.

20 **II.     FACTUAL AND PROCEDURAL BACKGROUND**

21        **A.     Nature of the Action**

22        On September 29, 2010, Plaintiff Astiana filed a Complaint for Damages, Equitable,

23 Declaratory and Injunctive Relief against Defendant B&J in the Northern District of California

24 alleging B&J's conduct violated the unlawful, unfair and fraudulent prongs of California's Business

25 and Professions Code §17200, *et. seq.* (the "UCL"), Business & Professions Code §17500 *et. seq.* (the

26 "FAL") and that B&J's conduct was grounds for restitution on the basis of quasi-contract/unjust

27 enrichment. *Astiana* Doc. No. 1 ¶3. Astiana brought her action on behalf of a putative nationwide class

28

and a California sub-class of consumers who purchased B&J's "All Natural" ice creams, yogurts, and sorbets containing alkalized cocoa. *Id.*

On November 1, 2010, Plaintiffs Thurston and Denmon-Clark filed a Complaint for Damages, Equitable, Declaratory and Injunctive Relief against Defendant Unilever in the Northern District of California asserting similar common law fraud, consumer fraud and unjust enrichment claims on behalf of a putative nationwide class and a California sub-class of consumers who purchased Breyers "All Natural" original ice creams, yogurts and sorbets or Breyers Smooth & Dreamy ½ Fat "All Natural" ice creams, yogurts and sorbets which contained alkalized cocoa." *Thurston* Doc. No. 1.

On November 4, 2010, Plaintiffs Corriette and Waldron (along with a third Plaintiff who has since withdrawn), filed a Class Action Complaint against Defendant Unilever in the District of New Jersey. *See Corriette*, Doc. 1. The *Corriette* Action asserted claims for consumer fraud, breach of express and implied warranties, and unjust enrichment on behalf of a nationwide class and a New Jersey sub-class of consumers who purchased Breyers All Natural Original Ice Cream and Breyers Smooth & Dreamy ½ Fat All Natural Ice Cream containing alkalized cocoa, and alleged that these Ice Cream Products were not all natural because they contained alkalized cocoa. *Id.* at ¶¶1-2, 6.

All of the Actions were ultimately transferred to this Court and related. *Astiana* Doc. Nos. 34, 55, 58; *Corriette* Doc No. 27.

### B.   Procedural Posture of the Litigation

Subsequent to the filing of the *Astiana* and *Thurston* Actions, the parties participated in a joint 26(f) conference in which Defendants advised that they intended to file motions to dismiss and to strike. These motions were filed on November 24, 2010 and December 6, 2010 in the *Astiana* and *Thurston* Actions, respectively. *Astiana* Doc. No. 16; *Thurston* Doc. No. 17.

Defendants briefed an exhaustive array of arguments including federal preemption, abstention, and a Fed.R.Civ.P. 9(b) challenge. In response to Defendants' motions, Plaintiffs Astiana, Thurston, and Denmon-Clark filed Amended Complaints. *Astiana* Doc. No. 20; *Thurston*, Doc. No. 21. On December 20, 2010, Defendants renewed their motions to dismiss and strike, once again vigorously

1   contesting Plaintiffs' claims.  Plaintiffs opposed.  See Astiana, Doc. Nos. 38, 39; Thurston, Doc. Nos.

2   34, 35.

3        During this time, Unilever also filed a motion to dismiss the *Corriette* Action, which was then

4   pending in the District of New Jersey.  *Corriette* Doc. No. 13.  The *Corriette* Plaintiffs similarly

5   opposed Unilever's motion to dismiss.  *Id.* at Doc. No. 15.  On March 28, 2011, The Honorable

6   William H. Walls, U.S.D.J., denied Unilever's motion to dismiss and transferred the *Corriette* Action to

7   the Northern District of California, where the *Astiana* and *Thurston* Actions were pending.  *Id.* at Doc.

8   18, 19, 20.  Judge Walls further ruled that if the motion to dismiss that was pending in the *Astiana* and

9   *Thurston* actions was granted for certain, specified reasons, the *Corriette* Plaintiffs could return to the

10  District of New Jersey to litigate their claims.  *Id.* at Doc. Nos. 18, 19.

11       After extensive briefing and oral argument, this Court entered a 22-page Order denying

12  Defendants' motions to dismiss and to strike in their entirety.  *See Astiana*, Doc. No. 62.  Subsequent to

13  the Court's May 26, 2011 Order, Plaintiffs engaged in discovery, serving document requests and

14  interrogatories.   Braun Decl. at ¶ 6.   The parties subsequently agreed to engage in settlement

15  discussions which ultimately led to the Settlement Agreements that are the subject of this Motion.  Prior

16  to seeking Preliminary Approval, Plaintiffs sought additional discovery regarding Defendants' profits

17  and sales, certain merits and class certification issues, and took two Fed.R.Civ.P. 30(b)(6) depositions

18  to further ensure that the terms of the Settlements were fair, reasonable and adequate.  *Id.*

19      **C.**    **Settlement Discussions**

20       After a series of preliminary discussions regarding the parameters of a possible settlement, the

21  parties agreed to mediate these matters on September 14, 2011, before David A. Rotman, Esq., of

22  Gregorio, Haldeman, & Rotman.  During that mediation, including break-out sessions for the separate

23  cases, and with the assistance of the mediator, the parties were able to reach agreement on certain key

24  terms of the Settlements, and agreed to continue negotiating remaining terms thereafter.  Braun Decl. ¶

25  7.   After approximately five weeks of continued negotiations involving the mediator, the parties

26  reached agreements in principle to settle all three Actions, which are reflected in the Settlements

27  presently before the Court.  *Id.*

## D.    Settlement Terms

The parties have diligently worked on the Settlements, which reflect months of hard fought, arms-length negotiation.  *Id.*  Plaintiffs submit that the terms of the Settlements are incredibly favorable to the Settlement Classes, providing substantial remuneration (*i.e.*, $2.00 per package of B&J or Breyers Ice Cream Products), which represents approximately 60% of the retail price of the average Ice Cream Product.[5]  Settlement Class Members may claim up to three packages of Ice Cream Products with a sworn attestation of purchase, and claim up to 10 packages with the submission of adequate proofs of purchase.  Settlement Agreements at §III.C.3.  Unilever and B&J have agreed to establish minimum restitution funds in the amounts of $2,500,000 and $5,000,000 respectively to pay Class claims.  Settlement Agreements at §III.C.1.a.  If claims exceed these amounts, Defendants have further agreed to pay additional amounts so that all Settlement Class Members receive the full benefit of the Settlements without any pro rata dilution.  Conversely, if the claims made by Settlement Class Members are less than the respective restitution funds, then the residual amounts will be donated as *cy-pres* to not-for-profit charities related to food or nutrition in the United States.  Settlement Agreements at §III.C.3.[6]

---

[5] The parties have sought to certify the following Settlement Classes:

Breyers Settlement Class consisting of: All persons in the United States who purchased Breyers' Unilever Ice Cream Products from November 4, 2004 through the date of Preliminary Approval of Settlement.  Excluded from the Settlement Class are:  (i) Unilever and its employees, principals, affiliated entities, legal representatives, successors and assigns; (ii) any person who files a valid, timely Request for Exclusion; and (iii) the Judges to whom these Actions are assigned and any members of their immediate families. Breyers Settlement Agreements at §III.A.2.

B&J Settlement Class consisting of: All persons in the United States who purchased Ben & Jerry's Unilever Ice Cream Products from September 28, 2006 through the date of Preliminary Approval of the Settlement.  Excluded from the Settlement Class are:  (i) Unilever and its employees, principals, affiliated entities, legal representatives, successors and assigns; (ii) any person who files a valid, timely Request for Exclusion; and (iii) the Judges to whom this Action is assigned and any members of their immediate families. B&J Settlement Agreement at §III.A.2.3.

[6] On July 13, 2012, the Ninth Circuit issued a decision in *Dennis v. Kellogg Co.*, 2012 U.S. App. LEXIS 14385 (9th Cir. Cal. July 13, 2012) holding that *cy pres* contemplated as part of the settlement was improper because it was for the benefit of a group "too remote from the plaintiff class." Id at *11-12. In *Kellogg*, defendant represented that its Frosted Mini-Wheats cereal "improved children's

1    Significantly, in addition to the monetary compensation, the Settlements also provide for

2  important equitable relief to the Settlement Classes.  By the terms of the Settlements, Defendants

3  agreed to remove and refrain from using "All Natural" claims on products containing alkalized cocoa.

4  Settlement Agreements at §III.C.2.a.  This injunctive relief not only provides a future benefit to the

5  Settlement Classes, addressing the heart of Plaintiffs' claims, but also represents a substantial cost to

6  Defendants, since it will cost $7,500 per flavor to change Defendants' Ice Cream Products' labels.  The

7

8  attentiveness" – a claim which plaintiff alleged was false and actionable under California Business &
   Professions Code §17200 and Civil Code §§ 1750.  As part of the settlement, defendant agreed to
9  donate "$5.5 million "worth" of specific Kellogg food items to charities that feed the indigent" *Id.* at *6.
   The Kellogg Court held that because the plaintiff's claims were based on false advertising, the
10 "appropriate *cy pres* recipients are not charities that feed the needy, but organizations dedicated to
   protecting consumers from, or redressing injuries caused by, false advertising." *Id.* at 16.  The *cy pres*
11 contemplated in the Settlement at bar differs in two material respects from that presented in *Kellogg.*
   First, here the Settlement is not restricted to "in-kind food donations" and therefore not limited to
12 narrow group of charities contemplated in *Kellogg.*  Indeed, when queried about this at the Preliminary
   Approval Hearing, Plaintiffs' Counsel asserted their belief that any *cy pres* donation would be in cash,
13 an understanding confirmed by Defendants' counsel. Hearing Transcript at 8:24-10:24 attached to the
   Braun Decl. Ex. C.  Second, the Settlement specifically provides Unilever the maximum flexibility to
14 make the *cy pres* donations consistent with the goals of the claims at issue and the parties' good faith
   obligation in implementing the Settlements in accordance with the law.  The Settlement Agreements
15 broadly contemplate that the donations will be made "through the Unilever Foundation, Ben & Jerry's
   Foundation, or any other affiliated Unilever charitable foundation.... , to not-for-profit charities and/or
16 causes of its choice related to food or nutrition in the United States…" III.C.1.a.  The Settlements,
   unlike *Kellogg,* are not limited to *cy pres* donations to food banks or programs designed to feed the
17 needy, rather they are broad enough to encompass any food related cause including those pertaining to
   advertising and labeling.  Indeed, Unilever prides itself on being a principle member of the International
18 Food and Beverage Alliance whose commitments included "responsible advertising."  See,
   http://www.unilever.com/sustainable-living/consumer/marketing/index.aspx. Unilever prominently
19 states that, "[w]e fully support a consumer's right to know what is in our products and will be
   transparent in terms of ingredients, nutrition values and the health and beauty properties of our
20 products." *Id.* Consistent with that commitment, the flexibility in *cy pres* donations permitted by the
   Settlements and their obligation to "use their best efforts to implement all terms and conditions of the
21 [Settlement] Agreement[s] in the good faith," Unilever must act in accordance with current law in
   implementing the Settlements, and direct *cy pres* to appropriate charities as required by *Kellogg. See,*
22 Settlement Agreements §III.B.2; http://www.unilever.com/sustainable-
   living/consumer/marketing/index.aspx.  If the Court desires to further ensure appropriate donations are
23 made, it could as part of its retention of continuing jurisdiction over the implementation of the
   Settlement direct that Unilever advise the Court of the charities it plans to donate *cy pres* funds to so
24 that the Court can ensure that the organization is one that is both permitted by the Settlement and
   consistent with criteria set forth in *Kellogg.*

1   cost of this change for the 23 flavors of B&J Ice Cream Products, and 35 flavors of Breyers Ice Cream

2   Products, will be upwards of $435,000.  *Id.*

3       Finally, Defendants also agreed to separately bear the costs of the settlement logistics, including

4   the costs of notice, claims administration, and awarded attorneys' fees and expenses.  §IV.4.  These

5   sums will be paid *in addition* to the $2,500,000 and $5,000,000 restitution funds.

6       By any objective standard, the Settlements are fair, reasonable and adequate.  They were

7   preliminarily approved as such, and Plaintiffs respectfully submit that they now warrant final approval.

8       **E.    Preliminary Approval and Notice to Settlement Classes**

9       On March 30, 2012, the Court granted preliminary approval of the Settlements.  *Astiana* Doc

10  No. 81; *Thurston* Doc. No. 47; *Corriette* Doc. No. 51. The Court conditionally certified the Settlement

11  Classes pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), appointing the Law Offices of

12  Janet Lindner Spielberg, the Braun Law Group, P.C. and Stember Feinstein Doyle, Payne & Kravec,

13  LLC as Co-Lead Counsel for the Class in the *Astiana* Action, and the Law Offices of Janet Lindner

14  Spielberg, the Braun Law Group, P.C., Stember Feinstein Doyle, Payne & Kravec, LLC, and Gardy &

15  Notis, LLP as  Co-Lead  Counsel for the Class in the *Thurston* Action.  *Id.*  The Court approved the

16  form and substance of the Class Notice and notice method, and set a Fairness Hearing for September

17  12, 2012. *Id.*    The Court also appointed Rust Consulting Inc. ("Rust") to serve as Settlement

18  Administrator and to carry out the notice plan approved by the Court.  *Id.*  Through Rust, Plaintiffs

19  effectuated the notice plan which entailed:  (1) printing and mailing the Court-approved Class Notice to

20  potential Settlement Class Members for whom mailing addresses were available; (2) sending Class

21  Notice via e-mail to all Class Members for whom parties possessed a valid e-mail address; (3)

22  publishing the Class Notice nationally in *Entertainment Weekly, Country Living, Rolling Stone* and

23  *Cooking Light* magazines; (4) establishing a toll-free telephone number to receive Settlement Class

24  members'   comments   and   questions;   and   (5)   creating   an   informational   website,

25  www.icecreamsettlement.com, to apprise Settlement Class members of the Settlements, provide access

26  to relevant documents, including the Claim Form, and to answer settlement related questions (the

27  "Settlement Website").   See Declaration of Tore Hodne at ¶¶ 5-8, 11-12, 14-15. ("Hodne Decl.").

28

1   Pursuant to the notice plan set forth in the Settlement Agreements and subsequently approved

2   by this Court, Short-form Notice was published as follows:   (1) in the June 15, 2012, issue of

3   *Entertainment Weekly;* (2) in the June, 2012, issue of *Country Living;* (3) in the July 7, 2012 issue of

4   *Rolling Stone*; and (4) in the July 2012, issue of *Cooking Light.*  Hodne Decl. ¶ 11.

5   In addition to these publications, on June 29, 2012, Class Counsel also caused the Short-form

6   Notice to be published via *PR Newswire* on a nation-wide release.  Braun Decl.  ¶ 13.

7   The Settlement Website became operative and available for public access on May 21, 2012, and

8   will remain operational through the Claims Deadline.  Hodne Decl. at ¶¶ 14-15.   The website provides

9   general information on the proposed Settlements and answers to frequently asked questions.  *Id.* at ¶ 15.

10  In addition, the following documents were made available on the Settlement Website:  Class Notices,

11  Claim Forms, the Preliminary Approval Orders, and the Settlement Agreements.  *Id.*

12  As of July 16, 2012, there have been a total of: (1) 9,252 visitors to the Settlement Website; (2)

13  338 calls to the toll-free number; and (3) 1804 claims.  *Id.* at ¶¶ 13, 16, 26.

14  Pursuant to the Court's Orders, the deadline for Settlement Class members to opt out of or

15  object to the Settlements is August 15, 2012.  *Astiana* Doc. No. 81 ¶¶11, 13; *Thurston* Doc. No. 74

16  ¶¶11,13; *Corriette* Doc. No. 51 ¶¶11,13.  As of July 18, 2012, no Class Member has objected or opted

17  out of the Settlements.  Hodne Decl. ¶¶ 19-20; Braun Decl. ¶ 14.

18  Rule 23 and due process concerns require notice to be provided to absent Class Members in

19  order to inform them of the proposed settlement, and grant them the opportunity to opt-out or object.

20  *See* Fed. R. Civ. P. 23(c)(2).   The notice and means of disseminating it must be the "best notice

21  practicable" under the circumstances.  *See, Mullane v. Central Hanover Trust*, 339 U.S. 306, 314-315,

22  317 (1950).   Here, the notice provided was by mail, e-mail, print, and electronic publication.   The

23  combined circulation of these publications is over 45 million readers. *Astiana*  Doc. No. 75, Ex. B-6:

24  Declaration of Mark Rapazzini at Attachment B.  The *PR Newswire* was disseminated nationwide and

25  was subsequently rebroadcast by at least 263 news sources thereby increasing the potential reach of the

26  Notice to consumers.  Braun Decl. ¶ 16.   There can be no question that under the circumstances of this

27  case, the "best notice practicable" was disseminated.

28

CASE NOS.:  10-cv-04937-PJH,
11-cv-01811-PJH, 10-cv-04387-PJH

MEM. ISO FINAL APPROVAL
CLASS ACTION SETTLEMENT

**III.   THE SETTLEMENTS ARE FAIR, REASONABLE AND ADEQUATE AND FINAL APPROVAL SHOULD BE GRANTED**

Plaintiffs present these Settlements to the Court for review under Fed. R. Civ. P. Rule 23(e)(1), which provides in pertinent part:

> (A) The court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class.
>
> (B) The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise.
>
> (C) The court may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate.

The Ninth Circuit accords broad discretion to district courts in determining whether to approve a proposed class settlement. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992). Further, settlements of disputed claims, especially of complex class litigation, are clearly favored. *Id.* at 1276 (recognizing a "strong judicial policy that favors settlements, particularly where complex class litigation is concerned"). Courts recognize that "there is an overriding public interest in settling and quieting litigation; [t]his is particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

The standard in the Ninth Circuit for approval of class settlements is whether the settlement is "fair, adequate, and reasonable." *Officers for Justice v. Civil Svc. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). In the Ninth Circuit, district courts are generally required to consider "some or all" of eight factors in determining whether a class action settlement is "fair, reasonable and adequate" as required by Federal Rule of Civil Procedure 23(e)(2). *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 963 (9th Cir. 2009). These factors include:

> (a) the strength of the plaintiffs' case;
>
> (b) the risk, expense, complexity, and likely duration of further litigation;
>
> (c) the risk of maintaining class action status throughout the trial;
>
> (d) the amount offered in settlement;

(e) the extent of discovery completed and the stage of the proceedings;

(f) the experience and views of counsel;

(g) the presence of a governmental participant; and

(h) the reaction of the class members to the proposed settlement.

*Id.; see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). This list is not intended to be exhaustive, and the importance of each factor will depend upon the nature of the claim, the type of relief sought, and the unique facts and circumstances of each case. *In re Omnivision Tech., Inc.*, 559 F.Supp.2d 1036, 1040-41 (N.D. Cal. 2008) (citing *Officers for Justice*, 688 F.2d at 625). As demonstrated below, these Settlements satisfy the criteria for approval.

## A.     Strength of Plaintiffs' Case

In these cases, the Settlement Agreements were reached at a time when uncertainties lay ahead for each party. While Plaintiffs believe in the merits of their litigations, there can be no question that there are risks associated with continuing litigation. Absent a settlement, the next procedural step would be class certification which Defendants would surely contest. In addition to the general concerns accompanying a motion for certification such as proving commonality and materiality, as discussed in the Motion for Preliminary Approval, in January 2012, the Ninth Circuit rendered its decision in *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. Cal. 2012) which put into question the viability of certifying a nationwide class under California's consumer protection and unjust enrichment laws. While the *Mazza* decision does not affect the *Settlement* Class proposed here, if parties were to continue to litigate, Defendants would undoubtedly raise *Mazza* in an effort to limit the size and scope of the Classes. Indeed, if *Mazza* were applied by this Court, it could drastically reduce the size of the Classes and negatively impact the economics of these litigations.

In addition to uncertainties of class certification, Plaintiffs would still likely face summary judgment motions in advance of any trial. Ultimately, while Plaintiffs maintain they have strong cases, significant risks remain going forward. Accordingly, this factor weighs in favor of final approval of the Settlements.

**B.      The Risk, Expense, Complexity and Likely Duration of Litigation Favor Settlement**

One of the key factors in evaluating a proposed settlement is the risk of continued litigation balanced against the certainty and immediacy of recovery from a settlement. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). "The court need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Class Plaintiffs*, 955 F.2d at 1291 (quoting *Officers for Justice*, 688 F.2d at 625) (internal quotations omitted).

In the absence of settlement now, the parties will continue to expend a great deal of time and money to litigate these cases. As detailed above, there are clearly risks associated with certifying and maintaining nationwide classes, surviving any summary judgment motions, winning at trial, and proving an appropriate measure of damages. Moreover, even if the cases were to proceed to judgment, any final judgment could be appealed which would take significant time. These litigation efforts would be costly to both parties and would require significant judicial oversight. More importantly, further litigation presents absolutely no guarantee that Plaintiffs or the Classes would achieve any recovery, let alone a recovery greater than that provided by the proposed Settlements. Not surprisingly, therefore, courts in this Circuit routinely recognize that, "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Heritage Bond*, 2005 WL 1594403 at *6 (C.D.Cal.); *Nat'l Rural Telecom Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004); *4 A. Conte & H. Newberg, Newberg on Class Actions*, § 11:50 at 155 (4th ed. 2002) (internal quotations omitted). Accordingly, this factor weighs strongly in favor of approving the Settlements.

**C.      Risk of Maintaining Class Action Status Throughout Trial**

As detailed in Plaintiffs' Motion for Preliminary Approval and as discussed in the hearing on that motion, the Ninth Circuit decision in *Mazza v. Am. Honda Motor* Co., 666 F.3d 581 (9th Cir. 2012), which questioned the viability of certifying a nationwide class under California's consumer protection and unjust enrichment laws, has a direct bearing on this case if it were to proceed in

litigation.   Transcript of Preliminary Approval Hearing (March 28, 2012) at 24:3-27:24.   While Plaintiffs have not yet moved to certify the classes, clearly the *Mazza* decision would impact the size and parameters of any classes the Plaintiffs could hope to certify.   Moreover, as with any litigation, even if a class is ultimately certified, the decision is not made in stone and could be reconsidered based on findings of fact in the underlying case or new case law.  See Fed. R. Civ. P. 23(c)(1)(C); *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982) (class certification orders are "inherently tentative"); *Kamar v. Radio Shack Corp.*, 375 Fed. Appx. 734 (9th Cir. 2010) (A district court can revisit an order certifying a class at any time before final judgment).  As certification remains an unknown, this factor too weighs in favor of finally approving these Settlements.

### D.   Amount Offered in Settlement

The general standard by which courts are guided when deciding whether to grant final approval of a settlement is whether the proposed settlement falls within the range of what could be found "fair, adequate, and reasonable." Fed. R. Civ. P. 23(e)(2). Settlement by its nature is a compromise therefore the law does not require a settlement to reflect the best possible result in the litigation, but rather only that it falls within the ambit of reasonableness.  "[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.... [Accordingly,] [t]he proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved...." *Officers for Justice*, 688 F.2d 615, 624-25 (9th Cir. 1982) (internal citations omitted).  These proposed Settlements assuredly satisfy the foregoing criteria as they provide Class Members with meaningful relief that addresses the precise legal injury alleged in the complaints.  Here the recovery offered is real and substantial. In addition to the injunctive relief which provides that Defendants will no longer advertise their Ice Cream Products as "All Natural" and will no longer use the Product Labels that are the subject of the litigations, each qualifying Class Member can obtain $2.00 per package for each Ice Cream Product purchased.  §III.C.1.b.  By doing nothing more than submitting a claim form attesting to their purchase of an Ice Cream Product, Class Members may obtain $6.00 from each Class of which they are a member. *Id.*  With proof of purchase, Class Members may submit claims for as many as ten Ice Cream Products.  The $2.00 represents approximately 60% of the average *retail* price of the Ice

1   Cream Products, and an even more significant portion of the wholesale price that Unilever and B&J

2   actually received. *Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007)

3   (finding a settlement which constituted approximately 25 to 35% of the amount of the maximum

4   amount of damages the class could have received was reasonable in light of the uncertainties involved

5   in the litigation).

6           Defendants have committed to *fully* fund all Claims made in both cases.  Defendants have

7   further agreed to establish minimum funds for this purpose ($2,500,000 in Breyers and $5,000,000 in

8   Ben & Jerry's) no part of which will revert to Defendants.  Settlement Agreements at III.C.1.a.  Indeed

9   any residual amounts (i.e. the difference between the fund and the claims made against it) will be

10  considered *cy-pres* and donated to not-for-profit charities and/or causes related to food or nutrition in

11  the United States.  Settlement Agreements at §III.C.3.

12          Most importantly, the Settlement Agreements provide that Defendants will no longer advertise

13  their Ice Cream Products as "All Natural" and will no longer use the product labels that are the subject

14  of the Actions.  By any measure, the Settlements' terms are fair and reasonable; especially when they

15  are also considered in light of the uncertain prospects and risks faced by Plaintiffs and the putative

16  Classes going forward with litigation.  Defendants vigorously denied liability and continue to do so.

17  Similarly, they will oppose class certification and likely move for summary judgment.  Although

18  Plaintiffs remain confident in the merits of their cases, the outcome is not reasonably predictable.

19  These inherent uncertainties of litigation militate in favor of approving the Settlements.

20          **E.      The Stage of Proceedings and the Amount of Discovery Completed**

21          Formal discovery is not a prerequisite for class action settlements as long as counsel for both

22  parties possess sufficient information to properly evaluate the proposed settlement.  *Glass v. UBS Fin.*

23  *Servs.*, 2007 U.S. Dist. LEXIS 8476 *14 (N.D. Cal. Jan. 26, 2007) (citing *In re Mego Financial Corp.*

24  *Securities Litigation*, 213 F.3d at 459).  The breadth and substance of Co-Lead Counsel's knowledge of

25  these Actions is unquestionably adequate to support the Settlements.  Co-Lead Counsel conducted an

26  extensive informal investigation prior to the inception of the lawsuits as well as a material amount of

27  formal discovery prior to presenting the Settlement Agreements to the Court for preliminary approval.

28  

---

CASE NOS.:  10-cv-04937-PJH,                          14                      MEM. ISO FINAL APPROVAL
11-cv-01811-PJH, 10-cv-04387-PJH                                             CLASS ACTION SETTLEMENT

1   Plaintiffs not only propounded interrogatories and requests for production of documents, they

2   scrutinized the documents produced by Defendants and obtained additional, critical information

3   through two 30(b)(6) depositions of Defendants.  Braun Decl. ¶6.  In addition, prior to entering into the

4   Settlement Agreements, Plaintiffs and Co-Lead Counsel thoroughly researched and analyzed the facts

5   and relevant jurisprudence both supporting and undermining Plaintiffs' claims and the defenses raised

6   by Defendants.

7        Plaintiffs respectfully submit that the discovery conducted in these Actions, including both

8   formal discovery and independent investigative efforts, provided Plaintiffs and Co-Lead Counsel with

9   more than ample information to properly and fairly assess the merits of the proposed Settlements.

10  Braun Decl. ¶¶ 3, 4, 6.

11       **F.      Experience and Views of Counsel**

12       Courts generally accord "great weight" to the recommendation of counsel as they are the most

13  closely acquainted with the facts of the underlying litigation.  *Nat'l Rural Telecomms. Coop. v.*

14  *DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).  Moreover, when "[b]oth parties are represented

15  by experienced counsel [] their mutual desire to adopt the terms of the proposed settlement, while not

16  conclusive is [also] entitled to a great deal of weight."  *In re Immune Response Sec. Litig.*, 497

17  F.Supp.2d 1166, 1174 (S.D. Cal. 2007).

18       Plaintiffs' Counsel unambiguously recommend these Settlements as fair, reasonable and

19  adequate and respectfully ask that they be finally approved.  Co-Lead Counsel are each long-time class

20  action attorneys with decades of experience litigating class actions on behalf of consumers under the

21  statutes at issue in this action. *Astiana* Doc. No. 76, Exs. 1-4; Braun Decl. ¶ 10.  Members of Plaintiffs'

22  Co-Lead Counsel have represented consumers both as Class and Settlement Class Counsel numerous

23  times, including most recently as class and settlement class counsel on behalf of a nationwide class of

24  consumers in a food mislabeling case.  *See Zeisel v. Diamond Foods, Inc.*, 2011 WL 2221113, *9-12

25  (N.D. Cal. June 7, 2011) (certifying UCL and CLRA claims on behalf of national class of walnut

26  consumers and appointing undersigned counsel as class counsel).  Respectfully, Co-Lead Counsel's

27  extensive and broad-based experience litigating and successfully resolving consumer cases, should be

28  | CASE NOS.:  10-cv-04937-PJH, | 15 | MEM. ISO FINAL APPROVAL |
    | 11-cv-01811-PJH, 10-cv-04387-PJH | | CLASS ACTION SETTLEMENT |

1    accorded significant weight in considering the merits of final approval. *Kirkorian v. Borelli*, 695

2    F.Supp. 446, 451 (N.D. Cal. 1988) ("In judging the worth of a proposed settlement…recommendation

3    of acceptance by experienced and competent counsel is a fact entitled to great weight.").[7]

4    ### G.    Reaction of the Settlement Class

5    Notice was disseminated by direct mail and e-mail to all known Settlement Class Members and

6    *via* publication in *Entertainment Weekly, Country Living, Rolling Stone*, and *Cooking Light* magazines.

7    Hodne Decl. ¶ 11.   In addition, the Short-form Notice was also broadcast on the internet *via PR*

8    *Newswire* service to an array of press outlets throughout the country.   Braun Decl. ¶ 13.   The print

9    publications in which Notice appeared are among the same used by Defendants to advertise their

10   products. Rapazzini Decl., Ex B.

11   As a result of the Notice plan, the Settlement Website received 9,252 visits and resulted in the

12   filing and receipt of 1,804 claim forms.[8] Hodne Decl. ¶¶ 16, 26.  The claims deadline does not run until

13   August 30, 2012, and claims are continuing to be filed. *Id;* Braun Decl.¶ 14.

14   Most importantly, after dissemination of the Class Notice and having given Settlement Class

15   Members an opportunity to opine on the merits of the Settlement, it is abundantly clear that the

16   Settlement Classes overwhelmingly support the Settlements as no Class member has objected to or

17   opted out of the Settlements.   As reflected by the telephone calls, website usage, and broadly

18   disseminated notice, Settlement Class Members are well aware of the Settlements.  The absence of any

19   objections further confirms the fairness, reasonableness, and adequacy of the Settlement.  *In re HP*

20   *Inkjet Printer Litig.*, 2011 U.S. Dist. LEXIS 37446 (N.D. Cal. Mar. 29, 2011) ("It is established that the

21   absence of a large number of objections to a proposed class action settlement raises a strong

22   presumption that the terms of a proposed class action settlement are favorable to the class members.");

23   *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 U.S. Dist. LEXIS 49477 (N.D. Cal. Apr. 22, 2010)

24

25   [7] Courts may also consider the impact of a governmental participant in the litigation.  No such actor is present in this litigation.  Therefore this consideration is inapplicable. *Nat'l Rural Telecomms. Coop. v.*

26   *DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (" There is no governmental participant in this Class Action.  As a result, this factor does not apply to the Court's analysis")

27   [8] As of July 13, 2012.

28

1 ("Court may appropriately infer that a class settlement is fair, adequate, and reasonable when few class

2 members object to it").

3 **IV.   CONCLUSION**

4       For the reasons set forth in Plaintiffs' Motion for Preliminary Approval, as well as those set

5 forth herein, Plaintiffs respectfully request that the Settlement Classes be properly certified and the

6 Settlements be fully and finally approved.

7 DATED:  July 18, 2012

Respectfully Submitted,

**BRAUN LAW GROUP, P.C.**

By:  _____
     Michael D. Braun
     10680 W. Pico Boulevard, Suite 280
     Los Angeles, CA 90064

Janet Linder Spielberg
**LAW OFFICE OF JANET LINDNER
SPIELBERG**
12400 Wilshire Blvd., Suite 400
Los Angeles, CA 90025

Joseph N. Kravec, Jr.
**STEMBER FEINSTEIN DOYLE
  PAYNE & KRAVEC, LLC**
Allegheny Building, 17th Floor
429 Forbes Avenue
Pittsburgh, PA  15219

*Attorneys for Plaintiffs Astiana, Thurston
and Denmon-Clark*

James S. Notis
Jennifer Sarnelli
Kelly A. Noto
**GARDY & NOTIS, LLP**
560 Sylvan Avenue
Englewood Cliffs, NJ 07632
Telephone: (201) 567-7377
Facsimile: (201) 567-7337

*Attorneys for Plaintiffs Corriette and Waldron*