PAGES 1 - 26

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE PHYLLIS J. HAMILTON, JUDGE

| | | |
|---|---|---|
| SKYE ASTIANA, | ) | |
| | ) | |
| PLAINTIFF, | ) | NO. C-C-10-4387 PJH |
| | ) | |
| VS. | ) | WEDNESDAY, SEPTEMBER 12, 2012 |
| | ) | |
| BEN & JERRY'S HOMEMADE, | ) | OAKLAND, CALIFORNIA |
| INC., | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |
| _____ | ) | |
| CHANEE THURSTON, ET AL. | ) | |
| | ) | |
| PLAINTIFFS, | ) | |
| | ) | |
| VS. | ) | C-10-4937 PJH |
| | ) | |
| CONOPCO, INC., | ) | |
| | ) | |
| DEFENDANT. | ) | |
| _____ | ) | |
| ROSS CORRIETTE, ET AL., | ) | |
| | ) | |
| PLAINTIFFS, | ) | |
| | ) | |
| VS. | ) | C-11-1811 PJH |
| | ) | |
| UNILEVER, | ) | |
| | ) | |
| DEFENDANT. | ) | |
| _____ | ) | |

### REPORTER'S TRANSCRIPT OF PROCEEDINGS

(APPEARANCES ON NEXT PAGE.)

REPORTED BY:          DIANE E. SKILLMAN, CSR 4909, RPR, FCRR
                      OFFICIAL COURT REPORTER

**APPEARANCES:**

**FOR PLAINTIFF**S          BRAUN LAW GROUP, P.C.
ASTIANA & THURSTON:    10680 W. PICO BLVD. SUITE 280
                       LOS ANGELES, CALIFORNIA 90064
                 BY:   MICHAEL D. BRAUN, ESQUIRE


                       LAW OFFICES OF JANET LINDNER SPIELBERG
                       12400 WILSHIRE BOULEVARD, SUITE 400
                       LOS ANGELES, CALIFORNIA 90025
                 BY:   JANET LINDER SPIELBERG, ESQUIRE



FOR PLAINTIFF          GARDY & NOTIS, LLP
CORRIETTE:             560 SYLVAN AVENUE
                       ENGLEWOOD CLIFFS, NEW JERSEY 07632
                 BY:   KELLY A. NOTO, ESQUIRE



FOR DEFENDANT:         MORRISON & FOERSTER
                       425 MARKET STREET
                       SAN FRANCISCO, CALIFORNIA 94105
                 BY:   LISA WONGCHENKO, ESQUIRE
                       WILLIAM L. STERN, ESQUIRE

```
 1   WEDNESDAY, SEPTEMBER 12, 2012                        10:40 A.M.

 2                       P R O C E E D I N G S

 3            THE CLERK:  CALLING RELATED CIVIL CASE NUMBER 10-4387

 4   ASTIANA VERSUS BEN & JERRY'S, 10-4937 THURSTON VERSUS CONOPCO

 5   AND 11-1811 CORRIETTE VERSUS UNILEVER.

 6            MR. BRAUN:  GOOD MORNING, YOUR HONOR.

 7       MICHAEL BRAUN ON BEHALF OF ASTIANA, THURSTON, CLARK, THE

 8   NAMED PLAINTIFFS AND THE PUTATIVE SETTLEMENT CLASS.

 9            THE COURT:  GOOD MORNING.

10            MS. SPIELBERG:  GOOD MORNING, YOUR HONOR.

11       JANET SPIELBERG ON BEHALF OF PLAINTIFF ASTIANA, THURSTON

12   AND CLARK AND THE PROPOSED SETTLEMENT CLASS.

13            THE COURT:  GOOD MORNING.

14            MS. NOTO:  GOOD MORNING.  KELLY NOTO ON BEHALF OF

15   PLAINTIFFS CORRIETTE AND WALDRON.

16            MS. WONGCHENKO:  GOOD MORNING, YOUR HONOR.

17       LISA WONGCHENKO ON BEHALF OF DEFENDANTS CONOPCO, UNILEVER

18   AND BEN & JERRY'S.  AND WITH ME IS WILL STERN ON BEHALF OF THE

19   SAME.

20            THE COURT:  ALL RIGHT.  I DON'T BELIEVE ANY OF YOU

21   WERE HERE ON TIME AND DIDN'T CHECK IN.  SO PLEASE BE SURE

22   BEFORE YOU LEAVE THAT YOU LEAVE YOUR BUSINESS CARD WITH THE

23   COURTROOM DEPUTY.

24       ALL RIGHT.  I DON'T EVEN KNOW WHERE TO BEGIN WITH THIS

25   THERE ARE SO MANY PROBLEMS AND ISSUES.
```

1        I'D FIRST LIKE TO INQUIRE WHETHER OR NOT THERE ARE ANY

2    OBJECTORS HERE FOR THIS CLASS SETTLEMENT?

3        I RECEIVED ONE FORMAL OBJECTION WHICH I HAVE CONSIDERED

4    AND I BELIEVE THAT I WAS ADVISED BY THAT OBJECTION THAT THEY

5    INTENDED ON APPEARING, BUT I WANTED TO MAKE SURE THAT WE GIVE

6    THEM AN OPPORTUNITY TO PARTICIPATE.

7        ANY OBJECTORS TO THIS CLASS ACTION SETTLEMENT PRESENT?

8                        (NO RESPONSE.)

9        DOESN'T APPEAR TO BE, ALL RIGHT.

10        NONETHELESS, I REVIEWED THE OBJECTIONS AND HAVE QUESTIONS

11    OF MY OWN IN ADDITION TO THOSE THAT WERE RAISED.

12        DO EITHER OF YOU HAVE A STATEMENT YOU WOULD LIKE TO MAKE

13    BEFORE I GET STARTED?

14            **MR. BRAUN:**  FROM THE PLAINTIFFS' PERSPECTIVE, YOUR

15    HONOR, WE WOULD JUST LIKE TO HEAR YOUR QUESTIONS AND TRY TO

16    ADDRESS THEM AS EFFICIENTLY AS POSSIBLE.

17            **THE COURT:**  WELL, I HAVEN'T RECEIVED AN UPDATE.  THE

18    DECLARATION WITH REGARD TO THE RESPONSE OF THE CLASS IS FROM

19    THE END OF JULY.

20        SO -- LET ME RECAP AND YOU TELL ME IF I HAVE GOT THE FACTS

21    CORRECT.  I LOOKED AT ALL YOUR PAPERS, BUT THERE ARE LOTS OF

22    ISSUES AND PROBLEMS THAT JUMP OUT AT ME.

23        ALL RIGHT.  SO THE SETTLEMENT THAT YOU HAVE AGREED TO WITH

24    REGARD TO THE ASTIANA CASE IS $5 MILLION AND WITH REGARD TO

25    THE THURSTON, CORRIETTE CASES IT'S TWO AND A HALF MILLION

1    DOLLARS, FOR A TOTAL OF SEVEN AND A HALF MILLION DOLLARS.

2    THAT'S HOW MUCH.

3            **MR. BRAUN:**  CORRECT.

4            **THE COURT:**  YOU'VE INDICATED THAT THE NOTICE WAS

5    DISSEMINATED TO MILLIONS OF PEOPLE AND IN RESPONSE YOU GET

6    1800 CLAIMS, 1804.

7       CORRECT?

8            **MR. BRAUN:**  AND WE DO HAVE AN UPDATE FOR YOU, YOUR

9    HONOR.

10           **THE COURT:**  HAVE THERE BEEN MORE CLAIMS?

11           **MR. BRAUN:**  YEAH.  THERE HAVE BEEN A TOTAL OF 5,466

12   CLAIMS TO DATE.

13           **THE COURT:**  5,466 CLAIMS.

14      OKAY.  NOW I HAVE QUESTIONS ABOUT THE NOTICE AND ABOUT THE

15   TYPE OF CLAIMS MADE.  STARTING FIRST WITH THE NOTICE.

16      YOU SAY THROUGHOUT THE PAPERS THAT THE NOTICE REACHED --

17   WELL, IN ONE INSTANCE THE NUMBER WAS SET AT 40 MILLION PEOPLE

18   RECEIVED NOTICE.  IN OTHER REFERENCES IN THE PAPERS IT IS JUST

19   MILLIONS OF PEOPLE.  HOW DO YOU KNOW?  HOW DOES ANYONE KNOW?

20      AS I UNDERSTAND IT, THE NOTICES WERE MAILED -- I AM SORRY,

21   WERE DIRECT MAIL BUT ONLY TO KNOWN CLASS MEMBERS.  AND I DON'T

22   EVEN REMEMBER HOW YOU MADE THAT DETERMINATION, BUT I VAGUELY

23   RECALL SOMETHING AT THE HEARING ABOUT PEOPLE MAKING CONTACT

24   WITH UNILEVER AND YOU ALL KEEPING TRACK OF WHO THOSE PEOPLE

25   ARE.

1    AND THERE WERE -- THOSE PEOPLE RECEIVED DIRECT MAIL OR

2    E-MAIL.

3    THERE WERE PUBLICATION IN FOUR MAGAZINES WHERE THE

4    DEFENDANTS' PRODUCTS ARE ADVERTISED, AND THERE WAS SOME

5    INTERNET BROADCASTS.

6    HOW DO YOU HAVE ANY WAY OF KNOWING HOW MANY PEOPLE

7    RECEIVED NOTICE OF THIS CLASS ACTION SETTLEMENT?

8         **MR. BRAUN:**  WELL, IF I MAY.  YOU RAISE A GOOD POINT,

9    YOUR HONOR.

10    WHEN YOU PUT OUT PUBLICATION NOTICE, THE NUMBERS ARE BASED

11    ON CIRCULATION RATES.  FOR EXAMPLE, WHEN WE PUT OUT PR NEWS

12    WIRE NOTICE, I DIDN'T BOTHER THE COURT WITH TELLING YOU WHAT

13    THE CIRCULATION RATE WAS AMONG ALL THE NEWS SITES THAT PICKED

14    UP THE STORY.  IT WAS ASTRONOMICAL.  BECAUSE THE TRUTH IS, WE

15    DON'T KNOW WHO IS ACTUALLY READING THE STORIES OR NOT.  THAT'S

16    UNFORTUNATELY JUST A PROBLEM WITH PUBLICATION NOTICE.  SO THE

17    BEST WE CAN DO IS PROVIDE THE COURT WITH THE CIRCULATION RATES

18    OF THE MAGAZINES AND PROVIDE THE COURT WITH EFFORTS THAT WE

19    TAKE AT DUE PROCESS WHICH IS DISSEMINATING THAT NOTICE.

20    HOW MANY PEOPLE ACTUALLY PICK IT UP AND READ IT?  I

21    COULDN'T TELL YOU.  AND QUITE FRANKLY, I COULDN'T TELL YOU

22    WHEN I MAIL NOTICE IN CASES WHETHER PEOPLE OPEN THE MAIL OR

23    NOT; ALL I HAVE IS THE RESPONSE RATE.

24         **THE COURT:**  SURE.  BUT MAIL NOTICE YOU AT LEAST HAD

25    THE IDENTITY OF PEOPLE --

1        **MR. BRAUN:**  ABSOLUTELY.

2                    (SIMULTANEOUS COLLOQUY.)

3        **MR. BRAUN:**  I JUST DON'T WANT TO BE DISINGENUOUS --

4        **THE COURT:**  EXCUSE ME, YOUR HONOR.

5     WITH MAIL NOTICE, YOU AT LEAST HAVE THE IDENTITY OF PEOPLE

6   TO WHOM YOU HAVE SENT THE NOTICE.

7     WITH REGARD TO PUBLICATION NOTICE, YOU HAVE THE BASE

8   NUMBER OF SUBSCRIBERS, CORRECT?  BUT YOU HAVE THE IDENTITY OF

9   THE SUBSCRIBERS?

10        **MR. BRAUN:**  THE FIRST STATEMENT YOU MENTIONED WAS

11   CORRECT.  AND THE SECOND STATEMENT WE DO NOT HAVE THE IDENTITY

12   OF THE SUBSCRIBERS.

13        **THE COURT:**  ALL RIGHT.  SO YOU REALLY DON'T KNOW HOW

14   MANY PEOPLE RECEIVED NOTICE IN THIS CASE.

15        **MR. BRAUN:**  WE DON'T KNOW AND I DON'T THINK WE COULD

16   EVER FIGURE THAT OUT.

17        **THE COURT:**  ALL RIGHT.

18     THEN WITH REGARD TO THE CLAIMS, YOU TOLD ME 1804.  THERE

19   HAVE BEEN SOME SINCE THEN, 5,466.

20     ALL RIGHT.  NOW THOSE WERE CLAIMS.  WERE THOSE CLAIMS FOR

21   THE $6 THAT THIS LAWSUIT IS GOING TO GIVE EACH OF THESE

22   PEOPLE?

23        **MR. BRAUN:**  THAT'S CORRECT, YOUR HONOR.

24        **THE COURT:**  WERE THERE ANY CLAIMS FOR THE $20 THAT IS

25   PERMISSIBLE IF THEY HAVE SAVED OLD CARTONS OF ICE CREAM OR

1    RECEIPTS?

2          **MR. BRAUN:**  I AM UNAWARE OF ANY CLAIMS THAT WERE MADE

3    WITH PROOFS OF PURCHASE.

4          **THE COURT:**  SO THERE ARE NO PROOFS OF PURCHASE, SO NO

5    ONE IS GETTING $20.  THE 5,466 PEOPLE ARE ALL GETTING $6 EACH.

6          **MR. BRAUN:**  AND JUST TO BE CLEAR, YOUR HONOR, AS OF

7    THAT JULY 13TH, I WAS UNAWARE OF ANYBODY THAT PUT IN A PROOF

8    OF PURCHASE.  I WOULD HAVE TO VERIFY WITH RUST TO MAKE SURE

9    THAT THAT HASN'T CHANGED.

10         AND WITH RESPECT TO THE 500 -- 5,466, THERE MAY BE SOME

11   ISSUES REMAINING WITH PROPER ADMINISTRATIVE PROCEDURE THAT

12   THEY FOLLOW.  IN OTHER WORDS, IF YOU DON'T SIGN THE CLAIM FORM

13   OR SOMETHING LIKE THAT, THERE MIGHT BE A FEW CLAIMS THAT THE

14   ADMINISTRATOR WOULD HAVE TO FOLLOW UP ON.

15         SO I JUST WANTED TO BE PERFECTLY CLEAR ABOUT THAT NUMBER.

16         **THE COURT:**  THERE ARE 5,466 CLAIMS OF WHICH YOU DON'T

17   REALLY KNOW WHAT NUMBER ARE GOING TO BE PAID?

18         **MR. BRAUN:**  THAT'S NOT CORRECT, YOUR HONOR.  THERE IS

19   A VERY SMALL HANDFUL, LESS THAN 50, THAT HAVE POTENTIALLY A

20   DEFECT IN THE CLAIM.  I AM ASSUMING THAT DEFECT CAN BE CURED.

21         THAT'S VERY TYPICAL FOR ANY ADMINISTRATION PROCESS.

22   PEOPLE FORGET TO SIGN THEIR NAME.  PEOPLE DON'T LIST AN

23   ADDRESS, SOMETHING LIKE THAT.  THAT CAN HAPPEN.

24         **THE COURT:**  SO, IS THE ADMINISTRATOR GOING TO FOLLOW

25   UP TO OBTAIN SIGNATURES OR WHAT HAVE YOU IN ORDER TO PERFECT

1    THE 50 OR SO DEFECTIVE CLAIMS?

2                 **MR. BRAUN:** YES.

3                 **THE COURT:** ALL RIGHT. SO LET'S ASSUME THEN THAT

4    THERE ARE 5,466 CLAIMS, AND EACH OF THESE PEOPLE GET $6, HOW

5    MUCH DOES THAT ADD UP TO BE?

6                 **MR. BRAUN:** YOU KNOW, YOUR HONOR, I HAVEN'T DONE THE

7    MATH. MAYBE --

8                 **THE COURT:** DOES ANYONE HAVE AN IPHONE WITH A

9    CALCULATOR IN THE COURT?

10        PLEASE MULTIPLY 5,466 BY $6.

11                **MR. BRAUN:** YOUR HONOR IS DOING IT THE OLD FASHION

12   WAY. I DON'T TRUST MY ABILITY.

13                **MS. SPIELBERG:** I'M TURNING ON MY PHONE.

14                **MR. BRAUN:** I WOULDN'T EVEN ATTEMPT TO TRY, YOUR

15   HONOR. I APOLOGIZE I DIDN'T HAVE THAT NUMBER IN ADVANCE.

16                **UNIDENTIFIED SPEAKER:** ALTHOUGH I AM NOT INVOLVED IN

17   THIS, I JUST DID THE MATH AND I COME UP WITH $32,796.

18                **THE COURT:** THAT'S EXACTLY WHAT I CAME UP WITH. DID

19   YOU HAVE A CALCULATOR?

20                **UNIDENTIFIED SPEAKER:** NO.

21                **THE COURT:** I DID IT MANUALLY AS WELL. THAT'S THE

22   NUMBER I CAME UP WITH, $32,796. ALL RIGHT.

23        SO THERE'S A SETTLEMENT OF $7,000,500 (SIC), AND OF THAT

24   $7,500,000, THE CLASS RECEIVES $32,796; IS THAT CORRECT?

25                **MR. BRAUN:** THOSE ARE THE CLAIMS TO DATE, YES.

1          **THE COURT:**  DO WE EXPECT MORE OR HASN'T THE DEADLINE

2    PASSED FOR SUBMITTING CLAIMS?

3          **MR. BRAUN:**  THE DEADLINE HAS PASSED.

4          **THE COURT:**  SO THOSE ARE THE CLAIMS THAT WE HAVE AND

5    ALL THAT WE WILL HAVE.

6       OKAY.  NOW, THE PROBLEM RAISED BY THE OBJECTORS, AND I

7    AGREE THAT YOU HAVE RESPONDED ADEQUATELY TO SOME OF THEM, BUT

8    I AM A LITTLE CONCERNED ABOUT THE LACK OF CLARITY IN THE

9    SETTLEMENT NOTICE AS TO WHAT'S GOING TO HAPPEN.

10      BECAUSE THIS IS A CASE IN WHICH THE TAIL IS WAGGING THE

11   DOG.  IN MOST CASES, AND I HAVE SEVERAL CLASS ACTION

12   SETTLEMENTS ON MY DOCKET EVERY MONTH, AND IN MOST CASES THE

13   BULK OF THE MONEY GOES TO THE PLAINTIFFS, TO THE CLASS, AND

14   THEN TO THE LAWYERS.  AND SOMETIMES THE LAWYERS GET MORE THAN

15   THE CLASS, BUT THE CY-PRES FUND THAT IS TO HANDLE THE RESIDUAL

16   OR RESERVES IS TYPICALLY A SMALL PART OF THE OVERALL

17   SETTLEMENT FUND.  TYPICALLY.

18      IN THIS CASE, WITH A SEVEN AND A HALF MILLION DOLLAR FUND

19   AND A PAYOUT OF $32,000, THE OVERWHELMING MAJORITY OF THIS

20   SETTLEMENT GOES TO THE CY-PRES.  I HAVE NEVER HEARD OF

21   ANYTHING QUITE SO IMBALANCED AS THIS APPEARS TO BE TO ME.

22      SO WITH REGARD TO WHAT IS HAPPENING WITH THE CY-PRES FUND,

23   IT IS REALLY, REALLY IMPORTANT.  I PICKED UP THE SETTLEMENT

24   AGREEMENT AGAIN.  OBVIOUSLY WHEN I GAVE PRELIMINARY APPROVAL,

25   I READ IT, I ASKED YOU ALL QUESTIONS AT THE HEARING.  I WASN'T

1   SATISFIED WITH THE ANSWERS THAT I GOT, BUT I APPROVED -- GAVE

2   PRELIMINARY APPROVAL ANYWAY AND I THOUGHT IT WOULD ALL COME

3   OUT IN THE WASH AS IT USUALLY DOES.

4       SURE ENOUGH, LOOKING AT THE SETTLEMENT AGREEMENT AGAIN IN

5   CONJUNCTION WITH YOUR PAPERS, I DON'T REALLY EVEN UNDERSTAND

6   WHAT IT IS THAT I AGREED TO, FRANKLY, WHEN I LOOK AT IT AGAIN.

7       WE LOOK AT THE MONETARY RELIEF PORTION.  I WOULD LIKE YOU

8   ALL TO PUT THE SETTLEMENT AGREEMENT BEFORE YOU SO YOU CAN

9   REFER TO THE SAME PROVISIONS THAT I AM.

10      AND JUST FOR EASE OF REFERENCE, WE WILL LOOK AT THE

11  ASTIANA SETTLEMENT SEPARATELY FROM THE OTHER.  THEY ARE

12  VIRTUALLY IDENTICAL EXCEPT FOR THE AMOUNTS.  AND WE LOOK AT

13  SUBSECTION, I THINK IT'S 3C, SETTLEMENT CONSIDERATION MONETARY

14  RELIEF.

15      OKAY.  UNILEVER, THE DEFENDANT -- ONE DEFENDANT IN ONE OF

16  THE CASES AND THE PARENT CORPORATION OF THE OTHER TWO

17  DEFENDANTS, CORRECT?

18          **MS. WONGCHENKO:**  THAT'S CORRECT.

19          **THE COURT:**  WILL ESTABLISH A UNILEVER RESTITUTION

20  FUND OF $5 MILLION.  I ASSUME THE RESTITUTION FUND IS THE

21  SETTLEMENT FUND, CORRECT?

22          **MS. WONGCHENKO:**  CORRECT.

23          **THE COURT:**  ALL RIGHT.  AND THIS -- EXCEPT IT DOESN'T

24  INCLUDE ATTORNEYS' FEES AND COSTS.  THERE WILL BE NO

25  REVERSION.

1       **MS. WONGCHENKO:**  NONE --

2          **THE COURT:**  TO THE DEFENDANT SPECIFICALLY.

3       **MS. WONGCHENKO:**  TO THE DEFENDANTS.

4          **THE COURT:**  BUT THE AMOUNT NOT PAID AS RESTITUTION

5    WILL BE DONATED TO CHARITY AS FOLLOWS:  THROUGH THE UNILEVER

6    FOUNDATION, WHICH IS THE DEFENDANTS' OWN FOUNDATION TO WHICH

7    IT GIVES MONEY, I ASSUME, ON A REGULAR BASIS.

8       **MS. WONGCHENKO:**  IT'S A FOUNDATION IN WHICH THE

9    DEFENDANT WORKS WITH CHARITIES TO GIVE DONATIONS.

10         **THE COURT:**  BUT IT'S PART OF THE UNILEVER -- UNILEVER

11   IS THE PARENT CORPORATION OF ALL OF THE DEFENDANTS.

12      **MS. WONGCHENKO:**  RIGHT.

13         **THE COURT:**  AND ITS -- THE FOUNDATION IS UNDER THE

14   UMBRELLA OF UNILEVER CORPORATION, CORRECT?

15      **MS. WONGCHENKO:**  CORRECT.

16         **THE COURT:**  OKAY.  AND THE BEN & JERRY'S FOUNDATION,

17   WHICH IS PROBABLY UNDER THE SAME UMBRELLA?

18      **MS. WONGCHENKO:**  CORRECT.

19         **THE COURT:**  OKAY.  SO THE MONEY IS GOING TO BE

20   DONATED TO CHARITY AS FOLLOWS:  THROUGH UNILEVER OR BEN &

21   JERRY'S, OR ANY OTHER AFFILIATED UNILEVER CHARITABLE

22   FOUNDATION.  UNILEVER SHALL COMMIT TO DONATING TO THE

23   NOT-FOR-PROFIT CHARITY AND/OR CAUSES OF ITS CHOICE RELATED TO

24   FOOD OR NUTRITION IN THE UNITED STATES.

25      WHAT DOES THAT MEAN, THAT UNILEVER SHALL COMMIT TO

1    DONATING?  ISN'T THE $5 MILLION SUPPOSED TO BE SPENT?  WHAT

2    DOES "COMMIT TO DONATING IT" MEAN?

3         **MS. WONGCHENKO:**  THAT SIMPLY MEANS THAT UNILEVER WILL

4    SPEND THAT ENTIRE AMOUNT OF MONEY.  ANY AMOUNT THAT IS NOT

5    GIVEN DIRECTLY TO THE CLASS MEMBERS THROUGH CLAIMS WILL BE

6    DONATED THROUGH THE CY-PRES PROVISION.

7         **THE COURT:**  THEN IT HAS SEVERAL CHARITIES LISTED, NOT

8    AN EXCLUSIVE LIST, CORRECT?

9         **MS. WONGCHENKO:**  THAT'S CORRECT.

10        **THE COURT:**  A SUM OF UP TO $5 MILLION OVER A

11   THREE-YEAR PERIOD COMMENCING THE EFFECTIVE DATE -- COMMENCING

12   ON THE EFFECTIVE DATE.

13      WHAT IS THE EFFECTIVE DATE?

14        **MS. WONGCHENKO:**  THAT WOULD BE AFTER THE, I BELIEVE

15   IT'S 30 DAYS AFTER THE SETTLEMENT IS APPROVED.

16        **THE COURT:**  OKAY.  AND WHEN YOU SAY "UP TO

17   $5 MILLION", DOES THAT JUST ACCOUNT FOR THE AMOUNT THAT'S

18   GOING TO BE TAKEN FROM THE SETTLEMENT FUND IN THE FIRST

19   INSTANCE TO PAY THE CLAIMS?

20        **MS. WONGCHENKO:**  EXACTLY, YOUR HONOR.

21        **THE COURT:**  SO IN THIS CASE IT WOULD BE -- WELL, JUST

22   LOOKING AT THE ASTIANA SETTLEMENT, $5 MILLION MINUS WHATEVER

23   THE RATIO OF THE $32,000 PAYOUT, CORRECT?

24        **MS. WONGCHENKO:**  THAT IS CORRECT.

25        **THE COURT:**  OKAY.

1      NOW TURNING TO PAGE 13, SUBPARAGRAPH 3, RESIDUAL

2   RESTITUTION DONATION AMOUNT.

3           IT SAYS:  "ONCE ALL PROPER SETTLEMENT CLASS MEMBER

4           CLAIMS ARE PAID AND ANY DISPUTES CONCERNING THE

5           VALIDITY OF CLAIMS HAVE BEEN RESOLVED, ANY RESIDUAL

6           RESTITUTION WILL BE CONSIDERED CY-PRES WHICH UNILEVER

7           WILL DONATE TO NONINTERESTED THIRD-PARTY NONPROFIT

8           ORGANIZATIONS OR FOOD BANKS IN THE FORM OF FOOD

9           PRODUCTS AS DESCRIBED ABOVE."

10     OKAY.  NOW I ASKED AT THE HEARING ON PRELIMINARY APPROVAL

11   AND DIDN'T GET A SATISFACTORY ANSWER, AND I AM NOT EVEN SURE,

12   BUT HAVING READ THE PAPERS AND HAVING REVIEWED THE PRIOR

13   HEARING, I HAVE GOTTEN THREE DIFFERENT ANSWERS.

14     AT ONE POINT I AM TOLD THAT THERE WILL BE A SUM OF MONEY

15   UP TO $5 MILLION PAID TO -- THROUGH A CY-PRES FUND TO VARIOUS

16   CHARITIES SELECTED BY THE DEFENDANT.

17     AND, SECONDLY, I HAVE BEEN TOLD THAT THERE WILL BE FOOD

18   DONATED TO VARIOUS CHARITIES.

19     AND THEN SOMEWHERE, I DON'T KNOW IF IT WAS IN YOUR

20   SUPPLEMENTAL BRIEF OR SOMEWHERE, I AM TOLD THAT THERE COULD BE

21   FOOD AND/OR OTHER PRODUCTS, BECAUSE UNILEVER HAS CORPORATIONS

22   THAT MAKES SOAP AND ALL KINDS OF OTHER THINGS.

23     SO, I DON'T -- AS I SIT HERE TODAY, I HAVE NO IDEA WHETHER

24   OR NOT THIS ALMOST SEVEN AND A HALF MILLION DOLLARS THAT'S

25   GOING TO BE DONATED TO CHARITIES BECAUSE THERE AREN'T ENOUGH

1    CLASS MEMBERS WHO ARE INTERESTED ENOUGH TO SUBMIT CLAIMS TO

2    AMOUNT TO MORE THAN $32,000, I HAVE NO IDEA IF IT'S GOING IN

3    THE FORM OF MONEY, IN THE FORM OF FOOD, IN THE FORM OF OTHER

4    PRODUCTS.

5        I AM VERY, VERY CONCERNED ABOUT HOW THIS SETTLEMENT LOOKS

6    TO ANYONE WHO MIGHT BE INTERESTED IN LOOKING AT THE SETTLEMENT

7    CLOSELY.  IT LOOKS AS THOUGH THE ONLY, THE ONLY ONES PROFITING

8    FROM THE SETTLEMENT ARE THE PLAINTIFFS' LAWYERS AND THE

9    DEFENDANTS' PRIVATE FOUNDATION.

10       NOW, IN ADDITION, I RAISED QUESTIONS AT THE LAST HEARING

11   ABOUT THE -- HOW THIS IN KIND SORT OF DONATION WOULD WORK AS

12   WELL AS THE MONETARY COMPONENT.  AND YOU ALL HAVE READ THE

13   DENNIS VERSUS KELLOGG DECISION OF THE NINTH CIRCUIT WHICH

14   RECENTLY CALLED UPON DISTRICT JUDGES TO PERFORM THEIR DUTY IN

15   REVIEWING THE CY-PRES AWARDS WITH A LOT MORE CARE THAN SOME OF

16   US HAD BEEN DOING PREVIOUSLY, AND THEY RAISE SOME OF THE SAME

17   QUESTIONS THAT I RAISE.

18       I THINK I ASKED YOU, ARE THE -- YOU OR WHOEVER WAS YOU,

19   MAYBE IT WAS YOU, OKAY, ARE THESE DONATIONS TO CHARITY IN LIEU

20   OF OTHER DONATIONS THAT THE CORPORATION WOULD NORMALLY BE

21   PROVIDING ANYWAY?  WHAT THE TAX CONSEQUENCES?  HAVE THOSE BEEN

22   FACTORED IN TO THE VALUE OF WHAT THIS SETTLEMENT ACTUALLY

23   AMOUNTS TO?

24       I DON'T UNDERSTAND WHAT'S CONTEMPLATED HERE.  SO I NEED

25   SOME, I NEED SOME WAY OF RECONCILING ALL THESE VARIOUS

1    DIFFERENT THINGS THAT HAVE BEEN SAID ABOUT THE CY-PRES FUND.

2        WE NOW KNOW HOW MUCH WILL BE GOING TO IT.  AND IT'S GOING

3    TO BE MORE THAN 74 -- $7.4 MILLION OVER A PERIOD OF THREE

4    YEARS.  IS THAT GOING TO BE MONEY?  IS IT GOING TO BE FOOD?

5    IS IT GOING TO BE PRODUCTS?  HOW ARE THOSE THINGS GOING TO BE

6    EVALUATED?  AND TO WHOM ARE THEY GOING?

7        I THINK THAT THE DENNIS DECISION MAKES IT PRETTY CLEAR

8    THAT I GET TO DECIDE.  AT LEAST I GET TO APPROVE OR

9    DISAPPROVE.  IT'S -- YOU'VE ESSENTIALLY WRITTEN SORT OF THIS

10   BLANK CHECK.  WE ARE GOING TO GIVE PRODUCTS, FOOD, MONEY TO

11   WHOEVER -- WHATEVER CHARITIES WE DECIDE ON.  WE THINK THEY

12   SHOULD BE FOOD RELATED AS OPPOSED TO RELATED TO CONSUMER

13   PROTECTION, FALSE ADVERTISING.

14       AND CLEARLY THE NEXUS IS WRONG, AND I THINK THAT I CANNOT

15   APPROVE THIS WITHOUT MORE INFORMATION.  AND I AM NOT SURE I

16   CAN APPROVE IT AT ALL.  BUT IN ANY EVENT I WANT TO KNOW WHAT

17   IS CONTEMPLATED BY THE DEFENSE.  I HAVE NOT BEEN GIVEN

18   SUFFICIENT INFORMATION TO EVEN BEGIN TO UNDERSTAND THIS.

19       **MS. WONGCHENKO:** YOUR HONOR, WE DON'T BELIEVE THAT

20   THIS GOES AGAINST KELLOGG.  AND THE FACTS OF THIS CASE ARE

21   VERY DIFFERENT THAN THAT ONE.

22       THERE, THE COURT RULED THAT A CLAIM ABOUT SCHOOL

23   PERFORMANCE ON A CEREAL BOX WAS NOT RELATED TO FUNDING FOOD

24   BANKS.  AND IN THIS CASE, WE BELIEVE THAT WE HAVE LISTED

25   CHARITIES, WE HAVE GIVEN THE CLASS MEMBERS NOTICE OF THE

1    ORGANIZATIONS THAT WILL OVERSEE THE CHARITABLE DONATIONS, AND

2    THERE IS A PROPER NEXUS.  THIS IS A CASE ABOUT THE --

3         **THE COURT:**  THEY HAVEN'T BEEN IDENTIFIED.  HOW DO I

4    KNOW THERE IS A PROPER NEXUS?

5         **MS. WONGCHENKO:**  WE HAVE IDENTIFIED THE TWO

6    FOUNDATIONS AND FIVE CHARITIES.  AND WHILE THEY ARE NOT

7    EXCLUSIVE AND WE ARE NOT BOUND TO USE THOSE CHARITIES, THEY

8    STILL SHOW THE PURPOSES OF THE CHARITABLE DONATIONS THAT WE

9    HAVE IN MIND.

10        **THE COURT:**  WHY IS IT THAT YOU THINK THAT YOU DON'T

11   HAVE TO IDENTIFY THE SPECIFIC CHARITIES?  IT'S NOT AN

12   EXCLUSIVE LIST.  YOU CAN GIVE THEM TO ANY NUMBER OF OTHER

13   CHARITIES WITHOUT COURT APPROVAL.

14        **MS. WONGCHENKO:**  THE REASON, YOUR HONOR, IS SIMPLY TO

15   MAINTAIN FLEXIBILITY.  CAUSES, CHANGE, SOME OF THESE CHARITIES

16   FUND DISASTER RELIEF.  THESE INSTANCES CAN CHANGE OVER TIME

17   AND THERE WILL BE THREE YEARS TO ADMINISTER THE FUNDS.

18      BECAUSE OF THAT, IT MAKES SENSE THAT DEFENDANTS WOULD WANT

19   SOME TYPE OF FLEXIBILITY TO MAKE SURE THAT THE CHARITIES DO,

20   IN FACT, FIT THE PURPOSE OF THE SETTLEMENT AGREEMENT, WHICH IS

21   FOOD- AND NUTRITION-RELATED CHARITIES IN THE UNITED STATES.

22        **THE COURT:**  I DON'T UNDERSTAND.  HOW DO YOU COME UP

23   WITH THAT AS A NEXUS, FOOD- AND NUTRITION-RELATED CHARITIES AS

24   OPPOSED TO THE CLAIMS IN THIS CASE WHICH ARE FORE MISLABELING

25   AND FALSE ADVERTISING?

1      **MS. WONGCHENKO:**  WELL, YOUR HONOR, BOTH ARE IMPORTANT

2   TO THE CASE.  PLAINTIFF ASTIANA BROUGHT THIS LAWSUIT BECAUSE

3   SHE WAS CONCERNED ABOUT EATING UNNATURAL FOODS.  THAT'S ABOUT

4   NUTRITION.  SHE'S CONCERNED ABOUT THE NUTRITIONAL VALUE OF

5   FOOD.

6      **THE COURT:**  THE CLASS DEFINITION DOESN'T INCLUDE THAT

7   ASPECT IN THE DEFINITION.  THE DEFINITION IS FOR ANYONE WHO

8   BOUGHT BEN & JERRY'S DURING THE CLASS PERIOD.  PERIOD.  THERE

9   IS NO REQUIREMENT IN THE CLASS DEFINITION THAT THE PERSON

10   BOUGHT IT IN RELIANCE UPON THE NATURAL LABEL OR BECAUSE THEY

11   ONLY WANTED NATURAL PRODUCTS EVEN THOUGH THEY ARE BUYING

12   SOMETHING LIKE ICE CREAM.

13      **MS. WONGCHENKO:**  THAT'S TRUE, YOUR HONOR.

14      IN ABLE TO REACH AS MANY CLASS MEMBERS AS POSSIBLE, IT

15   WOULDN'T BE FEASIBLE TO LIMIT THE CLASS IN SUCH A WAY, BUT THE

16   UNDERLYING LAWSUIT STILL HAD THOSE CONCERNS IN MIND.  IT

17   WASN'T -- SHE WASN'T SIMPLY CONCERNED WITH FALSE ADVERTISING

18   WHEN SHE BROUGHT THE CASE, SHE WAS CONCERNED WITH WHAT WAS IN

19   THE ICE CREAM THAT SHE'S EATING.  WE DON'T THINK THAT KELLOGG

20   MANDATES A CERTAIN CY-PRES CHARITY FOR EVERY SINGLE TYPE OF

21   CASE.

22      **THE COURT:**  DOESN'T KELLOGG HAVE A VERY SIMILAR

23   ASPECT?  KELLOGG WAS ALSO A FALSE ADVERTISING MISLABELING KIND

24   OF CASE BECAUSE THEY WERE SUGGESTING THAT THEIR FROSTED

25   MINI-FLAKES WERE NUTRITIOUS.

1        **MS. WONGCHENKO:**  IT WASN'T NUTRITIOUS, IT WAS ABOUT

2   SCHOOL PERFORMANCE.  AND THEY WERE SUGGESTING THAT EATING

3   CEREAL SOMEHOW INCREASED SCHOOL PERFORMANCE.

4        **THE COURT:**  PRETTY MUCH THE SAME THING.  THAT'S THE

5   GIST OF WHAT THEY WERE TRYING TO DO.

6        **MS. WONGCHENKO:**  WE BELIEVE THERE IS A DIFFERENCE IN

7   A CLAIM ABOUT SCHOOL PERFORMANCE AND SIMPLY DONATING FOOD TO

8   FOOD BANKS.

9      IN THIS CASE WE HAVE INTEREST IN NUTRITION FROM OUR

10   PLAINTIFFS, AND THE CHARITIES ARE NOT SIMPLY FOOD BANKS, THEY

11   SERVE THE PURPOSE OF FOOD AND NUTRITION.

12      FOR INSTANCE, ONE OF OUR CHARITIES SAY THE CHILDREN HAS A

13   PROGRAM THAT EDUCATES CHILDREN ABOUT THE NUTRITIONAL VALUE OF

14   FOOD AND GIVES THEM NUTRITIONAL SNACKS.  WE BELIEVE THAT THAT

15   DOES FIT THE PURPOSE OF THIS LAWSUIT AND PROVIDES A MUCH

16   BETTER NEXUS THAN WAS PRESENT IN KELLOGG.

17        **THE COURT:**  WHAT ABOUT THE OTHER QUESTIONS THAT WERE

18   RAISED IN THE KELLOGG?

19      FIRST OF ALL, YOU HAVEN'T ANSWERED MY QUESTION YET ABOUT

20   HOW IS THE CY-PRES FUND GOING TO BE FUNDED?  WITH MONEY, FOOD,

21   OR PRODUCTS?

22        **MS. WONGCHENKO:**  THE SETTLEMENT DOESN'T SPECIFY

23   DIRECTLY.  AS WE DISCUSSED AT THE PRELIMINARY HEARING,

24   TYPICALLY IT IS CASH, AND WE BELIEVE THAT MOST OF THE

25   DONATIONS WILL BE CASH.  IN --

1       **THE COURT:**  SHOULDN'T -- DON'T I NEED TO KNOW THAT?

2       **MS. WONGCHENKO:**  WELL, WE BELIEVE AS LONG AS THERE IS

3    A PROPER WAY OF VALUING THE PRODUCT DONATIONS THAT IT

4    SHOULDN'T BE A PROBLEM.  I BELIEVE THAT THE COURT IN KELLOGG

5    WAS CONCERNED AS A WHOLE WITH THE LACK OF INFORMATION, NOT

6    SPECIFIC INSTANCES ON THEIR OWN OF NOT BEING ENOUGH FOR THE

7    COURT TO EVALUATE IT.

8       **THE COURT:**  I DON'T HAVE ENOUGH IN ORDER TO BE ABLE

9    TO EVALUATE THE SETTLEMENT.

10      IF YOU TAKE A LOOK AT THE LANGUAGE IN KELLOGG, THE

11   SETTLEMENT NOTES THAT:

12          "KELLOGG WILL DONATE FIVE AND A HALF MILLION DOLLARS

13          WORTH OF FOOD.  THE SETTLEMENT DOCUMENT GIVES NO HINT

14          AS TO HOW THE FIVE POINT MILLION WILL BE VALUED.  IS

15          IT VALUED AT KELLOGG'S COST?  AT WHOLESALE VALUE?  AT

16          RETAIL VALUE?

17          "THE EXACT ANSWER TO THIS QUESTION HAS IMPORTANT

18          RAMIFICATIONS RELATING TO THE ACCURATE VALUATION OF

19          THE CONSTRUCTIVE COMMON FUND AND, THEREBY, THE

20          REASONABLENESS OF ATTORNEYS' FEE.

21          "KELLOGG STATED AT ORAL ARGUMENT AND IN ITS BRIEFS

22          THAT IT WILL VALUE THE FOOD DONATION AT WHOLESALE,

23          BUT THE ONLY LEGALLY ENFORCEABLE DOCUMENT, THE

24          SETTLEMENT, SAYS NOTHING OF THE SORT."  NEITHER DOES

25          YOURS.

1      "ADDITIONALLY, THE SETTLEMENT FAILS TO INCLUDE ANY

2      RESTRICTIONS ON HOW KELLOGG ACCOUNTS FOR THE CY-PRES

3      DISTRIBUTION.  CAN KELLOGG USE THE VALUE OF THE

4      DISTRIBUTIONS AS TAX DEDUCTIONS BECAUSE THEY WILL GO

5      TO CHARITY?  AND GIVEN THAT KELLOGG ALREADY DONATES

6      BOTH FOOD AND MONEY TO CHARITIES EVERY YEAR, WHICH IS

7      UNQUESTIONABLY AN ADMIRABLE ACT, WILL THE CY-PRES

8      DISTRIBUTIONS BE IN ADDITION TO THAT WHICH KELLOGG

9      HAS ALREADY OBLIGATED ITSELF TO DONATE OR CAN KELLOGG

10     USE PREVIOUSLY BUDGETED FUNDS OR SURPLUS PRODUCTION

11     TO OFFSET ITS SETTLEMENT OBLIGATIONS?

12     "AGAIN, THE SETTLEMENT IS SILENT.  WE HAVE ONLY

13     KELLOGG'S STATEMENTS AS TO ITS FUTURE INTENTIONS.

14     ALL OF THIS VAGUENESS DETRACTS FROM OUR ABILITY TO

15     DETERMINE THE TRUE VALUE OF THE CONSTRUCTIVE COMMON

16     FUND."

17   WE HAVE THE SAME PROBLEMS HERE.  I WILL SIMPLY TELL YOU

18 THAT I WILL NOT APPROVE A SETTLEMENT THAT ALLOWS FOR SUCH AN

19 ENORMOUS AMOUNT OF MONEY TO BE DISTRIBUTED TO A CY-PRES FUND

20 THAT HAS NOT BEEN CLEARLY IDENTIFIED TO THE COURT AND ONE IN

21 WHICH THESE QUESTIONS ARE NOT ANSWERED.

22   I RAISED SOME OF THESE QUESTIONS WITH YOU, NOT REALLY

23 COMPREHENDING WHAT YOU WERE INTENDING AT THE TIME OF THE

24 MOTION FOR PRELIMINARY APPROVAL, AND I DIDN'T GET SATISFACTORY

25 ANSWERS AT THAT TIME.  AND I CERTAINLY EXPECTED TO GET MORE

1    SPECIFICITY NOW.  BUT NOW YOU CAN'T EVEN TELL ME IF IT'S GOING

2    TO BE MONEY, FOOD, OR PRODUCTS.  I HAVE NO WAY TO EVALUATE

3    THIS SETTLEMENT.  NONE WHATSOEVER.

4        I AM NOT PREPARED TO APPROVE THIS AT ALL.  AND THERE HAVE

5    BEEN ARGUMENTS MADE AS TO THE SEVERABILITY OF THE CY-PRES

6    FUND.  WELL, I THINK THE KELLOGG DECISION MAKES IT PRETTY

7    CLEAR WE CAN'T DO THAT.  MOREOVER, IN YOUR SUPPLEMENTAL BRIEF,

8    YOU INDICATED THAT YOU WOULD OBJECT TO SEVERING THE CY-PRES

9    PROVISION OF THE SETTLEMENT AND APPROVING THE REST.

10       FRANKLY, WHAT'S THERE TO APPROVE?  IF THE CY-PRES

11   PROVISION CANNOT BE APPROVED TODAY, WHAT IS THERE TO APPROVE

12   OTHER THAN THAT THE 5,466 PEOPLE WILL GET $6 EACH?

13       **MS. WONGCHENKO:**  YOUR HONOR, WE DON'T BELIEVE THAT

14   KELLOGG MANDATES THAT EACH OF THOSE THINGS IS ACTUALLY PRESENT

15   IN THE SETTLEMENT AGREEMENT.

16       IF READING THE OPINION AS A WHOLE, THE PRIMARY CONCERN WAS

17   THAT NO CHARITIES AT ALL WERE IDENTIFIED.  AND WITHOUT THAT IT

18   SAID THAT IT COULDN'T TAKE ANY --

19       **THE COURT:**  WHETHER OR NOT, IN YOUR VIEW, IT MANDATES

20   IT OR NOT, I TOLD YOU THAT I AM NOT PREPARED TO APPROVE THIS

21   SETTLEMENT WITHOUT THAT KIND OF INFORMATION.

22       **MS. WONGCHENKO:**  YES.

23       **THE COURT:**  I MEAN, EVEN BEFORE KELLOGG, I ASKED

24   SIMILAR QUESTIONS AND DID NOT GET ANSWERS.  YOU DIDN'T PROVIDE

25   THE ANSWERS IN YOUR BRIEFING, AND I AM NOT GOING TO APPROVE.

1    I AM NOT GOING TO APPROVE THE SETTLEMENT WITHOUT A LOT MORE

2    SPECIFICITY, PARTICULARLY GIVEN HOW LOPSIDED IT IS.

3         I MEAN, I UNDERSTAND THAT YOU ALL WANT IT OVER.  YOU'VE

4    ENGAGED IN YOUR MEDIATION.  YOU'VE ARRIVED AT A NUMBER THAT

5    EVERYONE IS HAPPY WITH.  YOU'VE ARRIVED AT A PROCEDURE.

6    THERE'S NO BENEFIT TO THE CLASS AT ALL.

7         AND BEFORE I AM GOING TO APPROVE SOMETHING THAT ALLOWS THE

8    DEFENDANT TO ESSENTIALLY FUNNEL THIS HUGE AMOUNT OF MONEY BACK

9    INTO ITS OWN CHOSEN CHARITIES AND ITS OWN FOUNDATION, EVEN

10   THOUGH AGREEING TO PAY THE DEFENDANTS' (SIC) ATTORNEYS A HUGE

11   AMOUNT OF MONEY OVER AND ABOVE THE 7.5 MILLION, I JUST -- I

12   FIND IT UNCONSCIONABLE AT THIS JUNCTURE.  I NEED TO KNOW A LOT

13   MORE ABOUT THIS BEFORE I AM GOING TO BE WILLING TO APPROVE IT.

14        **MR. BRAUN:**  YOUR HONOR, IF I MAY.

15        YOUR SENTIMENTS ARE VERY CLEAR TO US, BUT WHAT I WOULD

16   LIKE TO FIND OUT FROM THE COURT IS IN ADDITION TO WHAT YOU'VE

17   DISCUSSED WITH US, THE OTHER ISSUES THAT YOU MIGHT HAVE SO

18   THAT IF WE GO BACK AND TRY TO DO SOMETHING THAT IS MORE

19   ADEQUATE IN THE COURT'S EYES, THAT WE DO A PROPER AND THOROUGH

20   JOB AND NOT FACE A NEW LIST OF ISSUES IF IT'S POSSIBLE TO

21   AVOID IT.

22        **THE COURT:**  WELL, THERE ARE TWO MAIN PROBLEMS.  THE

23   MAIN ONE BEING WITH THE CY-PRES FUND.

24        THERE IS SOME QUESTION AS TO THE NOTICE ISSUE.  I MEAN,

25   THE OBJECTORS RAISED THE OBJECTION THAT THE NOTICE WAS

1    INADEQUATE AND THE CLAIMS PROCEDURE WAS DIFFICULT.  AND MAYBE

2    THAT IS WHY THERE ARE SO FEW CLAIMS MADE HERE.  I THINK IT IS

3    JUST AS LIKELY PEOPLE JUST AREN'T INTERESTED IN SPENDING THE

4    TIME TO PUT A STAMP AND SENDING IN A CLAIM WHEN THE MOST THEY

5    ARE ABLE TO GET IS $6.

6        I DON'T, FRANKLY, KNOW WHY THERE IS A REQUIREMENT FOR

7    PROOF OF CLAIM FOR THE $20 AS OPPOSED TO THE $6, PARTICULARLY

8    GIVEN THE AMOUNT, THIS PIDDLING AMOUNT OF MONEY THAT'S GOING

9    TO THE CLASS COMPARED TO THE ATTORNEYS AND BACK TO THE

10   DEFENDANTS' CORPORATION OR FOUNDATION.  I DON'T UNDERSTAND

11   THAT.

12       I AM NOT SURE WHAT BETTER NOTICE YOU COULD GIVE SINCE MOST

13   PEOPLE BUY A PINT OF BEN & JERRY'S, EAT IT AND THROW AWAY THE

14   CONTAINER.  I CAN'T IMAGINE ANYBODY SAVES THEIR RECEIPTS OR

15   THE EMPTY CONTAINERS WITHOUT KNOWING THAT THERE'S A LAWSUIT.

16       I, FRANKLY, DON'T UNDERSTAND WHY YOU LIMITED IT.  IF YOU

17   ARE GOING TO LIMIT IT TO $2, IT MAKES SENSE THAT THAT'S THE

18   PAYOUT BECAUSE THAT'S MORE THAN A HUNDRED PERCENT OF THE

19   WHOLESALE COST AND 60 PERCENT OF THE RETAIL COST.  THAT MAKES

20   SENSE, BUT WHY DO YOU LIMIT IT TO THREE CONTAINERS?

21       THE CLASS PERIOD WAS WHAT, FOUR, FIVE YEARS, CORRECT?  I

22   MEAN, IF PEOPLE ARE GOING TO BUY BEN & JERRY'S, YOU THINK -- I

23   DON'T EVEN EAT ICE CREAM VERY MUCH, BUT I HAVE CERTAINLY

24   BOUGHT MORE THAN THREE CONTAINERS IN FIVE YEARS.  BUT YOU ARE

25   LIMITING THE CLASS TO THREE CONTAINERS OVER THIS SUBSTANTIAL

1   PERIOD OF TIME?  WHY?  WHY IS IT LIMITED TO THAT, TO THAT

2   EXTENT?  THE NUMBERS ARE ARBITRARY.

3       YOU ARGUE THAT -- IN YOUR PAPERS, PLAINTIFFS ARGUE THAT

4   THIS IS SUCH A GOOD SETTLEMENT AND IT SHOULD BE APPROVED

5   BECAUSE THE CLASS IS GETTING A HUNDRED PERCENT, CLOSE TO A

6   HUNDRED PERCENT OF WHAT IT COULD GET IF IT PROCEEDED TO TRIAL.

7       I DON'T UNDERSTAND HOW YOU COME UP WITH THAT.  LIKE I

8   SAID, I THINK THAT PEOPLE ARE JUST AS LIKELY TO HAVE BOUGHT

9   MORE THAN THREE CONTAINERS OVER A FIVE-YEAR PERIOD.  YOUR

10  CLIENT DID.  YOUR CLIENT, THE NAMED PLAINTIFFS BOUGHT MORE

11  THAN THREE CONTAINERS OVER THE CLASS PERIOD.  WHY AREN'T THE

12  ABSENT CLASS MEMBERS SIMILARLY SITUATED?

13      SO, I HAVE A LOT OF PROBLEMS WITH IT.  I HAVE A LOT OF

14  PROBLEMS WITH THE SETTLEMENT.

15      SO, I DO HAVE A PROBLEM WITH YOUR PLAN OF ALLOCATION,

16  PARTICULARLY NOW THAT I HAVE SEEN HOW MANY PEOPLE ARE LIKELY

17  TO RESPOND.

18      THE NOTICE PROVISION I DON'T, FRANKLY, KNOW HOW YOU CAN

19  IMPROVE ON THE NOTICE UNLESS -- I DON'T KNOW HOW YOU CAN

20  IMPROVE ON THAT.  YOU PUBLISHED IT.  I AM NOT IN THE CLASS

21  ACTION PLAINTIFFS' LAWYERS' BUSINESS, SO I DON'T REALLY KNOW

22  WHAT OTHER OPTIONS YOU THINK ARE APPROPRIATE FOR THIS KIND OF

23  A CONSUMER CLASS ACTION.  BUT I DON'T LIKE THE PLAN OF

24  ALLOCATION.

25      AND I WON'T APPROVE A SITUATION WHERE THE DEFENDANT

1   ESSENTIALLY HAS CARTE BLANCHE TO PAY IN WHATEVER WAY IT WISHES

2   TO WHOMEVER IT WISHES WITHOUT PRIOR COURT APPROVAL.

3       AND WITH REGARD TO THE REQUEST FOR ATTORNEYS' FEES AND

4   COSTS, EVEN THOUGH IT IS PAID NOT FROM THE FUND, IT DOESN'T

5   DILUTE THE FUND, I STILL NEED TO KNOW WHY IT WOULD BE

6   APPROPRIATE TO APPLY A MULTIPLIER IN THIS CASE.  FOR THE

7   CLASS -- PAYING PLAINTIFFS' ATTORNEYS 1.6 MULTIPLIER IN A CASE

8   WHERE THE CLASS IS GETTING $32,000 OUT OF A $7.5 MILLION

9   SETTLEMENT JUST SMACKS ME AS BEING TOTALLY INAPPROPRIATE.

10       I HAVE ONLY GENERALLY APPROVED MULTIPLIERS IN SITUATIONS

11   WHERE THE CLASS RECEIVED A SUBSTANTIAL, IF NOT ALL OF THEIR

12   LOSSES.  I AM NOT PERSUADED THAT $6 REPRESENTS ANYTHING CLOSE

13   TO SUBSTANTIALLY ALL OF THE LOSSES OF THESE ABSENT CLASS

14   MEMBERS.

15       SO, THOSE ARE MY PROBLEMS.  OKAY?  THE MOTION IS DENIED.

16   YOU CAN GO AWAY AND RENEGOTIATE OR WE CAN PROCEED TO TRIAL.

17   BUT UNLESS YOU ADDRESS THESE CONCERNS, I AM NOT GOING TO

18   APPROVE THIS.

19           **MS. WONGCHENKO:**  THANK YOU, YOUR HONOR.

20           **MR. BRAUN:**  THANK YOU FOR YOUR TIME, YOUR HONOR.

21           **THE COURT:**  OKAY.

22               (PROCEEDINGS CONCLUDED AT 11:15 A.M.)

23

24

25

## CERTIFICATE OF REPORTER

I, DIANE E. SKILLMAN, OFFICIAL REPORTER FOR THE
UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY
CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE
RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

_Diane E. Skillman_

DIANE E. SKILLMAN, CSR 4909, RPR, FCRR

FRIDAY, SEPTEMBER 21, 2012