United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SKYE ASTIANA,

        Plaintiff,

      v.

BEN & JERRY'S HOMEMADE, INC.,

        Defendant.

_____/

No. C 10-4387 PJH

**ORDER DENYING MOTION FOR
CLASS CERTIFICATION**

      Plaintiff's motion for class certification came on for hearing before this court on November 20, 2013.  Plaintiff appeared by her counsel Joseph Kravec and Michael Braun, and defendant appeared by its counsel William Stern.  Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby DENIES the motion as follows.

**BACKGROUND**

      This is a case filed as a proposed class action on behalf of individuals who purchased ice cream products produced by defendant Ben & Jerry's Homemade, Inc. ("Ben & Jerry's"), including ice cream, frozen yogurt, and popsicles, which contained alkalized cocoa and were labeled "all natural."  Plaintiff Skye Astiana claims that both the packaging and the advertising for the Ben & Jerry's ice cream products were deceptive and misleading to the extent that the cocoa was alkalized with a "synthetic" agent.

United States District Court
For the Northern District of California

1    Plaintiff filed the complaint in this action on September 29, 2010, against Ben &

2  Jerry's.  On December 8, 2010, plaintiff filed a first amended complaint ("FAC"), alleging six

3  causes of action – "unlawful business practices" in violation of Business & Professions

4  Code § 17200; "unfair business practices" in violation of § 17200; "fraudulent business

5  practices" in violation of § 17200; false advertising, in violation of Business & Professions

6  Code § 17500; restitution based on quasi-contract/unjust enrichment; and common law

7  fraud.

8    On March 28, 2012, the court granted plaintiff's motion for preliminary approval of

9  class action settlement, and also ordered dissemination of notice to the class.  The court

10  set the matter for a hearing on final approval on September 12, 2012.  On September 4,

11  2012, the Ninth Circuit issued its decision in Dennis v. Kellogg, 697 F.3d 858 (9th Cir.

12  2012), in which it vacated an order granting preliminary approval of settlement, based on its

13  finding that the provision regarding distribution of the unclaimed portion of the settlement

14  fund to a cy pres fund was improper because the cy pres fund was not oriented towards

15  providing the type of consumer remedies sought in the complaint.

16    At the September 12, 2012 hearing in this case, the court denied the motion for final

17  approval, based on, among other things, numerous problems with the claim procedure and

18  the amount requested for fees and costs, and also based on issues related to the Ninth

19  Circuit's ruling in Kellogg.

20    The parties subsequently advised that they were unable to resolve the court's

21  concerns, and the court issued an order on November 21, 2012 denying the motion for final

22  approval and the accompanying motion for fees and costs.  At a case management

23  conference on January 31, 2013, the court set deadlines for the class certification motion

24  and for dispositive motions.

**DISCUSSION**

26  A.    Legal Standard

27    "Before certifying a class, the trial court must conduct a 'rigorous analysis' to

28  determine whether the party seeking certification has met the prerequisites of [Federal Rule

**United States District Court**
For the Northern District of California

1    of Civil Procedure] 23."  <u>Mazza v. American Honda Motor Co., Inc.</u>, 666 F.3d 581, 588 (9th

2    Cir. 2012) (citation and quotation omitted).  The party seeking class certification must

3    affirmatively demonstrate that the class meets the requirements of Rule 23.  <u>Wal-Mart</u>

4    <u>Stores, Inc. v. Dukes</u>, __ U.S. __, 131 S.Ct. 2541, 2551 (2011); <u>see also</u> <u>Gen'l Tel. Co. of</u>

5    <u>Southwest v. Falcon</u>, 457 U.S. 147, 156 (1982).  Thus, in order for a plaintiff class to be

6    certified, the plaintiff must prove that he/she meets the requirements of Federal Rule of

7    Civil Procedure 23(a) and (b).  As a threshold matter, and apart from the explicit

8    requirements of Rule 23, the party seeking class certification must also demonstrate that

9    an identifiable and ascertainable class exists.  <u>Mazur v. eBay Inc.</u>, 257 F.R.D. 563, 567

10   (N.D. Cal. 2009).

11       Rule 23(a) requires that plaintiffs demonstrate numerosity, commonality, typicality

12   and adequacy of representation in order to maintain a class.  <u>Mazza</u>, 666 F.3d at 588.

13   That is, the class must be so numerous that joinder of all members individually is

14   "impracticable;" there must be questions of law or fact common to the class; the claims or

15   defenses of the class representative must be typical of the claims or defenses of the class;

16   and the class representative must be able to protect fairly and adequately the interests of

17   all members of the class.  <u>See</u> Fed. R. Civ. P. 23(a)(1)-(4).

18       If the class is ascertainable and all four prerequisites of Rule 23(a) are satisfied, the

19   court must also find that the plaintiff has "satisf[ied] through evidentiary proof" at least one

20   of the three subsections of Rule 23(b).  <u>Comcast Corp. v. Behrend</u>, 133 S.Ct. 1426, 1432

21   (2013).  A class may be certified under Rule 23(b)(1) upon a showing that there is a risk of

22   substantial prejudice or inconsistent adjudications from separate actions.  Fed. R. Civ. P.

23   23(b)(1).  A class may be certified under Rule 23(b)(2) if "the party opposing the class has

24   acted or refused to act on grounds that apply generally to the class, so that final injunctive

25   relief or corresponding declaratory relief is appropriate respecting the class as a whole."

26   Fed. R. Civ. P. 23(b)(2).  Finally, a class may be certified under Rule 23(b)(3) if a court

27   finds that "questions of law or fact common to class members predominate over any

28   questions affecting only individual members, and that a class action is superior to other

United States District Court

For the Northern District of California

1    available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P.

2    23(b)(3).

3         "[A] court's class-certification analysis . . . may 'entail some overlap with the merits of

4    the plaintiff's underlying claim.'"  Amgen Inc. v. Conn. Ret. Plans and Trust Funds, 133

5    S.Ct. 1184, 1194 (2013) (quoting Dukes, 131 S.Ct. at 2551).  Nevertheless, "Rule 23 grants

6    courts no license to engage in free-ranging merits inquiries at the certification stage."  Id. at

7    1194-95.  "Merits questions may be considered to the extent – but only to the extent – that

8    they are relevant to determining whether the Rule 23 prerequisites for class certification are

9    satisfied."  Id. at 1195.  If a court concludes that the moving party has met its burden of

10   proof, then the court has broad discretion to certify the class.  Zinzer v. Accuflix Res. Inst.,

11   Inc., 253 F.3d 1180, 1186, amended by 273 F.3d 1266 (9th Cir. 2001).

12   B.    Plaintiff's Motion

13        Through this motion, plaintiff seeks certification of a class pursuant to Rule 23(a) and

14   Rule 23(b)(3).[1]  The proposed class is defined as a class of "[a]ll persons who, on or after

15   September 29, 2006, purchased in the State of California Ben & Jerry's ice cream products

16   that were labeled 'All Natural' but contained alkalized cocoa processed with a synthetic

17   ingredient."

18        Plaintiff argues that all requirements of Rule 23(a) and Rule 23(b)(3) are satisfied.

19   She contends that the class is sufficiently "numerous," that her claims are "typical" of the

20   claims of the class, that she and her counsel are "adequate," and that "common questions"

21   exist because she and the class members have all suffered the same injury.  She asserts

22   further that common questions predominate as to the UCL claims, and as to the common

23   law fraud and quasi-contract claims, and that individual issues of damages do not

24   predominate.  Finally, she argues that a class action is superior to other methods for the

25   adjudication of this controversy.

26   ─────────────────────

27      [1]  The FAC alleges a nationwide class and a California sub-class, plus two injunctive
     relief classes, but the present motion seeks a California-only Rule 23(b)(3) damages class.
28   The court concludes that plaintiff has abandoned the "national class" allegations and the "(b)(2)
     class" claims.

United States District Court

For the Northern District of California

1    In opposition, defendant contends that the motion should be denied, because

2  plaintiff has not shown that the class is "ascertainable" or "numerous;" because plaintiff has

3  not shown that she has Article III standing or injury-in-fact; because commonality and

4  predominance are lacking; because plaintiff cannot show that she or her attorneys are

5  "adequate" representatives; and because plaintiff cannot show that a class action is

6  "superior."

7    The court finds that the motion must be denied, for two primary reasons – plaintiff

8  has not established that the class is ascertainable, and she has not established that

9  common issues predominate over individual issues.

10    1.    Ascertainability

11    While there is no explicit requirement concerning the class definition in Rule 23,

12  courts have held that the class must be adequately defined and clearly ascertainable

13  before a class action may proceed.  See Xavier v. Philip Morris USA Inc., 787 F.Supp. 2d

14  1075, 1089 (N.D. Cal. 2011); Schwartz v. Upper Deck Co., 183 F.R.D. 672, 679-80 (S.D.

15  Cal. 1999); see also DeBremaecker v. Short, 433 F.2d 733, 734 (5th Cir. 1970) (identity of

16  class members need not be known at time of certification, but class membership must be

17  clearly ascertainable).

18    "A class definition should be 'precise, objective and presently ascertainable.'"

19  Rodriguez v. Gates, 2002 WL 1162675 at *8 (C.D. Cal. May 30, 2002) (quoting O'Connor v.

20  Boeing North American, Inc., 184 F.R.D. 311, 319 (C.D. Cal. 1998)); see also Manual for

21  Complex Litigation, Fourth § 21.222 at 270-71 (2004).  That is, the class definition must be

22  sufficiently definite so that it is administratively feasible to determine whether a particular

23  person is a class member.  See Xavier, 787 F.Supp. 2d at 1089.

24    Plaintiff does not directly address ascertainability in her moving papers.  In the

25  opposition, defendant argues that the proposed class definition does not describe a group

26  of people whose membership in the class can be ascertained in a reliable manner.

27  Defendant contends that because cocoa can be alkalized using one of several alkalis –

28  some of which are "natural" and some of which are "non-natural" (i.e., "synthetic") – it will

1   be necessary to determine which class members bought an ice cream containing alkalized

2   cocoa processed with a synthetic ingredient.  Defendant asserts, however, that there is no

3   way to identify which class members bought which type of ice cream, particularly given that

4   Ben & Jerry's is a wholesale manufacturer that does not maintain records identifying the

5   ultimate customers or their purchases.

6          The court agrees with defendant that the class is not sufficiently ascertainable.

7   The class is defined as persons who bought Ben & Jerry's labeled "all natural" which

8   contained alkalized cocoa processed with a synthetic ingredient.  However, plaintiff has

9   provided no evidence as to which ice cream contained the allegedly "synthetic ingredient"

10  (assuming that alkali can be considered an "ingredient").  More importantly, plaintiff has not

11  shown that a means exists for identifying the alkali in every class member's ice cream

12  purchases.  The packaging labels say only "processed with alkali," because that is all the

13  FDA requires.

14         Defendant uses cocoa that is sourced from as many as 15 different suppliers.

15  Plaintiff contends that one supplier, Barry Callebaut, was the only supplier that provided

16  Ben & Jerry's with alkalized cocoa for use in products where the cocoa powder provided

17  the chocolate base of the ice cream.  However, while Barry Callebaut's corporate designee

18  testified that the alkalized cocoa the company provided to Ben & Jerry's was alkalized with

19  synthetic substances, he also testified that he did not know which alkalizing agent was

20  used in every instance.  Moreover, other sources provided Ben & Jerry's with "mix-in"

21  ingredients made from alkalized cocoa, which sources did not identify the specific alkalizing

22  agent used in processing the alkalized cocoa.  Because plaintiff has not shown that a

23  method exists for determining who, among the many California purchasers of Ben &

24  Jerry's, fits within the proposed class, the class is not ascertainable.

25         2.     Standing

26         A second threshold issue for any class action is that the named plaintiff must show

27  that she has been personally injured and has Article III standing.  See Lierboe v. State

28  Farm Mut. Auto Ins. Co., 350 F.3d 1018, 1022 (9th Cir. 2003).  If the plaintiff lacks a claim

United States District Court

For the Northern District of California

1    in her own right, she cannot represent a class.  <u>Schlesinger v. Reservists Comm. To Stop</u>

2    <u>the War</u>, 418 U.S. 208, 216 (1974).

3        Plaintiff does not directly address standing in her moving papers. In its opposition,

4    defendant contends that plaintiff cannot show Article III standing or injury-in-fact.

5    Defendant cites plaintiff's deposition testimony, where she asserted that she consumed all

6    the ice cream she bought, that the products were not tainted, that she did not become ill,

7    and that until she met her attorneys she was not unhappy.  Defendant contends that

8    plaintiff's only claim to non-economic injury is that she decided Ben & Jerry's "disrupted my

9    vibe," but argues that "hurt feelings" is not an injury-in-fact, and that it is not susceptible to

10    classwide proof.  Defendant also argues that plaintiff's injury is contingent on whether she

11    bought ice cream with "bad alkali," and is thus not certain.

12        Defendant asserts further that plaintiff's only allegation of injury is the payment of a

13    premium for Ben & Jerry's ice cream, <u>see</u> FAC ¶¶ 5, 6, 23, 41, but notes that she testified

14    in her deposition that the price had no bearing on her purchase decisions.  Defendant

15    contends that to someone who did not care about the price, paying a premium cannot be

16    an "injury."  Moreover, plaintiff testified that she had no idea how much of a premium she

17    paid for Ben & Jerry's as opposed to other ice creams.

18        In response, plaintiff argues that she has standing and injury-in-fact.  She cites to

19    her deposition testimony, where she was asked if the allegation in the FAC that she "is

20    willing to and has paid a premium for foods that are all natural and has refrained from

21    buying their counterparts that were not all natural" was a true statement, and she

22    responded, "Yes;" and where she was asked if the statement in the FAC that she paid

23    more for Ben & Jerry's ice cream than she "would have had to pay for other similar ice

24    cream . . . products that were not all natural," and she responded, "Yes."  She also points to

25    her response to Interrogatory No. 1, where she stated that she "lost money because she

26    paid more to buy [d]efendant's "All Natural" ice cream . . . than she would have paid for

27    similar ice cream . . . that was not touted as "All Natural."

28        Plaintiff notes that the court previously (in its May 26, 2011 order denying the motion

United States District Court

For the Northern District of California

1    to dismiss) rejected defendant's standing/injury-in-fact argument, stating that if plaintiff did

2    in fact purchase the ice cream based on the representation that it was all-natural, and if that

3    representation proves to be false, then plaintiff will arguably have suffered an injury in fact.

4    Plaintiff claims that the above-cited deposition testimony and interrogatory response show

5    that she did purchase the Ben & Jerry's ice cream products based on the representation

6    that they were all-natural.

7        The court finds that plaintiff has alleged facts sufficient to establish standing, at least

8    for purposes of the present motion.  The arguments raised by defendant – particularly

9    regarding whether plaintiff paid a "premium" and regarding what in fact constitutes

10   "premium" ice cream – would more properly be addressed in the context of a dispositive

11   motion, rather than in a motion to dismiss or a motion for class certification.

12       3.    Rule 23(a)

13       "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the

14   class whose claims they wish to litigate." Dukes, 131 S.Ct. at 2550.  When considering a

15   class certification motion, the trial court must perform a "rigorous analysis" to ensure that

16   "the prerequisites of Rule 23(a) have been satisfied." Id. at 2551.  In doing so, and as

17   Dukes clarifies, a district court must examine evidence going to the merits, to the extent

18   examination of that evidence necessarily overlaps with the analysis required to determine

19   whether Rule 23(a) factors have been met.  See id. at 2552.

20       a.    Numerosity

21       Rule 23(a)(1) requires that a class be so numerous that joinder of all members is

22   impracticable.  In order to satisfy this requirement, the plaintiff need not state the exact

23   number of potential class members, nor is there a specific number that is required.  See In

24   re Rubber Chems. Antitrust Litig., 232 F.R.D. 346, 350-51 (N.D. Cal. 2005).  Rather, the

25   specific facts of each case must be examined.  General Tel. Co. v. EEOC, 446 U.S. 318,

26   330 (1980).

27       While the ultimate issue in evaluating this factor is whether the class is too large to

28   make joinder practicable, courts generally find that the numerosity factor is satisfied if the

United States District Court

For the Northern District of California

1    class comprises 40 or more members, and will find that it has not been satisfied when the

2    class comprises 21 or fewer.  See, e.g., Celano v. Marriott Int'l, Inc., 242 F.R.D. 544, 549

3    (N.D. Cal. 2007).

4        Here, plaintiff argues that the proposed class is sufficiently numerous because, at a

5    minimum, it includes thousands of members.  Defendant argues, however, that plaintiff has

6    not shown numerosity, because merely "buying" ice cream is not enough – plaintiff must

7    show that the consumer bought a flavor that used a "bad" alkali.  Defendant asserts that

8    when a putative class is a subset of some larger pool, the trial court may not infer

9    numerosity from the number in the larger pool alone.

10       The court finds it more likely than not that the class is sufficiently numerous.  The

11   real problem, however, is ascertainability, because (as explained above) it is impossible to

12   tell who does or does not fit within the class definition.

13                    b.    Commonality

14       Commonality requires that there be "questions of law or fact common to the class."

15   Fed. R. Civ. P. 23(a)(2).  The plaintiff must show that the class members have suffered "the

16   same injury" – which means that the class members' claims must "depend upon a common

17   contention" which is of such a nature that "determination of its truth or falsity will resolve an

18   issue that is central to the validity of each [claim] in one stroke."  Dukes, 131 S.Ct. at 2551

19   (quotation and citation omitted).  The plaintiff must demonstrate not merely the existence of

20   common questions, but rather "the capacity of a classwide proceeding to generate common

21   answers apt to drive the resolution of the litigation."  Id. (quotation omitted) (emphasis in

22   original).  Nevertheless, for purposes of Rule 23(a)(2), "'[e]ven a single [common] question'

23   will do."  Id. at 2556.

24       Plaintiff argues that this case involves questions of law and fact common to the

25   class.  She combines her arguments regarding Rule 23(a)(2) commonality with her

26   arguments regarding Rule 23(b)(3) predominance, but the substance of her assertion

27   regarding commonality is that the claims in the case "depend on common factual and legal

28   contentions the determination of which will resolve issues that are central to the validity of

United States District Court

For the Northern District of California

1  [the] claims in a single stroke."  She contends that all claims arise from defendant's

2  identical misrepresentations that the Ben & Jerry's ice cream products at issue were "all

3  natural," when in fact those products used alkalized cocoa powder processed with a

4  substance the FDA recognizes as "synthetic."

5        Plaintiff asserts that the common questions include (a) whether defendant labeled its

6  Ben & Jerry's ice cream "all natural;" (b) whether the Ben & Jerry's ice cream products

7  labeled "all natural" used alkalized cocoa that was alkalized with a non-natural alkalizing

8  agent; (c) whether Ben & Jerry's ice cream products that contained cocoa alkalized with a

9  non-natural alkalizing agent are in fact "all natural;" (d) whether Ben & Jerry's "all natural"

10  labeling and failure to comply with 21 C.F.R. § 135.110(f)(2) (by labeling its products

11  "artificially flavored") was likely to deceive class members or the general public;[2] and (e) the

12  appropriate measure of restitution and/or restitutionary disgorgement.

13        In opposition, defendant makes three main arguments.  First, defendant contends

14  that "all natural" has no common meaning – given that food producers, consumers, and the

15  FDA have all failed to define "all natural" in any consistent manner (and in the case of the

16  FDA, declined to attempt to define it) – and in any event cannot result in certification if the

17  ingredient (such as alkalized cocoa) would qualify as "organic."  Defendant also notes that

18  in the original complaint, plaintiff attacked all alkalized cocoa, but now alleges that only

19  synthetic alkalis are "non-natural," and also suggests again that all alkalis are "bad."

20  Defendant asserts that if even plaintiff can't decide what is or is not "all natural," the term is

21  evidently not susceptible to common definition or proof.

22        Second, defendant argues that plaintiff has no evidence, let alone common

23  evidence, of deception.  Defendant asserts that at trial, plaintiff must show that the term "all

24  natural" is "likely to deceive," which must be shown by common evidence, such as a

25  consumer survey.  Defendant notes that plaintiff has provided no expert declarations, and

26  no other evidence supporting her theory that the words "all natural" would cause a

27  _____

28        [2]  As defendant notes in its opposition, the FAC does not allege violation of 21 C.F.R. § 135.110(f).

10

United States District Court

For the Northern District of California

1    reasonable consumer to anticipate a non-synthetic alkali; and that in lieu of evidence, all

2    she has provided is a selection of articles discussing consumer preferences for products in

3    general, not ice cream, and which in any event are hearsay.

4        Third, defendant asserts that its evidence refutes any common understanding of "all

5    natural."  Defendant's expert Dr. Kent Van Liere conducted a consumer survey in which he

6    showed 400 consumers a "Cherry Garcia®" cartoon with either the words "all natural" (test

7    group) or "Vermont's Finest" (control group) on the label.  More than half the respondents

8    had no expectation that the ice cream contained alkalized cocoa (although both packages

9    included "cocoa (processed with alkali)" as an ingredient; only 13% shown the "all natural"

10   label expected that the alkali would be "natural," and of that group, only 3% said that would

11   make them more likely to buy.  Defendant contends that this is consistent with the findings

12   of its expert Dr. Carol Scott, who found no evidence that consumers who purchased the

13   Ben & Jerry's ice cream products at issue gave significant consideration to whether the ice

14   cream was labeled "all natural," and that in fact, numerous other factors were more likely to

15   motivate their purchases.

16       As noted above, commonality can be established by the presence of a single

17   significant common issue, which in this case, includes the ultimate question whether

18   consumers were likely to be deceived by defendant's labeling and advertising of the Ben &

19   Jerry's ice cream products as "all natural."  It is undisputed that defendant labeled some

20   Ben & Jerry's ice cream products as "all natural."  It also appears to be undisputed that at

21   least some of the Ben & Jerry's products labeled "all natural" contained cocoa that had

22   been alkalized with a "synthetic" alkalizing agent, and that some contained cocoa that had

23   been alkalized with a "natural" alkalizing agent – although plaintiff has provided no reliable

24   method to determine whether the alkalized cocoa in a given container of ice cream was

25   processed using a "synthetic" or a "natural" alkalizing agent.

26       Defendant has provided evidence suggesting that consumers are not likely to be

27   deceived by the "all natural" label, while plaintiff has presented no evidence in opposition.

28   Thus, plaintiff has not established that this is a common legal or factual question that is

**United States District Court**
For the Northern District of California

1   susceptible to classwide determination.  The related question whether there is a common

2   or accepted meaning of "all natural," while essential to any ultimate resolution of the claims

3   raised in this case, has also not been resolved in this motion. Nevertheless, the court finds

4   that the existence of this question is arguably sufficient to establish Rule 23(a)(2)

5   commonality, as class treatment is likely to generate common answers likely to drive the

6   resolution of the litigation.

7                   c.      Typicality

8          The third requirement under Rule 23(a) is that the claims or defenses of the class

9   representatives must be typical of the claims or defenses of the class.  Fed. R. Civ. P.

10  23(a)(3).  The purpose of the typicality requirement is to assure that the interest of the

11  named representative aligns with the interests of the class.  See Ellis v. Costco Wholesale

12  Corp., 657 F.3d 970, 984-85 (9th Cir. 2011); Hanon v. Dataproducts Corp., 976 F.2d 497,

13  508 (9th Cir. 1992).  "Typicality refers to the nature of the claim or defense of the class

14  representative, and not to the specific facts from which it arose or the relief sought." Id.

15  (quotation omitted).

16         Under the "permissive standards" of Rule 23(a), "representative claims are 'typical if

17  they are reasonably co-extensive with those of absent class members; they need not be

18  substantially identical." Staton v. Boeing Co., 327 F.3d 938, 957 (9th Cir. 2003).   To be

19  considered typical for purposes of class certification, the named plaintiff need not have

20  suffered an identical wrong.  Id.  Rather, the class representative must be part of the class

21  and possess the same interest and suffer the same injury as the class members.  See

22  Falcon, 457 U.S. at 156.

23         Plaintiff argues that her claims are typical of the claims of the class, because all the

24  claims arise from the same course of events – the sale of "all natural" labeled Ben &

25  Jerry's ice cream products which contain alkalized cocoa processed with a synthetic

26  substance.  Plaintiff also contends that she and the members of the class were each

27  exposed to identical misrepresentations on the ice cream packages, and thus share the

28  same interests in determining whether the Ben & Jerry ice cream products were

United States District Court

For the Northern District of California

deceptively labeled.  She asserts that a plaintiff who purchases products within the same product line with the same labeling omissions or claims is "sufficiently similar to" and thus can represent all other class members within that product line.

In opposition, defendant argues that the contrast between what plaintiff testified to in her deposition, and what Dr. Van Liere's consumer survey showed, is "glaring."  Plaintiff testified that nothing mattered except the words "all natural" on the label, whereas 97% of consumers in Dr. Van Liere's survey responded that it did not matter if the product contained cocoa processed with a synthetic alkali.  Defendant also notes that plaintiff complains about her "vibe" being "disrupted" upon learning from class counsel that Ben & Jerry's might have used a "synthetic" alkali, but that she provides no evidence that other consumers shared this view.  Moreover, they note that she is suing over many ice cream products, including 27 that she never purchased, and argue that her claim cannot be typical of those of consumers who purchased products she did not purchase.

The court finds that plaintiff has not established that her claims are typical of those of the class, in part because she has not identified an ascertainable class.  It is true that all purchasers of Ben & Jerry's ice cream were exposed to the same package labeling, but that alone is not sufficient to establish that plaintiff's claims of having been deceived are typical of the claims of the class, given that the class is not sufficiently ascertainable.

d.    Adequacy

The fourth requirement under Rule 23(a) is adequacy of representation.  The court must find that named plaintiff's counsel is adequate, and that the named plaintiff(s) can fairly and adequately protect the interests of the class.  To satisfy constitutional due process concerns, unnamed class members must be afforded adequate representation before entry of a judgment which binds them.  See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998).

Legal adequacy is determined by resolution of the question whether the named plaintiffs and their counsel have any conflicts with class members; and the question whether the named plaintiffs and their counsel will prosecute the action vigorously on

13

United States District Court

For the Northern District of California

1   behalf of the class.  Id.  Generally, representation will be found to be adequate when the

2   attorneys representing the class are qualified and competent, and the class

3   representatives are not disqualified by interests antagonistic to the remainder of the class.

4   Lerwill v. Inflight Motion Pictures, 582 F.2d 507, 512 (9th Cir. 1978).

5        Plaintiff argues that she is an adequate representative because she is a member of

6   the class she seeks to represent, shares the same claims and interest in obtaining relief as

7   the other class members, and has no conflicts of interest with other class members.  She

8   asserts that she has also demonstrated her adequacy through her participation thus far in

9   this litigation, and was found to be an adequate representative in another food labeling

10  case (represented by the same counsel).  Plaintiff contends that proposed class counsel

11  are also adequate, as they are qualified, experienced, and generally able to conduct the

12  proposed litigation as required by Rule 23(g).

13       The plaintiff's burden of showing adequacy is fairly minimal, and she has arguably

14  met it here.  Defendant essentially makes only one argument in opposition – that plaintiff's

15  refusal to disclose the details of her settlement with the defendant in another proposed

16  class action (where certification was denied) makes her an inadequate representative.

17       4.   Rule 23(b)

18       Under Rule 23(b)(3), a plaintiff must show that "the questions of law or fact common

19  to class members predominate over any questions affecting only individual members," and

20  that "a class action is superior to other available methods for fairly and efficiently

21  adjudicating the controversy.  Fed. R. Civ. Pro. 23(b)(3).  Matters pertinent to the Rule

22  23(b)(3) inquiry include the class members' interests in individually controlling the

23  prosecution or defense of separate actions, the extent and nature of any litigation

24  concerning the controversy already begun by or against class members, the desirability or

25  undesirability of concentrating the litigation of the claims in the particular forum, and the

26  likely difficulties in managing a class action.  Id.

27       a.   Predominance of common questions

28       The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are

United States District Court

For the Northern District of California

sufficiently cohesive to warrant adjudication by representation." AmChem Prods., Inc., v. Windsor, 521 U.S. 591, 623 (1997).  This inquiry requires the weighing of the common questions in the case against the individualized questions, which differs from the Rule 23(a)(2) inquiry as to whether the plaintiff can show the existence of a common question of law or fact.  See Dukes, 131 S.Ct. at 2556.

In addition, however, the predominance analysis under Rule 23(b)(3) is more stringent than the commonality requirement of Rule 23(a)(2).  Thus, to satisfy the predominance inquiry, it is not enough to establish that common questions of law or fact exist, as it is under Rule 23(a)(2)'s commonality requirement.  Indeed, the analysis under Rule 23(b)(3) "presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2)."  Hanlon, 150 F.3d at 1022.

Rule 23(b)(3) focuses on "the relationship between the common and individual issues."  Id.  The inquiry is more rigorous as it "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  AmChem Prods., 521 U.S. at 623-24.  Under the predominance inquiry, "there is clear justification for handling the dispute on a representative rather than an individual basis" if "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication . . . ."  Hanlon, 150 F.3d at 1022, quoted in Mazza, 666 F.3d at 589.

Considering whether questions of law or fact common to class members predominate begins with the elements of the underlying causes of action.  See Stearns v. Ticketmaster Corp., 655 F.3d 1013, 1020 (9th Cir. 2011).  Here, plaintiffs allege six causes of action – three claims under § 17200, one claim under § 17500, a claim for common law fraud, and a claim for restitution/quasi-contract.

Plaintiff contends that common questions predominate as to all six claims, and that individual issues of damages do not predominate.  First, with regard to the claims under § 17200 and § 17500, plaintiff argues (a) that common issues predominate as to the "unlawful" business practices claim because she will be able to establish through common

United States District Court

For the Northern District of California

1  evidence that the "all natural" claims are false and misleading to consumers; (b) that

2  common issues predominate as to the "unfair" business practices claim because the court

3  must weight the utility of defendant's conduct against the gravity of the harm to the alleged

4  victim, an inquiry plaintiff asserts is common to all members of the class; and (c) that

5  common issues predominate as to the "fraudulent" business practices claim and false

6  advertising claim because plaintiff's own reliance on defendant's representation caused

7  her injury, and because she can show that members of public are "likely to be deceived,"

8  but (under Stearns) need not show individualized reliance as to the other class members.

9      With regard to the common law fraud claim, plaintiff asserts that common issues

10  predominate because the elements of the fraud claim (misrepresentation of a material fact,

11  knowledge of falsity, intent to deceive and to induce reliance, justifiable reliance, and

12  resulting damage) can all be proved from common evidence that defendant

13  misrepresented that the Ben & Jerry's ice cream products were "all natural;" that the "all

14  natural" statement is material to the average consumer; that defendant knew the ice cream

15  was not "all natural;" that defendant intended to deceive consumers about the nature of its

16  ingredients; that plaintiff justifiably relied on defendant's "all natural" misrepresentation;

17  and that plaintiff and the class members were damaged by buying a product that was not

18  "all natural."

19      With regard to the claim for restitution based on quasi-contract, plaintiff contends

20  that this claim can be proved by evidence of receipt and unjust retention of a benefit at the

21  expense of another, which she asserts is the same common evidence referenced above.

22  Finally, plaintiff argues that individual issues of damages do not predominate, because

23  damages can be measured from defendant's record of sales, profits, and prices for Ben &

24  Jerry's ice cream.  Plaintiff contends that an opinion from a damages expert is not required

25  at the class certification stage, particularly where losses can be determined by a "purely

26  mechanical process" or a "mathematical calculation."

27      Plaintiff asserts that restitutionary disgorgement of defendant's profits can be

28  calculated using "simple math" based on the financial records of Ben & Jerry's showing

United States District Court

For the Northern District of California

1   what its sales, profits, and costs were on the products at issue.  For example, she claims

2   she can get sales information in California "through subpoenas of retailers or from retail

3   tracking servicers . . . who gather and sell point-of-sales data, including products sold, the

4   stores sold at, and the prices paid."

5          In its opposition, defendant argues that common issues do not predominate

6   because reliance, materiality, and causation are all inherently individual; because

7   entitlement to monetary relief raises inherently individual issues; and because proving a

8   violation of FDA "policy" or FDA regulations raises individual issues.

9          First, defendant asserts that reliance, materiality, and causation are all inherently

10  individual, and plaintiff has no evidence of any of these being common factors, let alone

11  that they predominate.  For example, defendant contends, its experts have established

12  that consumer choice is affected by many different factors, and plaintiff has no evidence

13  to show that "all natural" has any uniform meaning or that it would have any major impact

14  on a consumer's decision to purchase (or not to purchase) a particular brand of ice cream.

15  Defendant also contends that likelihood of confusion must be "probable," not just

16  "possible," and that while plaintiff provides no evidence of likelihood of confusion, the

17  study conducted by defendant's expert shows that only 3% of consumers who saw "all

18  natural" on the packaging expected that the alkali used to process the cocoa was

19  "natural."

20         Defendant argues that the only way to test materiality and reliance would be to

21  determine how much each consumer would have de-valued the ice cream products given

22  the alleged presence of potassium carbonate – the "synthetic" alkalizing agent.  However,

23  defendant asserts, this cannot be done on a classwide basis, because consumer choice is

24  affected by myriad factors, as reflected in the report of its expert Dr. Scott.

25         In its second main argument, defendant asserts that entitlement to monetary relief

26  raises inherently individual issues.  As an initial matter, defendant notes that while plaintiff

27  claims that restitution and damages can be proven on a price-premium theory from data of

28  "average retail prices," she has provided no evidence supporting this assertion – in

United States District Court

For the Northern District of California

1    particular, no expert testimony in support.  Defendant contends that under Comcast,

2    where a plaintiff fails to submit expert testimony, he/she cannot demonstrate that common

3    questions predominate.

4         As for plaintiff's claim that it is a matter of "simple math" to calculate damages

5    based on Ben & Jerry's sales figures, defendant responds that at most, Ben & Jerry's

6    sales figures show only aggregate dollar amounts and numbers of units sold at wholesale

7    – not who bought them, how many units each class member bought, or which alkali a

8    particular flavor used.  Defendant also asserts that the class is overbroad, because at

9    most only 13% of consumers surveyed expected that the "all natural" label meant that the

10   alkali was "natural" and only 3% said it would affect their purchasing decision.  Finally,

11   defendant contends that a remedy based on "average" prices, which is what plaintiff

12   seems to be suggesting, would alter defendant's substantive right to pay damages that are

13   reflective of its actual liability.

14        More importantly, defendant argues, the evidence shows that no one paid a

15   premium for the "all natural" Ben & Jerry's ice cream, as Ben & Jerry's charges wholesale

16   customers the same price regardless of flavor and regardless of the contents of the label.

17   Defendant cites to the report of its marketing expert Dr. Scott, who found that Ben &

18   Jerry's did not charge more for ice cream labeled "all natural" than it did for ice cream

19   without that label; that there was no difference at the retail level between the two; that

20   when Ben & Jerry's removed the "all natural" label from the ice cream packages, the

21   prices did not decrease (neither the wholesale nor the retail prices) as one would have

22   anticipated; and there is no support for plaintiff's speculation that "all natural" ice creams

23   command a premium of $0.50 to $0.75 per container.

24        In its third main argument, defendant contends that proving a violation of FDA

25   "policy" raises inherently individualized issues.  Defendant argues that the FDA's "policy"

26   has two components – (a) nothing artificial or synthetic (including color additives) and (b)

27   the thing added would not be expected to be in food.  Defendant contends that plaintiff

28   cannot show either element, as alkali is merely a processing aid, used to raise the pH –

United States District Court

For the Northern District of California

1  not an ingredient or flavoring agent – and plaintiff has submitted no evidence showing that

2  a synthetic alkali is "not normally to be expected."[3]

3      Section 17200 prohibits "any unlawful, unfair or fraudulent business act or practice

4  and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.

5  The statute is phrased in the "disjunctive," and, as a result, is violated where a defendant's

6  act or practice is unlawful, unfair, or fraudulent.  Prata v. Super. Ct., 91 Cal. App. 4th 1128,

7  1137 (2001).  Likewise, § 17500 broadly prohibits the dissemination of advertising that is

8  deceptive, untrue, or misleading.  Cal. Bus. & Prof. Code § 17500; Jolley v. Chase Home

9  Finance, LLC, 213 Cal. App. 4th 872, 906-907 (2013).

10     Relief under § 17200 and § 17500 is available "without individualized proof of

11  deception, reliance and injury," so long as the named plaintiffs demonstrate injury and

12  causation.  Mass. Mut. Life Ins. Co. v. Sup. Ct., 97 Cal. App. 4th 1282, 1289 (2002); see

13  also In re Tobacco II Cases, 46 Cal. 4th 298, 326-27 (2009).  Moreover, under these

14  statutes, only the named plaintiffs are required to establish reliance and causation, not

15  each class member.  See Astiana v. Kashi Co., 291 F.R.D. 493, 504 (S.D. Cal. 2013);

16  Thurston v. Bear Naked, Inc., 2013 WL 5664985 at * 7 (S.D. Cal. July 30, 2013).

17     In this case, however, the court need not consider all the elements of each of these

18  claims, as all claims asserted in the FAC have "damages" as an element, and plaintiff has

19  not established that common issues predominate such that there is a classwide method of

20  granting relief.

21     Under the UCL, a court may grant a class restitution as a form of relief.  Colgan v.

22  Leatherman Tool Group, Inc., 135 Cal. App. 4th 663, 694 (2006); Cal. Bus. & Prof. Code

23  §§ 17203, 17535.  Restitutionary relief is an equitable remedy, and its purpose is "to

24  restore the status quo by returning to the plaintiff funds in which he or she has an

_____

25

26      [3] In addition, with regard to the new "flavoring" claim, defendant asserts (i) that it was not pled, (ii) that plaintiff previously disclaimed it as inapplicable, (iii) that if a "bad alkali" is a

27  "flavor" then so too is a "good alkali," and (iv) that it is wrong, as even plaintiff admits in the ¶ 14 of the FAC that the function of the alkali is not to impart flavor but to neutralize the acids

28  and alter the pH level of the beans.  These arguments, while legitimate, do not have any bearing on the court's decision regarding class certification.

United States District Court

For the Northern District of California

1   ownership interest." <u>Korea Supply Co. v. Lockheed Martin Corp.</u>, 29 Cal. 4th 1134, 1149

2   (2003); <u>see also</u> <u>Cortez v. Purolator Air Filtration Products Co.</u>, 23 Cal. 4th 163, 177

3   (2000).  The form of restitutionary relief authorized by California law has two purposes:

4   returning money unjustly taken from the class, and deterring the defendant from engaging

5   in future violations of the law.  <u>Colgan</u>, 135 Cal. App. 4th at 695.

6        While a court of equity "may exercise its full range of powers in order to accomplish

7   complete justice between the parties" when awarding restitution, the restitution awarded

8   must be a "quantifiable sum," and the award must be supported by substantial evidence.

9   <u>Colgan</u>, 135 Cal. App. 4th at 698, 700; <u>Cortez</u>, 23 Cal. 4th at 178.  Thus, the restitution

10  awarded to class members must correspond to a measurable amount representing the

11  money that the defendant has acquired from each class member by virtue of its unlawful

12  conduct.  <u>Colgan</u>, 135 Cal. App. 4th at 697-98.  Unlawful profits unfairly obtained can

13  provide a measure for recovery, but only "to the extent that these profits represent monies

14  given to the defendant or benefits in which the plaintiff has an ownership interest."  <u>Korea</u>

15  <u>Supply</u>, 29 Cal. 4th at 1148.

16       In <u>Leyva v. Medline Indus., Inc.</u>, 716 F.3d 510 (9th Cir. 2013), one of the cases on

17  which plaintiff relies, the Ninth Circuit acknowledged that under the Supreme Court's

18  recent decision in <u>Comcast</u>, the plaintiffs must be able to show that their damages

19  stemmed from the defendant's actions that created the legal liability.  <u>Id.</u> at 514.  However,

20  the Ninth Circuit noted that in the case before it, if the class members proved the

21  defendant's liability, damages would be "calculated based on the wages each class

22  member lost due to" the defendant's unlawful practices.  In other words, the damages in

23  that case were ascertainable and quantifiable.

24       One method of quantifying the amount of restitution to be awarded is computing the

25  effect of unlawful conduct on the market price of a product purchased by the class.

26  <u>Colgan</u>, 135 Cal. App. 4th at 698-99.  This measure of restitution contemplates the

27  production of evidence that attaches a dollar value to the "consumer impact or advantage"

28  caused by the unlawful business practices.  <u>Id.</u> at 700.  Restitution can then be calculated

United States District Court

For the Northern District of California

1   by taking the difference between the market price actually paid by consumers and the true

2   market price that reflects the impact of the unlawful, unfair, or fraudulent business

3   practices.  Expert testimony may be necessary to determine the amount of price inflation

4   attributable to the challenged practice.  Id.

5          Further, the first step in any damages study is "the translation of the legal theory of

6   the harmful event into an analysis of the economic impact of that event." Comcast, 133

7   S.Ct. at 1435.  "[A]t the class certification stage (as at trial), any model supporting a

8   plaintiff's damages case must be consistent with its liability case." Id. at 1433.  Thus,

9   under Comcast, a court can certify a Rule 23(b)(3) class only if there is evidence

10  demonstrating the existence of a classwide method of awarding relief that is consistent

11  with the plaintiffs' theory of liability.  Forrand v. Federal Exp. Corp., 2013 WL 1793951, at

12  *3 (C.D. Cal. Apr. 25, 2013); see also Roach v. T.L. Cannon Corp., 2013 WL 1316452 at

13  *3 (N.D.N.Y. March 29, 2013).

14         Whichever way one approaches it, plaintiff has not met her burden of showing that

15  there is a classwide method of awarding relief that is consistent with her theory of

16  deceptive and fraudulent business practices, false advertising, or common law fraud (or

17  the alternative theory of restitution based on quasi-contract).

18         Plaintiff has not offered any expert testimony demonstrating that the market price of

19  Ben & Jerry's ice cream with the "all natural" designation was higher than the market price

20  of Ben & Jerry's without the "all natural" designation.  Thus, by definition, there is no

21  evidence showing how much higher the price of one was than the other.  More

22  importantly, plaintiff has not offered any expert testimony demonstrating a gap between

23  the market price of  Ben & Jerry's "all natural" ice cream and the price it purportedly

24  should have sold for if it had not been labeled "all natural" – or any evidence

25  demonstrating that consumers would be willing to pay a premium for "all natural" ice cream

26  that was made with cocoa alkalized with a "natural" alkali, and did in fact pay such a

27  premium.

28         Ben & Jerry's does not sell retail, and does not set retail prices.  Establishing a

United States District Court
For the Northern District of California

1   higher price for a comparable product would be difficult because prices in the retail market

2   differ and are affected by the nature and location of the outlet in which they are sold.  See

3   Red v. Kraft Foods, Inc., 2012 WL 8019257 at *11 (C.D. Cal. Apr. 12, 2012).  Moreover,

4   individualized awards of monetary restitution would require individualized assessments of

5   damages based on how many packages of ice cream each class member purchased.

6   See Ries v. Ariz. Beverages USA LLC, 287 F.R.D. 523, 541 (N.D. Cal. 2012); see also

7   Red, 2012 WL 8019257 at *11 (common questions did not predominate due to the

8   individualized nature of the damages calculations).

9        As noted above, under Comcast, the plaintiff is required to provide "evidentiary

10   proof" showing a classwide method of awarding relief that is consistent with plaintiff's

11   theory of liability.  See 133 S.Ct. at 1432.  Here, however, plaintiff has provided no

12   damages evidence.  More importantly, her failure to offer a damages model that is capable

13   of measurement across the entire class for purposes of Rule 23(b)(3) bars her effort to

14   obtain certification of the class.  The fact that plaintiff may have established that common

15   questions predominate with regard to some elements of some of the claims, is not

16   sufficient to support certification.

17        b.     Superiority

18        Rule 23(b)(3) also requires the court to determine whether "a class action is

19   superior to other available methods for the fair and efficient adjudication of the

20   controversy, based on the following nonexclusive factors:

21        (A) the interest of members of the class in individually controlling the
     prosecution. . . of separate actions; (B) the extent and nature of any litigation
22        concerning the controversy already commenced by. . . members of the class;
     (C) the desirability. . . of concentrating the litigation of the claims in the
23        particular forum; (D) the difficulties likely to be encountered in the
     management of a class action.
24

25   Fed. R. Civ. P. 23(b)(3).  Plaintiff argues that these factors support class certification here.

26        In light of the finding that plaintiff has not identified an ascertainable class, and that

27   common issues do not predominate, a class action is plainly not a superior method of

28   adjudication of the controversy.

**CONCLUSION**

In accordance with the foregoing, the court finds that plaintiff's motion for class certification must be DENIED.

**IT IS SO ORDERED.**

Dated:  January 7, 2014

_____
PHYLLIS J. HAMILTON
United States District Judge