1

2

3

4

5                        IN THE UNITED STATES DISTRICT COURT

6                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    SKYE ASTIANA,                              No. C -10-04387 PJH (EDL)

9              Plaintiff,                       **AMENDED ORDER DENYING**
                                                **DEFENDANT'S MOTION TO COMPEL**
10   v.                                         **THE RETURN OF INADVERTENTLY**
                                                **PRODUCED DOCUMENTS**
11   BEN & JERRY'S HOMEMADE, INC.,

12             Defendant.
     _____/

13

14   **I.      Introduction**

15

16        Plaintiff Skye Astiana has attached two documents produced by Defendant Ben & Jerry's

17   Homemade to her motion for class certification in this food labeling case.  Defendant claims that

18   these documents, together with ten others that it also produced, are privileged and were produced

19   inadvertently.  Defendant seeks to compel the return of the documents and to strike them from

20   Plaintiff's class certification motion and the accompanying Declaration of Joseph N. Kravec.

21        Defendant argues that each of the twelve documents at issue is privileged and constitutes

22   attorney work product, because they reflect the efforts of Defendant's parent company, Unilever

23   United States, Inc. ("Unilever"), to create company-wide guidelines on the use of the phrases

24   "natural" and "all natural."  Multiple departments worked on an initiative designed to advise the

25   company on the shifting regulatory environment.  Def.'s Mot. at 1.  Defendant claims that it took

26   robust measures during the discovery process to protect the privileged documents from disclosure

27   and took immediate steps to rectify the inadvertent disclosure, so it has not waived the privilege.

28   See Fed. R. Evid. 502(b).

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1    Plaintiff argues that the documents are not privileged, but rather regulatory documents

2    created in the normal course of Unilever's business.  Plaintiff declines to return or destroy the

3    documents, and seeks to use them in support of its class certification motion as a confirmation that

4    the products at issue are not "natural."

5

6    **II.    Legal Standard**

7    Defendant maintains that all the documents at issue are protected by both the attorney-client

8    privilege and the work-product doctrine.  "The attorney-client privilege exists where: 1) legal advice

9    of any kind is sought, 2) from a professional legal adviser in his capacity as such, 3) the

10   communications relating to that purpose, 4) made in confidence 5) by the client, 6) are at his

11   instance permanently protected 7) from disclosure by himself or by the legal adviser, 8) unless the

12   protection be waived."  United States v. Richey, 632 F.3d 559, 566 (9th Cir. 2011).  The

13   communication must be made in confidence for the purpose of obtaining legal advice from the

14   lawyer, and the "fact that a person is a lawyer does not make all communications with that person

15   privileged."  United States v. Martin, 278 F.3d 988, 999-1000 (9th Cir. 2002).  The work-product

16   doctrine protects documents prepared by a party or his representative in anticipation of litigation.

17   Richey, 632 F.3d at 567.  In evaluating whether a document was prepared in anticipation of

18   litigation, courts consider whether the documents "would not have been generated but for the

19   pendency or imminence of litigation."  Griffith v. Davis, 161 F.R.D. 687, 698-99 (C.D. Cal. 1995).

20   The burden is on the party claiming the privilege.

21

22   **III.   Discussion**

23

24   **A.    The Inadvertently Produced Documents**

25

26   The parties address extensively the two documents attached as Exhibits 8 and 15 to the

27   Declaration of Joseph N. Kravec in support of Plaintiff's class certification motion.  Exhibit 15

28   (B&J00013734-45) involves Unilever's attempt to create uniform guidelines across the company for

1   "natural" and "all natural" claims on food.  Exhibit 8 (B&J00039250-52, also produced at

2   B&J00039247-49) is an e-mail from Sam Zeller, a Unilever Regulatory Affairs employee, regarding

3   the status of the "natural" claim for a particular ingredient.  The remaining documents are draft

4   guidelines and transmittal e-mails that will be addressed as a group.

5           Defendant maintains that all of the documents constitute attorney work product because they

6   were prepared in anticipation of litigation.  Even though many of the documents also serve a

7   business purpose, Defendant argues that "'in light of the nature of the document and the factual

8   situation in the particular case, the document can be fairly said to have been prepared or obtained

9   because of the prospect of litigation.'"  Reply at 11 (quoting In re Grand Jury Subpoena (Mark

10  Torf/Torf Envtl. Mgmt., 357 F.3d 900, 907 (9th Cir. 2003)).  A number of the documents

11  (BJJ00039250-52; B&J00013746-49) were created after Plaintiff filed suit.  The others were all

12  prepared in 2008 or later, a time at which Unilever was on notice that competitors' products with

13  "all natural" claims were prompting lawsuits.  Defendant's two declarants, Ms. Schnell and Mr.

14  Zeller, testified that the initiative sought to make sure that Unilever complied with requirements.

15  Declaration of Nancy Schnell ("Schnell Decl.") ¶ 2; Declaration of Samuel Zeller ("Zeller Decl.") ¶

16  2.

17          Plaintiff disputes Defendant's assertion that the documents constitute attorney work product.

18  She argues that documents protected by the work-product doctrine is limited to documents "'created

19  because of anticipated litigation, and would not have been created in substantially similar form but

20  for the prospect of that litigation.'"  Opp. at 19 (quoting Gonzales v. United States, No. 08-3189,

21  2010 WL 1838948, at *2 (N.D. Cal. May 4, 2010) (Laporte, J.) (internal quotations omitted)).

22  Plaintiff argues that the documents at issue would have been created in substantially similar form

23  even without the prospect of litigation.  Plaintiff also counters Defendant's timing argument,

24  observing that none of the documents refer at all to the present litigation, and the one document that

25  refers to any litigation in particular refers to a public news report of a lawsuit filed against a

26  competitor.  See B&J00039250.  Plaintiff argues that the documents were produced in the regular

27  course of business, and do not reflect the mental impressions or legal theories of counsel regarding

28  pending or reasonably anticipated litigation.  While it is true, Plaintiff argues, that there was a

United States District Court
For the Northern District of California

3

"general legal climate where companies get sued," Opp. at 20, the Exhibit 15 document significantly predates the filing of this lawsuit.

### 1.    Ex. 15 (B&J00013734-45)

Defendant argues that this document was the product of a joint effort by multiple departments at Unilever to create uniform guidelines relating to "natural" and "all natural" claims. The company started to review these claims on its food products in late 2009. Defendant states that employees who worked for Regulatory Affairs were included because it needed to make sure that it properly understood the food science involved in making such a claim, and that in general the goal of the initiative was to ensure compliance with requirements and address potential future litigation. Unilever issued various company guidelines for "natural" and "all natural" claims, which it regarded as privileged attorney work product. Although Exhibit 15 never ripened into a final document, it became part of the Unilever's guidelines for natural claims. Defendant argues that Exhibit 15 was created by Unilever's Regulatory Affairs and Legal Departments, and is therefore privileged under the attorney work-product doctrine. Def.'s Mot. at 3. Defendant points to the word "Legal," as in "Legal Department" as a sign that the document is, on its face, privileged: the document states that it was issued in part by the Legal department. B&J00013735.

Defendant has attached a declaration from Nancy Schnell, then an in-house counsel, which states that the document relates to Unilever's efforts to create guidelines for "natural" and "all natural" claims. Schnell Decl. ¶ 7. Defendant also points out that the document notes that formal approval by the Legal and Regulatory departments is required before making any "natural" claims and that "Legal" is listed as the owner of a document referenced internally. B&J00013742.

Plaintiff points out that there is no communication in this document to or from a legal advisor, and the document does not relate to legal advice. She objects to Defendant's assertion that because the document is internal, it suggests a legal purpose. Rather, Plaintiff maintains, that purpose is regulatory: the document discusses the underlying science and technical aspects of a natural claim and advises that before making such a claim, the approval of Legal and Regulatory

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  Departments is required.  Guidance that the Legal Department may have to sign off at some point in

2  the future on a hypothetical scenario does not make the document addressing that scenario

3  privileged, Plaintiff argues, because no advice is being sought or given in the document itself.

4  Plaintiff also notes that there is no mention of litigation in the listed purposes of the document.

5  B&J00013735.

6       The Court has reviewed Exhibit 15 in detail, and finds that while it is a sensitive, internal

7  business document issued jointly by Unilever's Regulatory Affairs and Legal departments, it is

8  protected by neither the attorney-client privilege nor the work-product doctrine.  The document does

9  not contain legal advice, and there is no indication that it was prepared in anticipation of litigation.

10 The document touches briefly on the legislative and regulatory environment for natural claims,

11 including two European court cases.  B&J00013737.  The document mentions, very generally, that

12 legal considerations are involved in making natural claims, but nothing more specific.

13 B&J00013740.

14      Defendant is correct that the document states at several points that the Legal department

15 should approve specific natural claims and get involved where the process laid out in the document

16 is modified, to consider challenges from a range of sources, and to receive information shared by

17 business partners.  B&J00013741-2.  This is a standard internal business document addressing

18 multiple facets of a business issue:  when to make an all-natural claim on a food product, given the

19 technical, marketing, legal, regulatory, and competitive environments.  The document was issued by

20 Regulatory Affairs and Legal, but the mere mention of the Legal department in the chain of events

21 of approval of a natural claim is too general and non-specific to be covered by the attorney-client

22 privilege.  Unilever treated making a natural claim as a complex decision involving multiple

23 departments, but the mere fact of some Legal Department involvement at various points does not

24 rise to the level of legal advice or a request for legal advice.  See In re CV Therapeutics, Inc. Secs.

25 Litig., No. 03-3709, 2006 WL 1699536, at *4 (N.D. Cal. June 16, 2006) (Chen, J.) (looking to the

26 context and content of the communication to determine whether a request for legal advice is

27 implied).

28      As to the argument that the document should be protected by the work-product doctrine,

5

1  Defendant has not met its burden of showing that the document was prepared in anticipation of

2  litigation, rather than in the ordinary course of business.  See City of Glendale v. Nat'l Union Fire

3  Ins. Co. of Pittsburgh, No. 12-380, 2013 WL 1797308, at *12 (D. Ariz. Apr. 29, 2013) ("Documents

4  prepared in the ordinary course of business are not protected by the work product doctrine because

5  they would have been created regardless of the litigation.").  Declarations from Unilever employees

6  that the purpose of the initiative was to ensure compliance with the law and address possible future

7  litigation cannot create a blanket work-product protection for every document related to a particular

8  business venture.  See Willnerd v. Sybase, Inc., No. 09-500, 2010 WL 4641034, at *4 (D. Idaho

9  Nov. 3, 2010) (rejecting a blanket assertion of the work-product doctrine).  Although Exhibit 15

10  relates generally that natural claims have legal and regulatory implications, and mentions two court

11  cases in Europe, it was prepared in the ordinary course of Unilever's global foods business.  That a

12  business such as Unilever's functions in a complex legal and regulatory environment is not enough

13  to anticipate litigation under the "because of" standard articulated in In re Grand Jury Subpoena.

14  357 F.3d at 907 (adopting the "because of" standard where a document could have been prepared for

15  multiple purposes, such as conducting the ordinary course of business or because of the prospect of

16  litigation).  The awareness that there might potentially be legal consequences to certain actions does

17  not "anticipate litigation" as required by the work-product doctrine.  Defendant has not shown that it

18  anticipated any actual lawsuit: it has not cited any demand letters or other threats of a lawsuit from

19  anyone, much less an actual suit.  See 357 F.3d at 907-09 (holding that the work-product doctrine

20  protected documents where an attorney had hired a consultant because of impending litigation, and

21  the threat of that litigation animated every document the consultant prepared).

22

23          **2.       Ex. 8 (B&J00039250-52, B&J00039247-49) E-mail from Sam Zeller.**

24

25          Sam Zeller is a member of Unilever's Regulatory Affairs department, as noted in his publicly

26  available LinkedIn profile.  LinkedIn, http://www.linkedin.com (last visited February 21, 2014).  He

27  is not an attorney.  According to Defendant, he worked closely with the Legal Department in

28  developing the guidelines for "natural" and "all natural" claims.  See Schnell Decl. ¶ 6; Zeller Decl.

1  ¶ 5.  The Exhibit 8 e-mail summarizes some of the statements contained in a set of guidelines for

2  natural claims.  Defendant argues that Mr. Zeller understood, when he sent the e-mail, that he was

3  passing on legal analysis from those guidelines.  See Zeller Decl. ¶ 5.

4       Plaintiff notes that this email string was initiated by William Leo, a director of Research and

5  Development, and terminated with Samuel Zeller, a Senior Manager of Regulatory Affairs.  No

6  lawyers are on the e-mail chain.  The chain addresses a public document that discusses an "all-

7  natural" lawsuit against a competitor.  In the e-mail, Mr. Zeller states "Unilever's view" of whether

8  a particular ingredient was eligible for an "all natural" claim and mentions the case against the

9  competitor.  Plaintiff contends that Mr. Zeller was asked for his opinion as a member of the

10  Regulatory group, and provided it, but that nothing in the e-mail sets forth legal policy or originates

11  from an attorney.

12       Defendant counters that Mr. Zeller was clearly discussing a court's ruling and its potential

13  impact on the company and that he was disseminating legal advice.  It argues that a non-lawyer's e-

14  mail to other non-lawyers is privileged if it transmits the legal advice of in-house counsel.  See Datel

15  Holdings, Ltd. v. Microsoft Corp., No. 09-5535, 2011 WL 866993, at *5-6 (N.D. Cal. Mar. 11,

16  2011) (Laporte, J.) (a program manager's e-mail passing on counsel's advice was privileged).

17  Defendant also argues that the document is protected by the work-product doctrine because it was

18  prepared in anticipation of litigation.

19       The Court concludes that this e-mail is not protected by either the attorney-client privilege or

20  the work-product doctrine.  No attorneys are involved in the e-mail chain, and although Andrew

21  Sztehlo asks Zeller for a view on the status of the particular ingredient, and Zeller provides the

22  Regulatory Department view, it does not appear to be a request for legal advice.  As with Exhibit 15

23  discussed above, this is sensitive business information, but it is just that: sensitive business

24  information, rather than legal advice.  To the extent that the e-mails discuss litigation, they address a

25  lawsuit against another company, not a threatened or pending case against Defendant, or even past

26  litigation against Defendant.  There is no indication that the e-mail exchange was made in

27  anticipation of litigation or that Defendant was considering a particular threat of litigation when

28  drafting the document.  See In re Grand Jury Subpoena, 357 F.3d at 909.

United States District Court
For the Northern District of California

1          **3.      Remaining Transmittal E-mails and Draft Guidelines**

2

3          There are ten other documents that Defendant seeks to claw back.  They are transmittal e-

4   mails and drafts of guideline documents.  Defendant argues that all of these documents relate to the

5   company's efforts to create guidelines for "natural" and "all natural" claims and are therefore

6   privileged.  Plaintiff argues that with one exception, none of the documents show any involvement

7   by an attorney, and there, the attorney was not functioning as an attorney or any differently than the

8   other recipients of the e-mail.  The documents are not, Plaintiff contends, a "discreet [sic] set of

9   documents in response to a legal inquiry, but a very broad set of documents responding to a very

10  generalized endeavor at Unilever covering multiple departments . . .."  Pl.'s Opp. at 3.  None of the

11  documents are product specific or respond to a legal inquiry or provide legal advice, Plaintiff argues,

12  but rather are regulatory, research and development, and marketing documents that are typical

13  business records.  Plaintiff notes that an in-house attorney can serve multiple functions, and cites

14  <u>United States v. Chevron Texaco Corp.</u>, 241 F. Supp. 2d 1065 (N.D. Cal. 2002), which explains that

15  "communications involving in-house counsel might well pertain to business rather than legal

16  matters.  The privilege does not protect an attorney's business advice."  241 F. Supp. 2d 1065, 1076.

17  Plaintiff also argues, at the end of its opposition, that the documents do not qualify for protection

18  under the work-product doctrine because the general purpose of the documents was to create a

19  common understanding, across departments, of how Unilever should use the terms "natural" and "all

20  natural."  Plaintiff argues that the documents are the typical products of the regulatory function,

21  supplemented by R&D and labeling.  Defendant has identified no pending litigation that serves as a

22  basis for the protection of the doctrine.

23          The Court will briefly discuss each of the documents:

24

25  •       Transmittal E-mail  (B&J00013729)

26

27          The e-mail itself refers back to a document sent much earlier that was prepared by

28  Regulatory Affairs - Legal.  The e-mail notes that certain statements are subject to local approval by

8

the Legal Department.  B&J00013729.  The mere mention of the legal department and that certain statements are subject to its approval does not give rise to privilege in the absence of a request for or provision of legal advice.

• Zeller transmittal e-mail  (B&J00039177-203).

This transmittal e-mail refers to the guidelines as an internal document issued by Regulatory Affairs in cooperation with R&D, and states that the document lays out technical criteria used to evaluate foods for natural claims.  This document is not protected by privilege.  The guidelines themselves are technical and the only reference to anything relating to the Legal Department is a general note cautioning that some nations' legislation may be more stringent than the criteria contained in the Guidelines.

• E-mail from Patrizia Barone to Sam Zeller  (B&J00039204, B&J00039243-46)

This joint document issued by R&D and Regulatory Affairs addresses natural claims.  It also, like the document above, refers to the potential for legislation to be more stringent than the guidelines.  It is highly technical, with only a glancing mention of the Legal Department.   It is not protected by privilege or the work-product doctrine.

• Zeller e-mail attaching copy of a product-specific Power Point presentation  (B&J00013746-48)

Slides of the underlying document are stamped "Confidential – not to be shared outside Unilever," but business confidentiality does not give rise to privilege without a request for legal advice or evidence that the document was prepared in anticipation of litigation, and neither is present here.

**United States District Court**
For the Northern District of California

1    •     Internal Document co-drafted by Sam Zeller, and draft of product-specific feedback on

2    guidelines (B&J00013713-15).

3

4        This document starts with a general purpose discussion of natural claims globally and

5    expresses the desire for consistency and an awareness of consumer perceptions.  B&J00007613.  At

6    the end of the document there is an assessment of product ingredients with notes about their

7    potential natural claim status.  B&J0007615.  As with Exhibit 15 discussed above, this document

8    raises questions about the legal implications – as well as the business, marketing, scientific, and

9    competitive implications – of "natural" claims.  And as with Exhibit 15, the fact that there are legal

10   implications to a decision is not enough to give rise to attorney-client privilege where no legal

11   advice is sought or provided, and not enough to give rise to work-product protection where there is

12   no evidence the document was prepared in anticipation of litigation.

13

14   •     Internal email from B&J employee to 17 others, including Sarah Woodhouse, an attorney.

15   (B&J00007611-12, 13-15).

16

17       Plaintiff argues that even though Ms. Woodhouse is an attorney, the email does not explicitly

18   seek legal advice and simply asks people to respond if they disagree with the approach set forth in

19   the message.  It is not clear whether Ms. Woodhouse was sent the email in her legal capacity, and

20   Defendant did not submit a declaration from her.  See Kintera v. Convio, Inc., 219 F.R.D. 503, 515

21   (S.D. Cal. 2003) (communications between employees transacting the general business of the

22   company do not attain privileged status solely because in-house or outside counsel is "copied in" on

23   correspondence).  Defendant argues that the e-mail is privileged because of Ms. Woodhouse's

24   presence and because it includes a consideration of whether a certain position is legally defensible

25   and how the guidelines will be used in a legal defense if a Unilever product is challenged.

26   Defendant argues that because the recipients are explicitly asked for their feedback, this request

27   must include one for legal advice.

28       Ms. Woodhouse is among a large group of people copied on the e-mails and she is never

1   mentioned in the body of the e-mails.  Her <u>legal</u> opinion is neither requested nor given.  The e-mail

2   proposes that the regulatory group prepare a decision paper based on the key points discussed in the

3   product category feedback document (addressed above).  Defendant is correct that the document

4   mentions the role of the guidelines as a potential legal defense, but there is no evidence that the

5   document was prepared "because of" the prospect of litigation; indeed, the transmittal e-mail and the

6   underlying document are primarily focused on the "science and technology" aspects of the natural

7   claims.  This document is not protected by the attorney-client privilege or by the work-product

8   doctrine.

9

10          **B.      Defendant's Document Review Process**

11

12          Since the Court concludes that the documents at issue are not privileged or protected by

13   the work-product doctrine in the first place, the Court need not reach the issue of whether the

14   privilege or work-product protection was waived by disclosure of or reliance upon the inadvertently

15   disclosed documents pursuant to Federal Rule of Evidence 502(b).  Fed. R. Evid. 502; <u>see also</u> <u>Datel</u>

16   <u>Holdings LTD v. Microsoft Corp.</u>, No. 09-5535, 2011 WL 866993, at *2-5 (N.D. Cal. Nar. 11, 2011)

17   (Laporte, J.) (privilege not waived because disclosure was inadvertent, as defendant engaged in

18   robust measures to identify potentially privileged documents and immediately asserted its privilege

19   objection when it discovered the document had been produced).  The Court notes, however, that

20   Plaintiff concedes that Defendant took careful and proper measures to avoid disclosing protected

21   documents and to seek their return promptly upon notice.

22

23   **IV.    Conclusion**

24          All the documents at issue are clearly sensitive internal documents, but they are not protected

25   by either attorney-client privilege or the work-product doctrine.  Defendant's motion to compel the

26   return of the inadvertently produced documents is DENIED.

27          All of the motions to file under seal connected to this motion (Docket Nos. 146, 157, and

28   163) are GRANTED.

**United States District Court**
For the Northern District of California

This Order AMENDS the Court's Order of December 17, 2013 (Docket No. 168).

**IT IS SO ORDERED.**

Dated: February 21, 2014

_____

ELIZABETH D. LAPORTE
United States Chief Magistrate Judge

**United States District Court**
For the Northern District of California